

3 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

FEB 2 2 2002

| | | |
|---|---|---|
| SEABULK TOWING, INC., f/k/a | * | CIVIL ACTION |
| HVIDE MARINE TOWING, INC., | * | |
| and SEABULK OFFSHORE, LTD. | * | |
| Plaintiffs | * | NUMBER: C.A. B-01-094 |
| | * | |
| VERSUS | * | |
| | * | |
| OCEANOGRAFIA S.A. de C.V and | * | In Admiralty |
| AMADO YANEZ OSUNA | * | |
| Defendants | * | |

## YANEZ'S MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS, VACATE ATTACHMENT,
## AND QUASH DISCOVERY

Amado Yanez Osuna has been wrongfully sued in this case. This litigation concerns

contractual disputes between two corporations, plaintiff Seabulk and defendant

Oceanografia. It is undisputed that Yanez (an officer of Oceanografia) has not been a party

to any contract at issue in this case. Recognizing this fact but nevertheless desirous of suing

Yanez, Seabulk has alleged that Oceanografia is nothing but a sham corporation and that

Yanez should be held personally liable for the company's alleged debts.

Yet Seabulk has not and cannot allege facts that, if true, would come close to stating

a claim for piercing the corporate veil, and this claim therefore should be dismissed.

Likewise, the attachment of Mr. Yanez's personal investment account should be vacated, and

the intrusive discovery propounded by Seabulk to him should be quashed.

# I. **Factual Background**

Oceanografia is a Mexican corporation that owns and routinely supplies vessels to perform work in the offshore oilfield-support industry in Mexico. Amado Yanez is an officer of the company.

To gain access to the lucrative Mexican oilfield market, Seabulk entered into a joint-venture agreement with Oceanografia. Under this agreement, Seabulk provided vessels under charter to Oceanografia to perform work in the Mexican offshore oilfield support operations for the Mexican oil company, PEMEX. Seabulk has brought this action against Oceanografia for alleged breach of the joint-venture agreement and for alleged nonpayment of charter hire allegedly owed by Oceanografia pursuant to the terms of the chartering arrangement between the two companies. Seabulk has not and could not allege that Yanez was a party to any of these contracts.

Seabulk instead alleges that Oceanografia is a sham corporation whose corporate existence should be ignored so as to impose the corporation's debts on Yanez, individually. In stating this claim, Seabulk 's complaint says merely this:

> Alternatively, plaintiffs further allege that Oceanografia is the alter ego of defendant Yanez. The corporate identify of Oceanografia must be disregarded, and Yanez and Oceanografia be treated as one entity, to prevent the use of the corporate fiction as an unfair device to inflict injustice on plaintiff. Specifically, plaintiffs allege that the separateness of Oceanografia has ceased to exist, and it has been disregarded by defendant Yanez, who uses it and its assets for his personal purposes as though the assets were his individual property.[1]

Based on these mere conclusory allegations, Seabulk attached a personal investment account of Mr. Yanez held with Merrill-Lynch. (Mr. Yanez's funds have been frozen in that account ever

---

[1] See *Verified Amended Original Complaint* including request for maritime attachment at ¶4.

since.) Based on these mere conclusory allegations, Seabulk also suggests that this Court should rule

that Oceanografia is nothing but a sham and in fact has no separate existence from Yanez personally.

Finally, Seabulk has propounded highly intrusive discovery to Yanez seeking a broad range of

information and documents concerning his personal finances. Because Seabulk has no good faith

basis for this extreme charge and has failed to allege specific facts sufficient to state a claim for

piercing the corporate veil, the claim against Yanez should be dismissed pursuant to Rule 12 (b) (6);

its attachment of Mr. Yanez's personal account should be vacated under Supplemental Admiralty

Rules B and E; and its intrusive discovery concerning his personal assets should be quashed.

## II. **Argument and Authorities**

### A. *Standards for Motion to Dismiss*

A motion to dismiss should be granted when the complaint fails to state facts that, if

true, would demonstrate that plaintiff is entitled to the relief requested. *Conley v. Gibson,*

355 U.S. 41, 45-46 (1957).

In weighing a motion to dismiss, the courts must distinguish between well-pleaded

allegations of specific fact, on the one hand, and mere conclusory assertions or legal

argument. Well-pleaded facts are taken as true. *Scheuer v. Rhoades*, 416 U.S. 232, 236

(1974). Mere conclusory assertions and argument are ignored. *Tuchman v. DSC*

*Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994); *Collins v. Morgan Stanley Dean*

*Witter*, 224 F.3d 496, 498-99 ( 5th Cir. 2000).

Measured against these standards, and taking only Seabulk 's well-pleaded facts as true (not its argument and legal contentions), Seabulk's complaint fails to state a cause of action against Yanez.

The claim alleged in Seabulk's complaint against Yanez is that he should be held liable for the alleged debts of Oceanografia on the ground that the company is a mere sham corporation and that the corporate veil accordingly should be pierced. Yet the complaint does not allege facts to support this claim. The complaint states in a mere conclusory fashion:

> Alternatively, plaintiffs further allege that Oceanografia is the alter ego of defendant Yanez. The corporate identify of Oceanografia must be disregarded, and Yanez and Oceanografia be treated as one entity, to prevent the use of the corporate fiction as an unfair device to inflict injustice on plaintiff. Specifically, plaintiffs allege that the separateness of Oceanografia has ceased to exist, and it has been disregarded by defendant Yanez, who uses it and its assets for his personal purposes as though the assets were his individual property.[2]

This does not come close to satisfying the requirements of Rule 12(b)(6) . To state a claim that Yanez should be held liable for Oceanografia's debts and obligations – that is, to "pierce the corporate veil" – plaintiff's complaint must allege facts that, if true, would show that the corporation was used to perpetrate a fraud by the individual or that the individual has dominated the corporation to the extent that the corporation is a mere sham with essentially no separate existence. As one maritime court has explained:

---

[2] See *Verified Amended Original Complaint* at ¶4.

> The prerequisites for piercing a corporate veil are as clear in federal maritime law as in shoreside law: Holt must have used Waterside-Pennsylvania to perpetrate a fraud or have so dominated and disregarded Waterside-Pennsylvania's corporate form that Waterside-Pennsylvania primarily transacted Holt's personal business rather than its own corporate business.[3]

Or, as the 5th Circuit has explained:

> To justify the extraordinary step of holding the dominant party liable, the jury must find that this control "amounts to total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation.[4]

Seabulk's complaint states no facts that, if true, would make out a claim for piecing the corporate veil. Seabulk's mere conclusory allegations plainly do not meet the standard. The complaint accordingly should be dismissed under Rule 12(b)(6).

### B. The Attachment Should Be Vacated

The attachment of Yanez's personal investment account also should be vacated, for two independent reasons. First, plaintiffs have not complied with the procedural requirements of Rule B. Second, their claim is frivolous and lacks a good faith basis in fact.

A Rule B attachment must be supported by an affidavit stating that, despite a reasonably diligent investigation, the defendant could not be found within the district. See Supplemental Rule B for certain admiralty and maritime claims. Absent the affidavit, the attachment should be vacated. See, e.g., *Submersible Systems, Inc. v. Perforadora Central*

---

[3] *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2nd Cir. 1980).

[4] *Baker v. Raymond International, Inc.*, 656 F.2d 173, 180 (5th Cir. 1981).

*S.A. de C.V.*, 249 F.3d 413, 422 (5th Cir. 2001) (affirming order vacating Rule B attachment on ground proper affidavit not filed). Yet, plaintiffs have failed to file an affidavit addressed to Amado Yanez. The attachment of Yanez's account therefore should not stand.

Further, as essential element to obtaining a writ of maritime attachment, the plaintiff must present a *prima facie* claim against the defendant.[5] As to Yanez, Seabulk lacks any such evidence. In fact, Seabulk has failed to even allege facts to state a claim for piercing the corporate veil. *Stevedoring Services of America v. Ancora Transport, N.V.*, 59 F.3d 879, 883 (9th Cir. 1995) (affirming district court's release of garnished funds on ground that the plaintiff "offered little more than bare assertions that [defendant] was an alter ego of Ancora"). Accordingly, the writ of attachment should be vacated.

### C.  Seabulk's Discovery Requests to Yanez

Seabulk recently propounded highly burdensome and invasive discovery requests to Yanez.[6] These requests seek a broad range of information and documents concerning Yanez's personal finances and affairs. Because Seabulk has failed to state a valid claim against Yanez, these discovery requests should be quashed. See, e.g., *McConley v. Wedgewood Capital Man. Co.,* 1998 WL 964185, p. 9 (E.D. Pa. Nov. 16, 1998) ("The mere allegation that corporations were not operated as independent entities ... is insufficient to support discovery of the financial information sought by plaintiff. Plaintiffs have not shown

---

[5] Fed. R. Civ. P. Supp. B; see also *Maritima Petroleo Engenharia Ltda v. Ocean Rig 1 AS,* 78 F. Supp. 2d 162, 166 (S.D. N.Y. 1999)

[6] See Exhibit "A".

any basis for believing that the corporation and the owners thereof are so interrelated that their status as independent entities should be disregarded.  In the absence of such a showing, to compel discovery of the information would be to authorize an unwarranted fishing expedition based on pure speculation.")

## III.  Conclusion

Seabulk should not be entitled to harass Yanez or pry into his personal finances and affairs merely by making an unsupported and irresponsible allegation that the large corporation for which he works is merely his alter-ego.  Seabulk has been unable to state any facts to substantiate this charge – and its allegations fall woefully short of stating a claim for piercing the corporate veil and imposing the company's debts on Yanez.  By merely making this charge on essentially no evidence, Seabulk should not be entitled to conduct a "fishing expedition" in the form of invasive discovery to Yanez's personal detriment.

For the reasons stated above, Yanez respectfully submits that Seabulk's claim against him should be dismissed pursuant to Rule 12 (b) (6); that the attachment of his personal investment account at Merrill-Lynch should be vacated; and that the discovery directed against him by Seabulk should be quashed.

Respectfully submitted,

HARRIS & RUFTY, L.L.C.

By: _____

Rufus C. Harris III (Admission No. 29458)
Alfred J. Rufty III (Admission NO. 29457)

1450 Poydras Street, Ste. 1510
New Orleans, Louisiana 70112
Tel: (504) 525-7500
Fax: (504) 525-7222

**ATTORNEYS FOR DEFENDANTS,
OCEANOGRAFIA S.A. DE C.V. AND
AMADO YANEZ OSUNA**

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

By: _____

James H. Hunter, Jr.
Texas State Bar No. 00784311
Federal ID No. 15703
55 Cove Circle
P.O. Box 3509
Brownsville, Texas 78523-33509
Tel: (956) 542-4377
Fax: (956) 542-4370

**ATTORNEY FOR DEFENDANTS,
OCEANOGRAFIA S.A. DE C.V. AND
AMADO YANEZ OSUNA**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been forwarded to opposing counsel by placing same in the United States mail, properly addressed, with first class postage affixed thereto, this 22nd day of February, 2002

_____
James H. Hunter, Jr.



# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SEABULK TOWING, INC., f/k/a | § | |
| HVIDE MARINE TOWING, INC., | § | |
| and SEABULK OFFSHORE, LTD. | § | |
|     Plaintiffs | § | CIVIL ACTION NO. B-01-094 |
| | § | |
| V. | § | In Admiralty |
| | § | |
| OCEANOGRAFIA S.A. de C.V. and | § | |
| AMADO YANEZ OSUNA | § | |
|     Defendants | § | |

## SEABULK TOWING, INC. and SEABULK OFFSHORE, LTD.
## FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION
## TO DEFENDANT AMADO YANEZ OSUNA

TO THE HONORABLE JUDGE OF SAID COURT:

TO: AMADO YANEZ OSUNA, through his attorney of record. Keith N. Uhles, Royston, Rayzor, Vickery & Williams, L.L.P., 55 Cove Circle, P. O. Box 3509, Brownsville, Texas 78523-33509.

Pursuant to Rule 33, 34 and 36 of the Federal Rules of Civil Procedure, Plaintiff SEABULK TOWING, INC. and SEABULK OFFSHORE, LTD., serve these Interrogatories, Requests for Production, and Requests for Admission. AMADO YANEZ OSUNA must serve its response to each request separately and fully within thirty (30) days after service.

You are further advised that you are under a continuing duty to supplement your answers to these Interrogatories, Requests for Production and/or Requests for Admissions in the event you obtain new or additional information upon the basis of which you know that any answer was incorrectly made or that your answers to these Interrogatories, Requests for Production and Requests for Admissions, though correct when made are no longer true, and the circumstances are such that a failure to amend your answers is in substance a knowing concealment



EXHIBIT

A

Respectfully submitted,

THE KLEBERG LAW FIRM

By: _____

Jim Buchanan
State Bar No. 03287500
Federal I.D. No. 0328
Frank L. McNiff, Jr.
State Bar No. 13839020
Federal I.D. No. 12595
800 North Shoreline Blvd., Suite 900 North
Corpus Christi, Texas 78401
Telephone: (361) 693-8500
Fax (361) 693-8600

ATTORNEYS FOR PLAINTIFFS


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was sent by United States certified mail, return receipt requested to all attorneys of record, this day of January, 2002:

**ATTORNEY FOR PLAINTIFF**

Keith N. Uhles
James H. Hunter, Jr.
ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.
55 Cove Circle
P. O. Box 3509
Brownsville, Texas 78523-33509

Rufus C. Harris III
Alfred J. Rufty III
HARRIS & RUFTY, L.L.C.
1450 Poydras St., Suite 1510
New Orleans, LA 70112

_____
Frank L. McNiff, Jr.

160140v1                                    2

## DEFINITIONS

1.      "Plaintiff" means SEABULK TOWING, INC. and SEABULK OFFSHORE, LTD..

2.      "You" or "your" or "Defendant" refers to AMADO YANEZ OSUNA, his partnerships, affiliations, joint-ventures, strategic alliances, subsidiaries, and parent entities and/or its agents, attorneys and/or its directors and officers.

3.      "Relating to" or "referring to" means in any way concerning, constituting, referring to, relating to, analyzing, discussing, describing, considering, explaining, modifying, amending, confirming, endorsing, evidencing, representing, supporting, qualifying, terminating, revoking, canceling, negating or listing, unless qualified by words of limitations.

4.      The term "charter agreement" includes but is not limited to bareboat charter agreements, time charter agreements, voyage charter agreements, contracts of affreightment or other contracts pertaining to the use of the vessels.

5.      The term "document" includes, but is not limited to, manuals, correspondence, notes, telexes, contracts, invoices, ledgers, checks, bank drafts, wire transfer confirmations, telegrams, teletypes, faxes, radiograms, memoranda, tabulations, records, reports, report forms, minutes, minute books, records of any communications or conversations [including telephone notes and bills], instructions, letters, bulletins, papers, books, accounts, writings, papers, appointment books, calendar and diary entries, schedules, lists, worksheets, drawings, graphs, charts, photographs, computer printouts, tapes and tape recordings, or any other forms of mechanical recordings or all statements not reduced to writing, microfilm, or other forms of preserving information of every kind and description in the actual or constructive possession, custody or control of AMADO YANEZ OSUNA or its representatives, wherever located. The term "document" also includes copies of writings when originals are not in the possession, custody or control of AMADO YANEZ OSUNA, as well as copies bearing notations or containing information in addition to that contained on the original.

6.      "Identify" with reference to a natural person or individual should be interpreted as requiring the person's name, last known address and telephone number. With reference to an employer, "identify" should be interpreted as requiring the name, address, and dates of employment. With reference to documents or things, "identify" should be interpreted as requiring sufficient information regarding the item that the party seeking discovery can locate and identify the object as readily as the party from whom it is being sought

7.      The term "Joint Venture Agreement" is descriptive of any written or oral agreement memorializing the interest and intent of the parties to create a joint venture, including but not limited to the Shareholder Agreement dated January 1, 1999 creating the entity Seabulk Offshore de Mexico S.A. de C.V

160140v1                                3

8.    "Oceanografia" means OCEANOGRAFIA S.A. de C.V., its partnerships, affiliations, joint-ventures, strategic alliances, subsidiaries, and parent entities and/or its agents, attorneys and/or its directors and officers.

9.    "Otto Candies" should be interpreted to include Otto Candies L.L.C., and its partnerships, affiliations, joint-ventures, strategic alliances, subsidiaries, and parent.

10.    "PEMEX" should be interpreted to include Pemex Exploracion y Produccion, and its partnerships, affiliations, joint-ventures, strategic alliances, subsidiaries, and parent.

11.    "Person[s]" should be interpreted as including natural persons, firms, partnerships, associations, joint ventures, and corporations.

12.    "Third Party" or "Third Parties" should be interpreted to include all parties other than AMADO YANEZ OSUNA.

13.    "Vessel," unless otherwise noted, should be interpreted to include the vessel's: SEABULK AUSTIN, SEABULK BATON ROUGE, SEABULK COLORADO, SEABULK CAMERON, SEABULK DELAWARE, SEABULK KENTUCKY, SEABULK MONTANA, SEABULK SABINE, SEABULK ST. ANDREWS, SEABULK ST. TAMMANY, SEABULK STARR.

14.    Reference to documents:  Where the responding party chooses to answer a request for information by referencing to a specific document or record, it is requested that such specification be in such sufficient detail to permit the requesting party to locate and identify the records and/or documents from which the answer is to be ascertained, as readily as can the party served with the request.

## GENERAL INSTRUCTIONS

The following general instructions shall govern the interpretation and responses made to these requests:

1.    Objections.   If you contend that a response to a request calls for privileged documents, in whole or in part, or if you otherwise object to any part of a request, or contend that any identified document would be excludable from production and discovery, please specify:

        a.    the reason for each such objection or ground for exclusion.

        b.    the identity of each person having knowledge of the factual basis, if any, on which the privilege or other ground is asserted

        c.    the individual documents alleged to be privileged, and the author, addressee, date, and all copy recipients thereof.

2.    Lost or destroyed documents.   Where documents responsive to these requests have been lost or destroyed, please state the date, the last known location of each document, the last person in custody or control of the document and the reason for the document's loss or destruction.

3.    Revised, amended and superseded documents.   Documents called for by these requests include all documents relating to the indicated subject regardless of whether a particular document has been superseded, amended, revised, rewritten, redrafted, rejected or rendered obsolete.

4.    Marginalia, notations, etc.   Documents, or copies of documents, otherwise identical, should each be individually produced if the copies thereof contain any communication, notation, or recording that does not appear in another copy or that does not appear in the original.

5.    Number of requests.   If there is an objection to the number of requests, please notify Defendant's counsel immediately, so that either an agreement may be obtained or the matter may be set for hearing.

6.    Extensions.   Any requests for extensions of time must be in writing.   Defendant's counsel will agree to no extensions of time with respect to objections.

7.    Partial answers.   If you object to only a portion of a particular request, specifically identify the portion of the request to which you are objecting and answer the remainder completely.

8.    Scope.   All Interrogatories and Requests for Production are limited in scope to relevant and non-privileged materials and/or information, and unless otherwise specifically noted, are limited with reference to time to the period from January 1, 1998 to the present date.

# INTERROGATORIES

## INTERROGATORY NO. 1:

Identify with particularity any and all written agreements executed between Defendant and Plaintiff?

**ANSWER:**

## INTERROGATORY NO. 2:

Identify with particularity any and all written agreements executed between Defendant and Oceanografia?

**ANSWER:**

## INTERROGATORY NO. 3:

Please enumerate and identify with particularity all financial accounts in which Defendant has a financial, capital, profit or pecuniary interest and which were used in any way in conducting business with Seabulk Offshore de Mexico S.A. de C.V., Oceanografia S.A. de C.V. or used in any way in conducting the business of vessels chartered to Oceanografia.

**ANSWER:**

## INTERROGATORY NO. 4:

Please list all credit cards and credit card accounts issued to AMADO YANEZ OSUNA by entities listed in Interrogatory No. 7 or entities listed in Defendant's response to Interrogatory No. 9 and used for personal purchases

**ANSWER:**

160140v1                                                    6

**INTERROGATORY NO. 5:**
Please list all credit cards and credit card accounts issued to AMADO YANEZ OSUNA and used for business purchases relating to entities listed in Interrogatory No. 7 or entities listed in Defendant's response to Interrogatory No. 9, specifically including but not limited to the card's issuing entity, account number, authorized user(s), and issuance date.

**ANSWER:**

**INTERROGATORY NO. 6:**

Please list all wire transfers either received or initiated by Defendant since 1998 relating to entities listed in Interrogatory No. 7 or in Defendant's response to Interrogatory No. 9, specifically including the wire transfer number, the origin account number, the destination account number, the originating party's trade/business name, the receiving party's trade/business name.

**ANSWER:**

**INTERROGATORY NO. 7:**

Please state the relationship between AMADO YANEZ OSUNA and:
a. Maritima Mexicana S.A. de C.V.
b. Afranzadora Insurgentes S.A. De C.V.
c. Soler International
d. N/O Miguel A Zenteno
e. N/O Grupo Carati
f. Oceanografia de Mexico S.A. de C.V.
g. Seabulk Offshore de Mexico S.A. de C.V.
h. PEMEX

**ANSWER:**

**INTERROGATORY NO. 8:**

Please list any and all assets possessed by Defendant within the United States of America, including but not limited to real property, motor vehicles, chattels, mineral rights

and/or bank accounts, specifically including a detailed property description, date of purchase, monetary value, and current asset location.

**ANSWER:**

**INTERROGATORY NO. 9:**

Please enumerate all employment capacities held by Defendant since 1998 and describe with specificity each job's employment description, including the duties and responsibilities of each job.

**ANSWER:**

**INTERROGATORY NO. 10:**

Please list with particularity all entities, including but not limited to partnerships, affiliations, joint-ventures, strategic alliances, subsidiaries, and/or parent entities that Defendant has a financial, capital, or profit interest in.

**ANSWER:**

**INTERROGATORY NO. 11:**

Identify with particularity any and all financial accounts relating to entities listed in Interrogatory No. 7 or in Defendant's response to Interrogatory No. 9, wherever located, that Defendant has a possessory interest in the account or access to the account, specifically including but not limited to identification of financial institution, account number, and address of financial institution where monies have been transferred into or out of within the preceding five (5) years.

**ANSWER:**

**INTERROGATORY NO. 12:**

Identify any and all financial accounts that Defendant has deposited or received funds derived from any relationship with Oceanografia S.A. de C.V., Seabulk Offshore de Mexico S.A. de C.V., Otto Candies and PEMEX

**ANSWER:**

**INTERROGATORY NO. 13:**

Please identify any and all information or knowledge relating to the accounting procedures or standards employed by Oceanografia S.A. de C.V., its subsidiary, affiliate, joint-venturer or parent organization, e.g. knowledge regarding whether income is recorded on a cash or accrual basis, procedures and standards for the recordation of expenses and/or account payables, procedures and standards for the recordation of wages and crew expenses, procedures and standards for the accountancy of inventory, including depreciation and amortization policies, etc..

**ANSWER:**

**INTERROGATORY NO. 14:**

Please identify any and all information or knowledge relating to policies, plans, procedures, protocols, or methodologies describing or relating to the recordation, levying and accountancy of income and expenditures for the vessels, including but not limited to: acquisition fees, brokerage fees, handling fees or commission, marketing fees, port expenses and fees, agency expenses and fees, manifest charges, marketing expenses and fees, fuel expenses and fees, crew expenses and fees, hiring fees and expenses, lubrication expenses and fees, groceries and other necessaries expenses and fees charged by Oceanografia S.A. de C.V. for expenses in operation of the vessels including.

**ANSWER:**

**INTERROGATORY NO. 15:**

For each other lawsuit, civil or criminal, in which Defendant, or his partnerships, affiliations, joint-ventures, strategic alliances, subsidiaries, or parent entities has been engaged in

within the preceding five (5) years, state the date, court, style, docket number and resolution of the case.

**ANSWER:**

**INTERROGATORY NO. 16:**

Identify, by full and correct name, including middle name and nicknames, the physical address of their respective residences, telephone numbers, driver's license numbers, Social Security numbers and dates of birth, all individuals who assisted in answering these Interrogatories and for each individual, specifically state the Interrogatory or Interrogatories (by number) each individual who assists in answering and the documents and things used in answering each respective Interrogatory.

**ANSWER:**

**INTERROGATORY NO. 17:**

If any of the parties identified in Interrogatory No. 16 has been convicted of a crime punishable by imprisonment in excess of one year or involving dishonesty, false statement, or crime of moral turpitude, state the type of offense, the date of offense, the date of conviction, the cause number, the court, the country, and the state where the individual was tried or the case was handled.

**ANSWER:**

**INTERROGATORY NO. 18:**

Please identify any and all persons having knowledge either directly or indirectly of any relevant facts or documents concerning the issues, claims, damages, and defenses in this lawsuit, and for each person listed state with particularity the substance of the relevant facts of which that person has knowledge. This list is not limited to the witnesses that will testify on AMADO YANEZ OSUNA'S or OCEANOGRAFIA S.A. de C V. behalf at trial, but necessarily includes each such witness. It is the position of Plaintiff SEABULK TOWING, INC. and SEABULK OFFSHORE, LTD. that any witness who testifies in this case will have to be identified in response to this Interrogatory and Plaintiff SEABULK TOWING, INC. and SEABULK OFFSHORE,

LTD. will object to anyone who attempts to testify who is not identified in the answer to this Interrogatory.

**ANSWER:**

**INTERROGATORY NO 19:**

Identify every potential party to this lawsuit and each parties' respective relationship to the Defendant in this lawsuit.

**ANSWER:**

**INTERROGATORY NO. 20:**

Identify any legal theories upon which AMADO YANEZ OSUNA relies on in prosecuting any claim or in establishing any defense in this case.

**ANSWER:**

**INTERROGATORY NO. 21:**

Identify any facts upon which AMADO YANEZ OSUNA relies on asserting any counter-claims and/or defenses in this case.

**ANSWER:**

**INTERROGATORY NO. 22:**

For any statements obtained, including but not limited to oral, written or video-taped statements taken by Defendant, or taken on Defendant's behalf, relating to the facts that are the subject of this litigation, please state the following:

a.      The identity of the person who gave or made the statement.
b.      The date when the statement was taken.
c.      The substance of the statement.

d.     The identity of the person who took the statement.

e.     Whether the statement was reduced to writing.

f.     The present location of the statement and the identity of the person now in possession of the statement.

g.     Whether Defendant will, without a formal request to produce, attach a copy of all statements described in the answer to this interrogatory

**ANSWER:**

## PLAINTIFF'S REQUEST FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

Please produce all reports, including observations and opinions, of each and every expert who will be called as a witness by Plaintiff in this cause.

### RESPONSE:

### REQUEST FOR PRODUCTION NO. 2:

Please reduce to tangible form, the subject matter on which the expert is expected to testify, the mental impressions and opinions held by the expert, and the facts known which relate to or form the basis of the mental impressions and opinions held by the expert.

### RESPONSE:

### REQUEST FOR PRODUCTION NO. 3:

Please produce all documentation, including pleadings and settlement documents, which pertain to any lawsuit in which Defendant has ever been engaged, and as referenced in Interrogatories Number 7 and 9.

### RESPONSE:

### REQUEST FOR PRODUCTION NO. 4:

Please produce all statements pertaining to the transactions made the basis of this suit taken from this Plaintiff's employees and in the possession of Defendant's attorneys or agents.

### RESPONSE:

**REQUEST FOR PRODUCTION NO. 5:**

Please produce all non-privileged reports, audits, financial or accounting reviews, consultant records or reports pertaining to the transactions made the basis of this suit

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6:**

Please produce any written memorandum, document, note or other piece of physical and/or documentary evidence which you intend to use at the time of trial in your case in chief, rebuttal or for impeachment purposes against Plaintiff.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7:**

Please produce copies of all records or other documents received by or prepared by you, pertaining to Defendant's claims, damages and defenses made the basis of this lawsuit

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 8:**

Please produce any and all employment related manuals, procedure or protocol guidelines dispensed to Defendant by entities enumerated in Defendant's response to Interrogatory No. 9.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9:**

Please produce copies of any and all payments made to Defendant from entities enumerated in Interrogatory No. 7 and/or Defendant's response to Interrogatory No. 9.

160140v1                                    14

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 10:**

Please produce copies of any and all payments made from Defendant to entities enumerated in Interrogatory No. 7 and/or Defendant's response to Interrogatory No. 9.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 11:**

Please produce any and all documents describing or relating to accounting procedures or standards employed by Oceanografia, its subsidiary, affiliate, joint-venturer or parent organization, e.g. whether income is recorded on a cash or accrual basis, procedures and standards for the recordation of expenses and/or account payables, procedures and standards for the recordation of wages and crew expenses, procedures and standards for the accountancy of inventory, including depreciation and amortization policies, etc..

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 12:**

Identify the policy, plan, procedure, protocol, or methodology describing or relating to the recordation, levying and accountancy of income and expenditures for the vessels, including but not limited to: acquisition fees, brokerage fees, handling fees or commission, marketing fees, port expenses and fees, agency expenses and fees, manifest charges, marketing expenses and fees, fuel expenses and fees, crew expenses and fees, hiring fees and expenses, lubrication expenses and fees, groceries and other necessaries expenses and fees charged by Oceanografia for expenses in operation of the vessels.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13:**

Please produce any and all correspondence. including but not limited to mail, electronic mail. telegram and facsimile communications, since 1998 between Defendant and Oceanografia S.A. de C.V., and/or Otto Candies, and/or PEMEX

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 14:**

Please produce any and all tax returns for the preceding five (5) years pertaining to Defendant and Seabulk Offshore de Mexico S.A. de C.V., or any entity related to the charter or sub-charter of the vessels or payment of the expenditures of or on the behalf of the vessels or any joint venture that Defendant has or had a possessory interest

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 15:**

Please produce all records, since 1998. of income and sources of income derived by Defendant relating to entities listed in Interrogatory No. 7 or in Defendant's response to Interrogatory No. 9.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 16:**

Please produce any and all financial agreements entered into since 1998, including but not limited to agreements with third party lenders and financial institutions relating to entities listed in Interrogatory No. 7 or in Defendant's response to Interrogatory No. 9.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17:**

Please produce any and all joint-venture agreements entered into by Defendant with Plaintiff or other party, within the five (5) years prior to the present year, and related to the operation of crew and/or supply vessels in the Gulf of Mexico.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 18:**

Please produce copies of all records or other documents received by or prepared by you, pertaining to account statements, monetary transaction documentation and/or correspondence, and all financial documentation relating to entities listed in Interrogatory No. 7 or in Defendant's response to Interrogatory No. 9.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19:**

Please produce all credit card and credit card account statements issued to Defendant, since 1998 and referred to in Interrogatory Number 4 and Number 5.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20:**

Please produce all wire transfers, or copies of transfers, and wire transfer instructions initiated by Defendants since 1998 relating to entities listed in Interrogatory No. 7 or in Defendant's response to Interrogatory No. 9

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 21:**

Please produce all wire transfers, or copies of transfer, and all confirmations, receipts or deposit advice received by Defendant since 1998 relating to entities listed in Interrogatory No. 7 or in Defendant's response to Interrogatory No. 9

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 22:**

Identify the policy, plan, procedure, protocol, or methodology describing or relating to the recordation, levying and accountancy for revenue pertaining to equipment rental furnished to PEMEX and others charged by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. from 1998 to present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 23:**

Identify the policy, plan, procedure, protocol, or methodology describing or relating to the recordation, levying and accountancy for revenue pertaining to per diem charges for room and board for PEMEX workers on the vessels charged by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. from 1998 to present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 24:**

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to port expenses and fees for the vessels charged by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. since 1998.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 25:**

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to agency expenses and fees for the vessels charged by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. since 1998

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 26:**

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to manifest charges and fees for the vessels charged by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. since 1998

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 27:**

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to marketing expenses and fees for the vessels charged by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. since 1998.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 28:**

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to fuel expenses and fees for the vessels charged by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V since 1998.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 29:**

Please produce any and all documentation, records or materials regarding the purchase of fuel by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V., its subsidiary, affiliate, joint-venturer or parent organization, relating to   vessels  chartered from Plaintiff or any Joint Venture in the Gulf of Mexico Region, which Defendant participated in since 1998.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 30:**

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to crew expenses, fees and wages for the vessels charged by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. since 1998.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 31:**

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to lubrication expenses and fees for the vessels, charged by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. since 1998.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 32:**

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to groceries and other necessaries expenses and fees for the vessels, charged by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. since 1998.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 33:**

Please produce any and all documentation, records or materials regarding the expenditure of monies on repairs, repair parts or maintenance and upkeep relating to vessels' owned or chartered from Plaintiff to Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. and/or Defendant or the relating to any joint-venture entered into by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. and Plaintiff.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 34:**

Please produce all invoices pertaining to parts and equipment, and relating to the vessels and/or the joint venture between Plaintiff and Oceanografia and/or Seabulk Offshore de Mexico S.A de C.V..

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 35:**

Please sign and produce to us the attached Form SSA-7050-F4, Request for Social Security Earnings Information, filling in your Social Security number, date of birth and any other names you have used.

**RESPONSE:**

# PLAINTIFF'S REQUEST FOR ADMISSION

## REQUEST FOR ADMISSION NO. 1:

ADMIT or DENY: Defendant executed the agreements described in Plaintiff's Original Complaint?

## ANSWER:

## REQUEST FOR ADMISSION NO. 2:

ADMIT or DENY: Defendant received $25,000 on January 5, 1998 from Oceanografia S.V. de C.V..

## ANSWER:

## REQUEST FOR ADMISSION NO. 3:

ADMIT or DENY: Defendant received $1.500 on January 7, 1998 from Oceanografia S.V. de C.V..

## ANSWER

## REQUEST FOR ADMISSION NO. 4:

ADMIT or DENY: Defendant received $5,000 on March 4, 1998 from Oceanografia S.V. de C.V..

## ANSWER

**REQUEST FOR ADMISSION NO. 5:**

ADMIT or DENY: Defendant received $3,000 on April 6, 1998 from Oceanografia S.V. de C.V..

**ANSWER**

**REQUEST FOR ADMISSION NO. 6:**

ADMIT or DENY: Defendant received $1,500 on May 22, 1998 from Oceanografia S.V de C.V..

**ANSWER**

**REQUEST FOR ADMISSION NO. 7:**

ADMIT or DENY: Defendant received $15,000 on June 19, 1998 from Oceanografia S.V. de C.V..

**ANSWER**

**REQUEST FOR ADMISSION NO. 8:**

ADMIT or DENY: Defendant received $2,000 on August 17, 1998 from Oceanografia S.V. de C.V..

**ANSWER**

**REQUEST FOR ADMISSION NO. 9:**

ADMIT or DENY: Defendant received $120,000 on September 29, 1998 from Oceanografia S.V. de C V .

**ANSWER**

160140v1                                               23

**REQUEST FOR ADMISSION NO. 10:**

ADMIT or DENY: Defendant received $5,000 on October 15, 1998 from Oceanografia S.V. de C.V..

**ANSWER**


**REQUEST FOR ADMISSION NO. 11:**

ADMIT or DENY: Defendant received $20,000 on November 18, 1998 from Oceanografia S.V. de C.V.

**ANSWER**


**REQUEST FOR ADMISSION NO. 12:**

ADMIT or DENY: Defendant received $10,000 on December 8, 1998 from Oceanografia S.V. de C.V..

**ANSWER**


**REQUEST FOR ADMISSION NO. 13:**

ADMIT or DENY: Defendant received $10,000 on March 9, 1999 from Oceanografia S.V. de C.V..

**ANSWER**


**REQUEST FOR ADMISSION NO. 14:**

ADMIT or DENY: Defendant received $10,000 on March 29, 1999 from Oceanografia S.V. de C.V..

**ANSWER**

**REQUEST FOR ADMISSION NO. 15:**

ADMIT or DENY: Defendant received $10,000 on April 20, 1998 from Oceanografia S.V. de C.V..

**ANSWER**

**REQUEST FOR ADMISSION NO. 16:**

ADMIT or DENY: Defendant transferred $24,000 on January 7, 1998 to Oceanografia S.V. de C.V..

**ANSWER**

**REQUEST FOR ADMISSION NO. 17:**

ADMIT or DENY: Defendant transferred $1,000 on January 8, 1998 to Oceanografia S.V. de C.V..

**ANSWER**

**REQUEST FOR ADMISSION NO. 18:**

ADMIT or DENY: Defendant transferred $2,000 on August 28, 1998 to Oceanografia S.V. de C.V..

**ANSWER**

**REQUEST FOR ADMISSION NO. 19:**

ADMIT or DENY: Defendant used the Visa charge card associated with Merrill Lynch account number 53c-07119 for personal purchases

**ANSWER**

## REQUEST FOR ADMISSION NO. 20:

ADMIT or DENY: Defendant used the Visa charge card associated with Merrill Lynch account number 53c-07215 for personal purchases.

## ANSWER