*8 7*

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 2 8 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| SEABULK TOWING, INC., f/k/a | § | |
| HVIDE MARINE TOWING, INC., | § | |
| and SEABULK OFFSHORE, LTD. | § | |
| | § | CIVIL ACTION NO. B-01-094 |
| | § | |
| V. | § | In Admiralty |
| | § | |
| OCEANOGRAFIA S.A. de C.V. and | § | |
| AMADO YAÑEZ OSUNA | § | |

**PLAINTIFFS' MOTION FOR SANCTIONS UP TO AND INCLUDING
DEFAULT AND MEMORANDUM IN SUPPORT THEREOF**

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, BROWNSVILLE DIVISION:

Seabulk Towing, Inc. (Seabulk Towing) and Seabulk Offshore, Ltd. (Seabulk Offshore),

(collectively "Seabulk"), Plaintiffs in the above styled cause, and pursuant to Rules 24, 34(c), 37,

41 and 45 of the Federal Rules of Civil Procedure, move for an order for sanctions including

striking the Answers of Defendants, and entry of a default judgment against Defendants

Oceanografia and Yañez, jointly and severally, for Defendants' contempt of this Court's two

orders compelling full and complete responses to Interrogatories and Request for Production of

Documents propounded on Defendants Oceanografia S.A. de C.V. and Amado Yañez Osuna,

with which Defendants have not been complied, and in support of this motion, Seabulk shows as

follows:

## I.    CONTUMACIOUS CONDUCT

Plaintiffs assert that Defendants have engaged in continuous conduct which requires the

sanction of striking Defendants' Answers, and entry of a judgment by default against the

Defendants jointly and severally.  First, there was a motion for default judgment because

Defendants did not answer the suit. Next, there was a third-party discovery dispute after Otto Candies failed to produce documents. There have been depositions without the deponents appearing, necessitating certificates of non-appearance. Next, as will be detailed, they failed and refused to fully and completely respond to appropriate discovery requests and responded only when the Court ordered them to, failed to provide a privilege log, and failed to verify their responses and have failed to adequately and meaningfully supplement their responses, although ordered to do so. ·Finally, Defendants have reneged on a settlement agreement. In sum, at every turn, Oceanografia and Yañez have refused to comply with the Federal Rules of Civil Procedure and this Court's Orders.

Defendants have exhibited conduct that warrants sanctions and default. Defendants did not designate their expert witnesses by the deadline set forth in this Court's Scheduling Order; this Court accommodated such untimely designation by allowing an extension for same. Defendants, faced with the imposition of further maritime attachment and the deadline for designation of expert witnesses, agreed to a settlement and filed a Notice of Settlement, yet, reneged on the agreements. This conduct patterns that in *Dorsey v. Scott Wetzel Services, Inc.,* 84 F.3d 170, 171 (5th Cir. 1996). Dismissal with prejudice was appropriate in *Dorsey;* default judgment is appropriate in this case.

Under the Federal Rules of Civil Procedure, in reviewing a court's dismissal of an action, four factors are to be considered: "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate would lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *U.S. v. Reyes*, 2002 WL 31253724 (6th Cir. 2002) Those factors mandate dismissal or default in this

case. Oceanografia and Yañez have thwarted the discovery process and have failed to comply with this Court's Orders, causing prejudice to Plaintiffs in discovery and the presentation of their claims. Additionally, by divesting Oceanografia of assets, they have diminished Plaintiffs' ability to obtain security or satisfaction for their claims. The Orders and admonitions of this Court have gone unanswered and unheeded. Clearly, this pattern and practice of contumacious and dilatory conduct, resulting in the obstruction of justice, warrants the relief sought by Plaintiffs herein.

Oceanografia has been previously admonished by this Court that obstructionist tactics would not be tolerated. At the hearing on October 12, 2001, this Court warned Yañez personally, and at the hearing on December 3, 2002, admonished counsel that if Oceanografia and Yañez failed to comply with the Court's order, the Court would consider sanctions up to and including entry of a default judgment.

Pursuant to Rule 41(b), a Court may dismiss an action if a plaintiff fails to comply with orders of the Court. In this case, Plaintiffs were required to bring Defendants' failures to this Court's attention and then Defendants failed to comply with the Orders of this Court. While dismissal with prejudice or judgment by default is a harsh sanction, where there is a "clear record of delay or contumacious conduct . . . and if lesser sanctions would not serve the best interests of justice," then such final orders are wholly appropriate. *Twardowsky v. Klevenhagen*, 164 F.R.D. 213, 214 (S.D. Tex. 1995), citing *Colle v. Brazos County*, 981 F.2d 237 (5th Cir. 1993); *Ford v. Sharp*, 758 F.2d 1018 (5th Cir. 1993).

Defendants' conduct here not only flouts the Federal Rules of Civil Procedure, but is additionally contemptuous of this Court's orders. No lesser sanction than entry of a judgment by default would serve the interest of justice. At a time when the Defendants were subject to an

order of this Court compelling additional responses, they ignored that Order along with Plaintiffs' additional discovery requests until again were ordered by the Court. Now they have ignored both of the Court's orders compelling more thorough discovery responses. The Defendants will continue in their contempt of the Court and its orders until a judgment is entered against them.

Defendants' conduct is willful and has prejudiced plaintiffs. Defendants have been warned of the consequences of failing to abide by the Rules and the Court's orders. The pattern of Defendants is such that no lesser sanction would be effective or serve the interests of justice.

## II.    DEFENDANTS' PATTERN OF NON-RESPONSIVENESS

### A.    Filing of the Lawsuit/Failure to Timely Answer

Seabulk filed this case against Defendants, Oceanografia S.A. de C.V. and Amado Yañez Osuna (collectively "Oceanografia"), on June 7, 2001, in the District Court for the United States for the Southern District of Texas, Brownsville Division. Neither Oceanografia nor Yañez answered timely. Due to Oceanografia's failure to answer, on September 18, 2001, Seabulk moved for default. Eventually, the motion for default was denied and Oceanografia answered on October 2, 2001. Additionally, and prior to Oceanografia's answer, because Seabulk had asserted an alter ego claim and had become aware that Oceanografia and an entity known as "Otto Candies" were closely related, Seabulk sought and obtained permission to serve third-party discovery on Otto Candies.

### B.    Discovery of Third Party Documents/Failure to Respond Timely.

On September 10, 2001, Seabulk directed a subpoena to Otto Candies, L.L.C. ("Otto Candies") and to Hibernia National Bank ("Hibernia"), which subpoenae are attached hereto as **Exhibit A**. Interestingly, just as Oceanografia had not answered the suit, neither Otto Candies

nor Hibernia responded in any manner to the subpoenae in a timely fashion. Accordingly, Seabulk moved to compel discovery. In response to the motion to compel, Otto Candies sought at every turn to avoid production; however, the Eastern District of Louisiana was not persuaded and ordered production. A copy of the Order dated March 12, 2002, is attached as **Exhibit B.** Nevertheless, not until May 1, 2002 (months after the court ordered production) did Otto Candies provide responses to Seabulk's Requests for Production of Documents.

### C.    Non-Appearance for Deposition.

Oceanografia and Yañez moved for a protective order to block the taking of Yañez' deposition which the Court denied. Nevertheless, as shown by the attached non-appearance certificate, he did not appear as noticed on June 18, 2002, marked as **Exhibit C.** Further, on June 20, 2002, Otto Candies did not appear for scheduled depositions. Otto Candies did not move for a protective order until June 20, 2002, *after* the depositions were to take place. On July 18, 2002, Yañez appeared for his oral deposition.

### D.    Discovery to Oceanografia & Yañez/Failure to Respond.

On December 18, 2001, and December 20, 2001, Seabulk served on Oceanografia Interrogatories and First and Second Requests for Production of Documents. On January 22, 2002, Seabulk served discovery on Yañez. After extensions granted by Seabulk, on February 4, 2002, Oceanografia purported to have responded to this discovery; on June 14, 2002, Yañez answered the requests. Attached as **Exhibits D and E** are copies of Oceanografia's and Yañez' Responses to Interrogatories and Requests for Production.

The responses themselves reveal the inadequacy of the responses; in particular, the responses are not verified and are not specific, and no privilege log was produced as required by the Federal Rules of Procedure. Such answers were not responses at all; therefore, Plaintiffs

assert that there were no responses of Oceanografia or Yañez on file. *See: Cabales v. U.S.*, 51 F.R.D. 498, *affirmed*, 447 F.2d 1358 (S.D.N.Y. 1970).

Further, as described in greater detail on pages 13-16 herein, Oceanografia and Yañez have not produced any information regarding revenue as to PEMEX. While there is documentary evidence as to invoices from Oceanografia to PEMEX, there is no information showing payments by PEMEX, no offsets, credits, adjustments, or rejections of invoices. Further, the information that was provided, that is, invoices only, is complete through March, 2001, even though the vessels were operating until early 2002. In short, while there is no revenue information at all, there is no revenue information and no invoice information for at least a year past the time when invoice information was provided.

### E.    First Order Compelling Discovery Not Heeded.

Plaintiffs filed a motion to compel against Oceanografia and Yañez based on their insufficient and unverified answers to interrogatories and lack of production of responsive documents. The Court, after reviewing the non-verified and non-specific answers, granted these motions on September 10, 2002, *overruling **all** objections* and ordering full and complete responses, but neither Oceanografia nor Yañez have supplemented their responses in an adequate and meaningful manner. A more complete discussion of the inadequacy of these answers is set forth at pages 13-18 herein.

### F.    Second Motion to Compel Discovery Disregarded.

In August, 2002, Seabulk served its Second and Third Sets of Interrogatories and Requests for Production. Again, only after no timely responses, objections or motion for protective order, Seabulk was forced to file another motion to compel production. The Court granted the motion to compel on December 5, 2002, and held that Oceanografia had waived any

objections. Oceanografia did not provide any answers until December 2, 2002, the day before the hearing. As before, the responses were not verified, there was no privilege log, and as is shown detail in pages 13-18 herein, there were not specific responses or objections. Additionally, it appears that there are various documents (and types of documents) which Plaintiffs believe are (or should be) responsive to the requests which were not produced. Again, in the absence of verification, no responses were filed. *Continental Ins. Co. v. McGraw*, 110 F.R.D. 679, 682 (D.C. Colo.), citing *Cabales v. United States*, 51 F.R.D. 498, 499 (S.D.N.Y. 1970) Without verification by the individuals actually responding, and given the pattern of non-disclosure or untimely disclosure, Plaintiffs cannot rely that the answers and documents provided are the only items that are responsive. Oceanografia has not supplemented its answers, so as to be considered proper responses.

G.    **Discovery to Yañez/Orders Compelling Discovery Disregarded.**

Seabulk served discovery requests on Yañez on January 22, 2002. Again, neither responses nor objections were filed in a timely fashion. Instead, on February 22, 2002, Yañez filed a Motion to Quash the discovery, to vacate the attachment, and to dismiss the action, an improper vehicle for being protected from discovery. The Court, after reviewing Yañez' incomplete, unverified responses, on September 10, 2002, ordered him to respond fully and completely. Yañez to this day has not adequately and specifically supplemented his responses, as discussed at pages 16-18.

Also, as with Oceanografia, Seabulk served Second and Third Sets of Interrogatories and Requests for Production in August, 2002, which Yañez did not answer until December 2, 2002, all with the above-referenced defects. Following the Court's order of December 5, 2002,

compelling responses, Yañez has not supplemented, except to produce information on payment of his personal expenses by Oceanografia.

**H.    Liquidation of Assets by Oceanografia with Yañez Participation.**

To address serious concerns it had regarding Yañez' participation in the liquidation of Oceanografia's assets, thereby rendering it insolvent and unable to satisfy the financial issues in the suit, Seabulk also moved for maritime attachment, including attachment of Yañez' residence in Houston, Texas.  Ultimately, this Court denied the attachment of the residence, largely due to the representations of Defendants that it was not liquidating assets and that Defendants had sufficient assets to satisfy any potential judgment in the case.

Also, Seabulk has learned that Defendants have transferred the bulk of their owned vessels to a joint venture, interestingly involving Otto Candies[1], the very party which originally refused to produce documents in this case!  These transfers must be viewed against the backdrop of the repeated assurances by the parties and counsel that there are no efforts to hide assets, that Oceanografia is a reputable company, which is not divesting itself of assets. *See*:  Transcript of Hearing on Default Judgment, October 12, 2001, attached as **Exhibit F.**

Seabulk has also learned that, after it arrested the M/V YUN KANAAB, (formerly the M/V Seabulk Baton Rouge, then owned by Oceanografia), on March 15, 2001, Oceanografia transferred at least four (4) more vessels out of Oceanografia[2] to Candies Mexican Investments

---

[1]    In fact, Oceanografia's Responses to Second Set of Interrogatories and Requests for Production of Documents, indicates in response to Request No. 1, that a majority of vessels previously owned by Oceanografia are now owned by an entity called "Candies Mexican Investments S. de R.L. de C.V."  It is certainly worthy of note that it was Otto Candies that fought so vigorously to hinder discovery and refuse to produce documents.

[2]    Seabulk arrested the M/V YUN KANAAB in New Orleans, Louisiana, to satisfy claims, similar to those set forth herein.  That suit was settled by Oceanografia by the payment of $1,000,000.00, which sum was credited to Oceanografia as part of the accounting in the instant case.  Stated differently, while Seabulk has been forced to arrest vessels to protect its claims and has credited the proceeds of the settlement to the benefit of Oceanografia, Defendants have chosen to transfer and divest themselves of assets, depriving Plaintiffs of the full opportunity to secure or to satisfy their claims.

between March 15, 2001, and June 4, 2001.[3]   (The M/V SEABULK AUSTIN and M/V SEABULK CAMERON were transferred to Candies March 5 and 11, respectively.)  **(Exhibit G, Bills of Sale)**  These transfers demonstrate that Oceanografia is divesting itself of its assets, resulting in making it more difficult for Plaintiffs to obtain security for their claims, or to satisfy a judgment, the precise concern Seabulk expressed to this Court in its pleadings and hearings on the various motions to compel and for sanctions.

**I.      Reneged on Settlement.**

Additionally, Oceanografia and Yañez agreed in a March, 2002, meeting with Seabulk Offshore's President, Andrew Brauninger, to settle the claims in the instant suit, so as to avoid further attachment of assets and to postpone designation of expert witnesses, and filed a Notice of Settlement on April 19, 2002, attached hereto as **Exhibit H**.  However, Oceanografia and Yañez then refused to execute the settlement agreement, and subsequently refused to fund the agreed settlement.

In summary, Oceanografia and Yañez have displayed a continuous pattern of disrespect for this Court and it processes, and contemptuous disregard of the orders of this Court.

### III.    DEFENDANTS' RESPONSES AND OBJECTIONS DEFECTIVE AND IMPROPER

While Oceanografia and Yañez ("Oceanografia") responded to discovery requests *after extensions and/or orders compelling production*, neither did so fully, completely or properly. First, Oceanografia's and Yañez' objections were *not* lodged in accordance with the rules and, the

---

3       Additionally, Yañez misrepresented the ownership of the vessels in his oral deposition, taken July 18, 2002. When asked about the ownership of YUMIL KANAAB and YUN KANAAB (formerly SEABULK AUSTIN and SEABULK BATON ROUGE, respectively), he testified they were owned by Oceanografia. (Exhibit M, Deposition of Yañez, p. 85, 86) He also testified that Otto Candies had not purchased any vessels from Oceanografia. (Depo. pp. 248-250) However, Yañez executed bills of sale to Candies Mexican Investments, S. de R.L. de C.V. for the SEABULK AUSTIN on March 5, 2001 and the SEABULK BATON ROUGE on March 20, 2001. **(Exhibit G)**

Court has overruled the objections and ordered Defendants to respond fully and completely. They have not done so. Second, their responses have yet to be verified, despite the Federal Rules of Civil Procedure's requirement and Seabulk's request for verification. Third, Oceanografia has not provided a privilege log, as required by the rules and requested by Seabulk. In fact, Seabulk provided such a log at Oceanografia's request on September 26, 2002. This was done to ensure that all documents to which a privilege was being asserted were categorized and described, pursuant to the rules and request of Defendants' counsel. It was also at a time when the trial date of this case was looming, yet Defendants failed to produce a privilege log and failed to supplement their responses.

Finally, Oceanografia's and Yañez' responses, if they can be considered responses, are not proper under the Federal Rules of Civil Procedure in terms of specificity and completeness. Rather, the majority of responses and answers are in global terms, referring to a set of documents or previous responses, which this Court found deficient, ordering Defendants to respond fully and completely, which they have failed to do.

A.    **Objections and Privilege Waived**

1.    **Objections Overruled.**

This Court, in its Orders of September 10, 2002, overruled Defendants' objections, and its December 5, 2002, Orders, attached hereto as **Exhibits I** and **J**, ruled that Defendants *had waived* all objections and ordered full and complete responses. Defendants have not challenged those rulings. Defendants have not supplemented their responses in a substantive or meaningful way (except that Yañez produced additional documents related to the payment of his personal and household expenses by Oceanografia). While they may assert that they have produced all information requested, that assertion cannot be believed, as will be shown in more detail at pp.

13-18 below. The waiver of objections, as ordered by this Court, is of particular significance in connection with the documents over which there may be a claim of privilege.

**2. Privilege Claims.**

Plaintiffs read this Court's Orders overruling objections to include any claims of privilege on the basis of attorney-client privilege or attorney work product doctrine. Defendants did not ask this Court to clarify the meaning of the Order, as Plaintiffs had done when it appeared that the Court overruled claims of privilege. However, if Defendants would now assert that its claims of privilege survive, these claims can no longer survive because Defendants have yet to produce a privilege log.

In order to assert a privilege and withhold information on the basis of privilege, the party must serve a privilege log on the requesting party. By so doing, the resisting party can provide information to the requesting party to allow the requesting party to evaluate the claim of privilege. Fed. R. Civ. P. 26(b)(5). Further, the resisting party must describe the nature of the material withheld. Oceanografia has not complied with this requirement of the rule.

Where a privilege log may impose an unreasonable burden, the resisting party must *also* request a protective order. Oceanografia has not moved for a protective order, even though several of its responses assert that the request is burdensome. That objection was overruled pursuant to this Court's Orders of September 10, 2002, and December 5, 2002. There is no showing of "good cause" to protect any information. Fed.R.Civ.P. 26(c) and (c)(2). Oceanografia did not timely filed a motion for protective order, nor has it taken any steps required by the rules to resist discovery, but failed to answer, or properly object to, numerous

requests on the basis of privilege.[4] This inaction and inattention, coupled with this Court's Order mandates that no documents may be withheld or responses avoided on the basis of privilege.

**B.    Answers Not Verified.**

Fed.R.Civ.P. 33(b)(1) provides that "Each interrogatory shall be answered separately and fully in writing under oath . . . " The purpose for this rule is simple; that is, that the party itself must locate the information, review the information and then verify or confirm to the requesting party that the information is responsive and that the answers are true and complete. The definition of the word "verify" makes this clear: "to confirm or substantiate in law *by oath*; to establish the *truth, accuracy, or reality* of . . . " (Webster's New Collegiate Dictionary, 1981.) The interrogatory responses in this case were not answered under oath. There is no verification of any kind. These answers, then, may not be considered appropriate responses. *Continental Ins. Co. v. McGraw*, 110 F.R.D. 679, 682 (D.C. Colo.), citing *Cabales v. United States*, 51 F.R.D. 498, 499 (S.D.N.Y. 1970) At the very least, it is an indication of the callous disregard by Oceanografia and Yañez for compliance with the rules and disregard of the Court's orders. Accordingly, this Court should sanction Oceanografia and Yañez for their failure and refusal to provide full and complete answers and verification by Oceanografia and Yañez after the Court's Orders of September 10, 2002, and December 5, 2002, compelling complete discovery.

**C.    Nature of Other "Responses."**

The various "responses" of Oceanografia and Yañez are replete with improper objections, all of which have been overruled. The "responses" are of little value and demonstrate Oceanografia and Yañez' reluctance or refusal to respond fully. Seabulk will demonstrate here

---

4    Defendants' actions are confusing at best because they insisted that Plaintiffs prepare a privilege log and set forth specific information they wanted included in the log, even after Plaintiffs had specifically and timely objected on this basis. Plaintiffs complied; Defendants never have.

where those "responses" reveal a lack of information in response to other requests. However, it is not only difficult or impossible, but also not the duty of Seabulk, to know what documents Defendants may have and to tell them which ones they should produce. Accordingly, what Seabulk will show here is that Defendants have produced a great volume of paper, but very little of it actually responsive to the requests and, in certain cases, where documents are produced, it is clear that other documents are responsive and have not been produced.

### 1.    KPMG Report.

Oceanografia and Yañez respond to a number of requests: " . . . see the KPMG *audit report*, and the documents sent to KPMG which, on information and belief, already are in Seabulk's possession. (*See for example*: Response to First Request for Production No. 21, 35-46, attached hereto as **Exhibit K**, Emphasis Added.) Oceanografia and Yañez served such a "response," however, the answer is non-responsive.

KPMG was the accounting firm hired jointly by Plaintiffs and Defendants to attempt to audit the joint operation of the chartering and operation of vessels bareboat chartered by Seabulk to Oceanografia, and the joint venture company, Seabulk de Mexico S.A. de C.V., set up to assist Oceanografia in the management of the vessels. The audit was sought because it was apparent to Seabulk that there were problems in the accounting of the time charter revenue from the vessels and expense of operations. KPMG was hired in October, 2000, and it completed only a report in July 25, 2001. Despite the fact that KPMG was to perform a complete audit, they were only able to produce a report (not an audit), to which Defendants refer, because Oceanografia would not produce relevant documents, dealing with various revenues from PEMEX and other entities. (It is also important to bear in mind that this lawsuit seeks recovery of amounts due Seabulk Towing

for activities which occurred in 1999, 2000, 2001 and even into 2002. The KPMG report is final as of March 31, 2001.)

The PEMEX documents are of significant interest and relevance because, after Seabulk Offshore bareboat chartered certain vessels to Oceanografia, Oceanografia in turn, time-chartered certain vessels to PEMEX. Pursuant to an agreement between the parties, the time charter revenues were to be paid to a joint venture company, Seabulk de Mexico S.A. de C.V., owned 51% by Oceanografia and 49% by Seabulk Towing. Seabulk is in possession of certain time-charter documents and has produced them to Oceanografia; however, no such documents have been produced by Oceanografia, even though they are known to exist. No information regarding the time charter revenues has been produced, except for the KPMG report of financials through March 31, 2001, which was completed July 25, 2001. Why might Oceanografia decide not to produce the agreements and other records? Because without this information, it is impossible for Seabulk to determine what amounts of profits it is entitled to under the terms of its agreement with Oceanografia.

This tactic, that is not producing complete documentation, is not new. Instead, it is the *same problem* that KPMG faced. Specifically, KPMG could only produce the "report" Oceanografia refers to, but could not produce a full audit. Seabulk was and remains, unable to determine how much, if any, profit is owed to it. Seabulk Towing has asserted a claim for 49% of the joint venture profits, yet it cannot determine the amount of the profits because Oceanografia will not produce all the documentation related to the revenues, including those from PEMEX.

Additionally, the "report" of KPMG demonstrates that there are other documents that have not been produced. In fact, in Documents SEABULK.007711-.007743, and

SEABULK.007744-.007775, there are references to "other contracts" between Oceanografia and PEMEX. Despite the numerous discovery responses related to PEMEX, Oceanografia has not provided documents referencing time-charters, contracts, revenues or other financial information. Oceanografia did produce invoices directed to Pemex. But there are no documents or responses which indicate whether Pemex paid the invoices, disputed the invoices, was given any credits or allowed any offsets, or any other information which would make the invoices meaningful. In addition, the Pemex invoices produced by Oceanografia go through March, 2001, the same ending point as the KPMG report, whereas Oceanografia had Seabulk vessels time-chartered to Pemex through March, 2002. Assuming the Pemex invoices produced by Oceanografia were representative of the revenues derived by Oceanografia from the chartering of Seabulk vessels, Seabulk Towing still lacks the information regarding total revenues from which to calculate profits it is owed. Oceanografia has also failed to produce any information regarding revenues produced from other sources which are referred to in the KPMG report.

2.   **PEMEX Invoices & Correspondence.**

How, then, does Seabulk have any knowledge that there are documents that Oceanografia has not produced? As stated earlier, while it is not possible for Seabulk to know what Oceanografia has in terms of documents (nor is it Seabulk's duty to identify for Defendants the areas it thinks the responses are deficient), Seabulk has learned from certain documents that have been produced that clearly there are other documents in existence that have not been produced.

Specifically, attached as **Exhibit L,** is a document numbered "OCEAN.00864," entitled "Relacion de contratros." It shows that PEMEX is a client and it shows the amounts that Oceanografia has invoiced; however, there is no supporting information with respect to this document, there are *no PEMEX contracts, no revenue documents and no other supporting*

*information* (except the incomplete invoices directed to Pemex), as specifically requested by

Seabulk. This document clearly shows the potential for revenues, a portion of which are due and

owing to Seabulk Towing.   Without the documentation and an accurate calculation of the

revenues, Seabulk is prejudiced in its ability to seek profits to which it is entitled and to prepare

for its prosecution of this case.

Further, Seabulk has requested *all forms of correspondence* between Oceanografia and/or

Otto Candies, and/or PEMEX.  Request for Production No. 13 seeks:

> ". . . any and all correspondence, including but not limited to mail,
> electronic mail, telegram and facsimile communications, since
> 1998 between Defendant and Oceanografia S.A. de C.V., and/or
> Otto Candies, and/or PEMEX."

He answered:

> "Yañez has had no written correspondence with Otto Candies or
> PEMEX.  His only written correspondence with Oceanografia is
> the Shareholder Agreement . . . .  If this request is against Yañez in
> his representative capacity as an employee of Oceanografia, Yañez
> objects on grounds of overbreadth, irrelevance, vagueness and
> undue burdensomeness."

The Court overruled these objections in its Order of September 10, 2002.  Accordingly,

there is no plausible argument that the information is not in existence or is not relevant.

Information of this nature must be produced, particularly by the General Director and principal

shareholder/alter ego of Oceanografia, Amado Yañez Osuna.  He must not be allowed to hide

behind his assertion that he was "merely an employee" when the documentation that has been

produced, as well as the information known to date, demonstrate that Yañez knows full well what

is being done at Oceanografia, largely at his sole discretion as the alter ego of the corporate

entity.  Yet, Yañez and Oceanografia have produced virtually  *no correspondence!*  As regards

Otto Candies, Oceanografia produced six bills of sale of vessels to an Otto Candies company,

Candies Mexican Investments, S. de R.L. de C.V., between March, 2001 and June, 2001. Otto Candies, L.L.C. produced a draft of a loan agreement for which the six Oceanografia vessels transferred to Candies Mexican Investments were collateral. In addition, Yañez testified that Candies and Oceanografia were contemplating a joint venture arrangement but refused to testify about the details on the grounds of confidentiality (**Exhibit M**, Excerpt from July 18, 2002, Yañez deposition.) Additional documents from Otto Candies indicate that Oceanografia has chartered vessels from Otto Candies since 1999. Certainly, given the nature and duration of the relationship amongst these parties, significantly more documentation than the bills of sale exists.

As regards Pemex, from 1999 to 2002, Oceanografia time-chartered at least ten Seabulk owned vessels to Pemex, which according to the KPMG report, generated gross revenues in excess of $14.5 million through March 31, 2001. It is inconceivable that the managing director of Oceanografia did not correspond with Pemex, yet in the thousands of pages of documents produced by Oceanografia and Yañez, there is no correspondence between Yañez and Pemex except two letters regarding damage to a Pemex platform and a letter regarding damage to the SEABULK KATIE.

In the face of the Orders holding that Oceanografia and Yañez waived all objections compelling full and complete responses, on September 20, 2002, Yañez supplements, erroneously captioned in the Eastern District of Louisiana action, attached hereto as **Exhibit N**, as follows:

> "All writings to or from Yañez pertaining to the Seabulk vessels or the joint venture have now on information and belief been produced. See the eight boxes . . ."

This answer is not responsive *at all* to the Request for Production No. 13 seeking correspondence between Yañez, PEMEX and Otto Candies, L.L.C., as ordered by the Court. It is, however, indicative of the callous disregard Yañez has for this Court and it's orders.[5]

It has also come to the attention of Seabulk that Oceanografia has used the bareboat chartered vessels for other "non-PEMEX" work, which has generated revenues and no documentation of these ventures has been produced. It is clear that Oceanografia and Yañez resist divulging the revenues because they do not desire to distribute to Seabulk Towing what is owed to Seabulk Towing pursuant to their agreements.

### 3.    Emails and Correspondence.

There are other documents that Oceanografia and Yañez should have provided to Seabulk as well, or at the very least, Oceanografia and Yañez should have responded that "you have everything we have and we have everything you have" and referenced the documents that Seabulk provided to Defendants. Instead, for example, in connection with Document SEABULK.007796 **(Exhibit O),** Seabulk produced an email message between Andy Brauniger and Gerald Hoffman regarding Yañez' attempt to solicit pricing for the financial audit, (which later became the "report" of KPMG.) Yet, there are no emails in any of the Defendants' production showing this email, or others related to it. Similarly, there is no correspondence between Yañez and other accounting firms on the issue of the audit/report, despite the fact that Plaintiffs know that such correspondence must exist!

---

5       For additional examples of lack of responsiveness by Oceanografia and Yañez, Plaintiffs refer the Court to Oceanografia's answers and supplemental responses to Plaintiffs' First Set of Interrogatories and Requests for Production, Interrogatories 8, 14, 15, 17, 18, 19, 20, 21, 22, 23 and Responses to Requests for Production 3, 7, 8, 14, 15, 29, 30, 31, 32 and 46.

## IV.    SUMMARY OF FACTS; REQUEST FOR SANCTIONS

As has been shown above, at every turn, both Oceanografia and Yañez have disregarded the Orders of this Court, have delayed, have answered in a less than forthcoming fashion, have failed to abide by the Federal Rules of Civil Procedure, have failed to produce a privilege log, and have failed to verify their answers. Even more egregious, they have placed Plaintiffs in the position of, less than two (2) months before trial, examining what documents should have been produced by Defendants and attempting to locate documents that clearly exist.

These are not the burdens of a party requesting discovery. Rather, where a party (Oceanografia or Yañez) seeks to resist discovery, there must be a solid basis for it, which has not been shown. The burden to resist discovery is high. Oceanografia and Yañez have failed to meet their burdens, have resisted legitimate discovery and have placed Seabulk and this Court in the position of attempting to force them to comply with the "rules of the game." This Court has entered two separate orders compelling Oceanografia and Yañez to respond to Plaintiffs' discovery requests, but they have still failed and refused to comply with this Court's Orders.

This Court advised counsel and the parties that it "would consider sanctions if the orders compelling production are not met." (See: **Exhibit P,** Minute Entry of Motion Hearing; Transcript of hearing requested and will be filed upon receipt if obtained prior to hearing on the instant motion.) The actions of Oceanografia and Yañez warrant such sanctions.

### 1.    Sanctions and Attorneys' Fees.

As is obvious from the above, Seabulk has been required to spend an inordinate amount of time in preparing and filing motions to compel discovery (in this Court and in Louisiana) and participating in hearings that are required to decide same.

171048

Accordingly, given the actions described herein, Plaintiffs request sanctions including the entry of a default judgment against Oceanografia and Yañez, jointly and severally, together with monetary sanctions for their contumacious conduct. Plaintiffs request attorneys' fees in the amount of $15,000.00, all of which has been necessitated by the conduct described herein, in direct contravention of the rules.

### 2.    Attachment.

Further, Plaintiffs would renew its request for attachment and garnishment of the property, particularly Account No. 179-9061735-65 at Chase Bank's offices in Houston, Texas, and that 5 Camden Circle, Sugar Land, Texas, previously asserted in "Seabulk's Opposed Motion for Inclusion in Rule B attachment of Newly Discovered Property of Defendants," filed June 27, 2002, attached as **Exhibit Q,** as security for payment of monetary sanctions.

### V.    CONCLUSION AND PRAYER

As shown above, Oceanografia and Yañez have wholly failed to comply with the orders of this Court and the mandates of the Federal Rules of Civil Procedure by failing to timely and fully respond to all discovery requests (as exemplified in the PEMEX revenue matter). They failed to lodge timely and appropriate objections, supported by privilege logs where required, and by failing to verify their answers, and have waived their objections to discovery, as reflected in the Court's orders. Given the length of time that such discovery requests have been outstanding, considering that Seabulk has made attempts to resolve the issues, and considering that this Court has even had to intervene to compel discovery, there is no excuse for Oceanografia's or Yañez' continued failure and refusal to provide *full and complete and verified* responses to all requests. The Defendants' conduct constitutes continuing contempt of this Court's Orders.

Plaintiffs request that this Court strike Defendants' Answers for failure to comply with the Court's Orders and enter a Judgment by Default jointly and severally against Defendants as to their liability to Seabulk Offshore and Seabulk Towing. Further, given Defendants' conduct, Plaintiffs would ask that this Court award attorneys' fees and expenses, as set forth above.

WHEREFORE, Plaintiff, Seabulk moves this Honorable Court to enter an Order striking Defendants' Answers herein for their contempt of this Court's Orders compelling discovery and entry of Judgment by Default with Prejudice against Defendants jointly and severally, and an Order granting attorneys' fees and attachment as security for the monetary sanctions.

Respectfully submitted,

THE KLEBERG LAW FIRM

Frank L. McNiff, Jr.
State Bar No. 07419100
Federal ID No. 12595
James F. Buchanan
State Bar No. 03287500
Federal ID No. 0328
800 N. Shoreline Blvd., Suite 900 North
Corpus Christi, Texas 78401
(361) 693-8500 Telephone
(361) 693-8600 Facsimile

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF CONFERENCE

As this motion seeks a default judgment against Defendants jointly and severally, Counsel for Defendants should be considered as opposed.

James F. Buchanan

## CERTIFICATE OF SERVICE

I hereby certify that I have on this **27** day of January, 2003, served a copy of the foregoing on all counsel of record via the United States Postal Service, properly addressed and postage prepaid.

Keith N. Uhles
James H. Hunter, Jr.
ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.
55 Cove Circle
Post Office Box 3509
Brownsville, Texas  78523-3509

Rufus C. Harris III
Alfred J. Rufty III
HARRIS & RUFTY, L.L.C.
1450 Poydras Street, Suite 1510
New Orleans, Louisiana  70112

James F. Buchanan

IN THE UNITED STATES DISTRICT COURT
Southern District of Texas
Brownsville Division

Seabulk Towing, Inc., f/k/a Hvide Marine Towing, Inc.,      :
and Seabulk Offshore, Ltd.                                 :
                                                           :
vs.                                                        :      Civil Action No. B-01-094
                                                           :          In Admiralty
                                                           :
                                                           :
Oceanografia S.A. de C.V. and Amado Yanez Osuna            :

## NOTICE OF INTENTION
## TO TAKE DEPOSITION BY WRITTEN QUESTIONS

To Defendants: Amado Yanez Osuna and Oceanografia S.A. de C.V.

You will please take notice that fourteen (14) days from the service of a copy hereof with attached questions, a deposition by written questions will be taken of:
     Otto Candies, L.L.C.
        17271 Highway 90, Des Allemands, LA 70030-0025


before a Notary Public for
## MARSHALL'S BUSINESS RECORDS
## 802 N. CARANCAHUA, SUITE 670, CORPUS CHRISTI, TX 78470-0800
or its designated agent. Which deposition with attached questions may be used in evidence upon the trial of the above styled and numbered cause pending in the above named court. Notice is further given that request is here made as authorized under Rule 45, Federal Rules of Civil Procedure, to the officer taking this deposition to issue a subpoena duces tecum and cause it to be served on the witness to produce any and all records as described on the attached questions and/or Exhibit(s) and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, and to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of the same may be made and attached to said deposition.                                                                :

James F. Buchanan                          Frank L. McNiff, Jr.
THE KLEBERG LAW FIRM                       THE KLEBERG LAW FIRM
800 N. Shoreline Blvd. #900                800 N. Shoreline Blvd. #900
Corpus Christi, TX 78401-3709              Corpus Christi, TX 78401-3709
(361) 693-8680  Fax (361) 693-8600         (361) 693-8680  Fax (361) 693-8600
Attorney for Plaintiff                     Attorney for Plaintiff
FB # 0328                                  FB # 12595

I certify that a true and exact copy of the foregoing Notice of Direct Questions was mailed to the respective parties and/or attorneys of record by certified mail, postage prepaid, hand-delivered or faxed.

Dated: September 10, 2001                       by _____

Order No. 40671.5

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
Southern District of Texas
Brownsville Division

Seabulk Towing, Inc., f/k/a Hvide Marine Towing, Inc.,          :
and Seabulk Offshore, Ltd.                                      :
                                                                :
vs.                                                             :        Civil Action No. B-01-094
                                                                :                   In Admiralty
                                                                :
Oceanografia S.A. de C.V. and Amado Yanez Osuna                 :

# DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR:

## Otto Candies, L.L.C.

1.   Please state your full name, occupation and official title.

     ANSWER_____

2.   Are you the custodian of records for Otto Candies, L.L.C.?

     ANSWER_____

3.   Are you among those who have possession, custody, control of or access to **any and all records as described on the attached Exhibit "A"?**

     ANSWER_____

4.   Are the aforementioned records kept in the regular course of business of your employer?

     ANSWER_____

5.   Was it in the regular course of business of **Otto Candies, L.L.C.** for a person with knowledge of the act, event, condition, opinion or diagnosis recorded to make the record or to transmit information thereof to be included in such record?

     ANSWER_____

6.   Please state whether these records were made at the time or shortly after the time of the transaction recorded.

     ANSWER_____

7.   Please release exact duplicate of the records as requested on the deposition subpoena, or the originals thereof, for attachment to this deposition. Have you done as requested? If not, why not?

     ANSWER_____

_____
WITNESS (Custodian of Records)

     Before me, the undersigned authority, on this day personally appeared_____,
known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first
duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct.
     SWORN TO AND SUBSCRIBED  before me, this _____day of_____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____

Order No. 40671.5

## DEFINITIONS

The term "document" or "documents" includes, but is not limited to, manuals, correspondence, notes, telexes, contracts, invoices, ledgers, checks, bank drafts, wire transfer confirmations, telegrams, teletypes, faxes, radiograms, memoranda, tabulations, records, reports, report forms, minutes, minute books, records of any communications or conversations [including telephone notes and bills], instructions, letters, bulletins, papers, books, accounts, writings, papers, appointment books, calendar and diary entries, schedules, lists, worksheets, drawings, graphs, charts, photographs, computer printouts, tapes and tape recordings, or any other forms of mechanical recordings or all statements not reduced to writing, microfilm, data computations from which information can be obtained or translated into usable form [including matter used in data processing] and any other writing of whatsoever description including, but not limited to, any computer, although not yet printed out and other forms of preserving information of every kind and description in the actual or constructive possession, custody or control of OTTO CANDIES, L.L.C. or its representatives and/or affiliated companies, wherever located. The term "document" also includes copies of writings when originals are not in the possession, custody or control of OTTO CANDIES, L.L.C., as well as copies bearing notations or containing information in addition to that contained on the original.

## Exhibit "A"

1.    All documents which set forth any accounting of, account number, inventory or other identifying characteristic of any bank account, savings account, checking account, stock account or cash account, in which any tangible or intangible asset owned by Oceanografia S.A. de C.V. and/or Amado Yanez Osuna, or owned in whole or in part by any business enterprise in which Oceanografia S.A. de C.V. and/or Amado Yanez Osuna was or is a participant, has been deposited in United States since January 1, 2000.

2.    All documents which set forth any accounting of, account number, inventory or other identifying characteristics of any bank account, savings account, checking account, stock account or cash account, in which any tangible or intangible asset owned by Oceanografia S.A. de C.V. and/or Amado Yanez Osuna, or owned in whole or in part by any business enterprise in which Oceanografia S.A. de C.V. and/or Amado Yanez Osuna was or is a participant, has been deposited in any country outside of the United States since January 1, 2000.

3.    Any document which references or inventories any tangible or intangible asset owned, in whole or in part, by Oceanografia S.A. de C.V. and/or Amado Yanez Osuna, or any business enterprise of which Oceanografia S.A. de C.V. and/or Amado Yanez Osuna was or is a participant.

4.    Any document which references or inventories any tangible or intangible asset owned, in whole or in part, by Oceanografia S.A. de C.V. and/or Amado Yanez Osuna, or any business enterprise of which Oceanografia S.A. de C.V. and/or Amado Yanez Osuna was or is a participant, which was removed from the United States since March 15, 2001.

5.    Any and all correspondence, data, data transmission, or documents exchanged by or between any officer, agent or representative of Oceanografia S.A. de C.V. and/or Amado Yanez Osuna, whether or not stored, saved, or preserved electronically, which references any debt, outstanding obligation, or sum owned by Oceanografia S.A. de C.V. and/or Amado Yanez Osuna or any business enterprise to which it or he is a participant, to Otto Candies, L.L.C., or any business enterprise to which Otto Candies, L.L.C. or its affiliated companies is a participant.

6.    Any audited or unaudited financial statements or statements of condition for Oceanografia S.A. de C.V. and/or Amado Yanez Osuna, or any business enterprise in which Oceanografia S.A. de C.V. and/or Amado Yanez Osuna or their affiliates are participants, at any time since January 1, 1999.

7.     A complete listing of any and all equipment owned, operated, leased or chartered, in whole or in part, jointly by Oceanografia S.A. de C.V. and/or Amado Yanez Osuna and Otto Candies, L.L.C., or owned, operated, leased or chartered by any business enterprise to which both Oceanografia S.A. de C.V. and/or Amado Yanez Osuna and Otto Candies, L.L.C. or their affiliated companies have any financial interest or participation.

8.     Documents related to the present location of the equipment referred to in response to No. 7 above.

9.     Documents related to the presence in the United States of any equipment referred to in response to No. 7 above at any time since March 15, 2001.

10.     Documents which identify any consultant, financial institution [including banks, brokerage companies, insurance companies, venture capital firms, etc.] or other entity which participated in any way in the formation, funding or organization of any business enterprise to which both Oceanografia S.A. de C.V. and/or Amado Yanez Osuna and Otto Candies, L.L.C., or their affiliated companies, are participants.

11.     Any and all correspondence, data, data transmission, or documents exchanged by or between any officer, agent or representative of Oceanografia S.A. de C.V. and/or Amado Yanez Osuna, or any business enterprise to which these companies jointly participate and Otto Candies, L.L.C., or their affiliated companies since March 15, 2001.

Order No. 40671.5

AO 88 (Rev. 11/91) Subpoena in a Civil Case

# United States District Court
## For the Eastern District of Louisiana

Seabulk Towing, Inc., f/k/a Hvide Marine Towing,
Inc., and Seabulk Offshore, Ltd.

vs.

Oceanografia S.A. de C.V. and Amado Yanez Osuna

### SUBPOENA IN A CIVIL CASE

CASE NUMBER: B-01-094

In Admiralty

TO:   Custodian of Records For: Otto Candies, L.L.C.
                                17271 Highway 90
                                Des Allemands, LA 70030-0025

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| The office of the custodian: 17271 Highway 90<br>Des Allemands, LA 70030-0025 | Instanter, 2001 |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
any and all records as described on the attached Exhibit "A"

| PLACE | DATE AND TIME |
|---|---|
| The office of the custodian: 17271 Highway 90<br>Des Allemands, LA 70030-0025 | Instanter, 2001 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b) (6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]*                     Attorney for Plaintiff | September 10, 2001 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
James F. Buchanan and Frank L. McNiff, Jr.
MARSHALL'S BUSINESS RECORDS
802 N. Carancahua, Suite 670, Corpus Christi, TX 78470-0800   (361) 884-1736

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

Order No. 04-40671-005

AO 88 (Rev. 11/91) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 9-19-2001 | 17271 Hwy 90 Dis Allimands La 78030 |

SERVED ON (PRINT NAME)
OHS Candies L.L.C.

MANNER OF SERVICE
Jma - Leon

TITLE
executive Secretary

SERVED BY (PRINT NAME)
Gerald J Harper

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on   9-19-2001
DATE

GERALD J. HARPER
Gerald J Harper
SIGNATURE OF SERVER

2044 PAXTON St
ADDRESS OF SERVER

Harvey La 70058

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel the production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person,

except that, subject to the provisions of clauses (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## IN THE UNITED STATES DISTRICT COURT
### For the Southern District of Texas
### Brownsville Division

Seabulk Towing, Inc., f/k/a Hvide Marine Towing,   :
Inc., and Seabulk Offshore, Ltd.   :
  :
vs.   :    Civil Action No. B-01-094
  :       In Admiralty
  :
Oceanografia S.A. de C.V. and Amado Yanez Osuna   :

### NOTICE OF INTENTION
### TO TAKE DEPOSITION BY WRITTEN QUESTIONS

To Defendant(s) by and through their attorney(s) of record: Rufus C. Harris, III, James H. Hunter, Jr., Alfred J. Rufty, III and Keith N. Uhles

To other party/parties by and through their attorney(s) of record:

Pursuant to Rule 31, Federal Rules of Civil Procedures, you will please take notice that fourteen (14) days from the service of a copy hereof with attached questions, a deposition by written questions will be taken of Custodian of Records for:

Hibernia National Bank (Financial),  **Eastern District, New Orleans Division**
    225 Baronne St., Eleventh Floor  New Orleans, LA 70112

before a Notary Public for    Marshall's Business Records (361) 884-1736  Fax (361) 882-9249
                    802 N. Carancahua, Suite 670, Corpus Christi, TX 78470

or its designated agent, which deposition with attached questions may be used in evidence upon the trial of the above-styled and numbered cause pending in the above named court. Notice is further given that request is hereby made as authorized under Rule 45, Federal Rules of Civil Procedure, to the officer taking this deposition to issue a subpoena duces tecum and cause it to be served on the witness to produce any and all records as described on the attached questions and/or Exhibit(s) and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access and to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of the same may be made and attached to said deposition.  All electronic or magnetic data should be produced in a paper format unless otherwise specified.

James F. Buchanan
THE KLEBERG LAW FIRM
800 N. Shoreline Boulevard Suite 900 North Tower
Corpus Christi TX 78401-3709
(361) 693-8500 Fax (361) 693-8600
Attorney for Plaintiff(s)
FB# 0328

Frank L. McNiff, Jr.
THE KLEBERG LAW FIRM
800 N. Shoreline Boulevard Suite 900 North Tower
Corpus Christi, TX 78401-3709
(361) 693-8500 Fax (361) 693-8600
Attorney for Plaintiff(s)
FB# 13595

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all respective parties and/or attorneys of record by hand delivery, FAX, and/or certified mail, return receipt requested, on this day.

Dated: May 21, 2002               by  _Karen Marshall_

Order No. 04-40671-006



# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## Southern District of Texas
## Brownsville Division

Seabulk Towing, Inc., f/k/a Hvide Marine Towing, Inc.,  :
and Seabulk Offshore, Ltd.                               :
                                                         :
vs.                                                      :    Civil Action No. B-01-094
                                                         :            In Admiralty
                                                         :
Oceanografia S.A. de C.V. and Amado Yanez Osuna          :

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR:

### Hibernia National Bank

1.    Please state your full name, occupation and official title.

      ANSWER_____

2.    Are you the custodian of records for Hibernia National Bank?

      ANSWER_____

3.    Are you among those who have possession, custody, control of or access to any and all records as described on the attached Exhibit "A"?

      ANSWER_____

4.    Are the aforementioned records kept in the regular course of business of your employer?

      ANSWER_____

5.    Was it in the regular course of business of Hibernia National Bank for a person with knowledge of the act, event, condition, opinion or diagnosis recorded to make the record or to transmit information thereof to be included in such record?

      ANSWER_____

6.    Please state whether these records were made at the time or shortly after the time of the transaction recorded.

      ANSWER_____

7.    Please release exact duplicate of the records as requested on the deposition subpoena, or the originals thereof, for attachment to this deposition. Have you done as requested? If not, why not?

      ANSWER_____

_____

WITNESS (Custodian of Records)


      Before me, the undersigned authority, on this day personally appeared_____,
known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first
duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct.

      SWORN TO AND SUBSCRIBED  before me, this _____day of_____, 20_____.


_____

NOTARY PUBLIC


My Commission Expires:_____


Order No. 40671.6

EXHIBIT "A"

Any and all documents which set forth any and all accounting of, account number, inventory or other identifying characteristic of any bank account, savings account, checking account, stock account or cash account, in which any transfer of money was made by Oceanografía S.A. de D.V. and/or Amado Yanez Osuna, to Hibernia National Bank, including but not limited to the below-listed bank account numbers, which has been deposited since January 1, 2000.

ACCOUNT NUMBERS:    204-689-5    Otto Candies, L.L.C.
                    9130004072   Candies Mexican Investments
                                 S. de R.L. de C.V.

40671-6

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 MAR 12 PM 4: 27

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SEABULK TOWING, INC., ET AL.                 MISCELLANEOUS ACTION

VERSUS                                        NO. 01-3791

OCEANOGRAFIA S.A. de C.V., ET AL.            SECTION "J"(1)

### ORDER AND REASONS

Before the Court is Otto Candies' Objection to Magistrate's
Discovery Order (Rec. Doc. 21). Upon reviewing the discovery
order, the parties' memoranda, and the applicable law, the Court
concludes that Otto Candies' objections should be overruled and the
Magistrate Judge's Order sustained.

### Background

This matter arises out of a civil action pending in federal
court in Brownsville, Texas, wherein Seabulk Towing is suing a
Mexican company, Oceanografia, and its officer, Amado Osuna,
alleging breach of contract. In August 2001, Seabulk sought and
obtained permission from the Texas district court to serve third-
party discovery on Otto Candies, one of Seabulk's competitors in

DATE OF ENTRY
MAR 1 3 2002

1

EXHIBIT B

the offshore supply boat business, whom Seabulk learned was closely related to Oceanografia.

Seabulk caused a subpoena duces tecum to be issued by this Court on September 10, 2001, which was served on Otto Candies on September 19, 2001. In its discovery request, Seabulk sought to obtain information relating to the assets of Oceanografia in the United States, assets removed from the United States, debts of Oceanografia, financial statements, and the names of financial institutions and location of various equipment. On September 24, 2001, counsel for Otto Candies, who is also counsel for Oceanografia in the Texas action, faxed a letter to counsel for Seabulk, stating that Otto Candies regarded the subpoena as deficient, because it was premature,[1] overburdensome, and did not allow enough time for response. There was no other response by Otto Candies to the subpoena until November 2, 2001, when it objected on the grounds of prematurity, burden, and confidentiality.[2]

---

[1] Otto Candies objected on the grounds of prematurity, because issue had not yet been joined at that time.

[2] The Magistrate Judge notes that there is evidence that Seabulk attempted to cooperate with Otto Candies to resolve any problems with the scope of the subpoena and requested specific objections after the September 24, 2001, letter and before it received the November 2, 2001, objections.

2

Thereafter, on December 18, 2001, Seabulk filed a motion to compel production and argued that Otto Candies had waived all of its objections to the subpoena.  Otto Candies opposed the motion, asserting that it timely objected, the subpoena sought proprietary information, the requested information was irrelevant, the document was premature, production of the documents would impose an undue burden on it, and this Court should defer to the Texas Court to establish the scope of discovery.[3]

Magistrate Judge Sally Shushan issued an order granting in part and denying in part Seabulk's motion to compel on February 4, 2002.  Magistrate Judge Shushan concluded that Otto Candies timely objected to the subpoena on the grounds of prematurity, inadequate time to respond, and burden, in its September 24, 2001, letter to Seabulk.[4]  However, citing Fed. R. Civ. P. 45(c)(2)(B), Magistrate Judge Shushan concluded that Otto Candies waived its objection that the subpoena sought proprietary information, as that objection was

_____

[3] As to the last objection, Magistrate Judge Shushan points out that she held a telephone conference in order to determine if the parties agreed that the issues raised in the motion to compel should be resolved in the Texas action.  The parties did not, so Magistrate Judge Shushan resolved the issues.

[4] Although, she noted that Otto Candies' objections as to prematurity and inadequate time to respond are now moot given that issue has been joined and more than four months have passed since the subpoena was served.

3

not made until more than six weeks after service of the subpoena was served.[5]

Next, Magistrate Judge Shushan addressed Otto Candies' objection to the burden of responding as to each specific actual request by Seabulk.[6] She concluded that categories 1, 2 and 5-10 of the subpoena were not unduly burdensome, primarily because the information sought in those requests were restricted by specific dates and she limited the necessary production by Otto Candies to those dates. However, Magistrate Judge Shushan found that Otto Candies should not be required to make any response to categories 3,4, and 11 of the subpoena, because the scope of those requests were too broad and/or could result in production of voluminous documents that would not be relevant to the underlying suit.

Otto Candies then filed its objection to Magistrate Judge

---

[5] Rule 45(c)(2)(B) provides:

[A] person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.

[6] Additionally, Magistrate Judge Shushan noted that while Otto Candies did not timely object to the discovery request on the issue of relevancy, its relevancy objection was subsumed in the question of burden.

4

Shushan's order, which is presently before the Court.

## Discussion

This court reviews discovery rulings by a magistrate judge under the "clearly erroneous" standard as provided in 28 U.S.C. § 636(b)(1)(A): "A judge of the court may reconsider any pretrial matter ... where it has been shown that the magistrate's order is clearly erroneous or contrary to law." In <u>Castillo v. Frank</u>, 70 F.3d 382, 385-86 (5th Cir. 1995), the Fifth Circuit confirmed that 28 U.S.C. § 636(b)(1)(A) specifically requires the district court to apply a "clearly erroneous" standard when reviewing a magistrate judge's ruling on a non-dispositive, pretrial motion such as a discovery motion.

Moreover, Otto Candies' Objections to Magistrate Judge Shushan's order were filed pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, which provides in pertinent part:

> Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order.... The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be *clearly erroneous or contrary to law.*

(Emphasis added). Accordingly, under 28 U.S.C. § 636(b)(1)(A) and Rule 72(a), Magistrate Judge Shushan's order should be upheld by

5

this Court unless it is "clearly erroneous or contrary to law."

Upon reviewing the order in this case, the Court concludes that the Magistrate Judge applied the appropriate legal standards to the issues raised in the motion to compel and opposition and did not make any clear error in her rulings. In its objection to this Court, Otto Candies only specifically takes issue with Magistrate Judge Shushan's findings that discovery against it should be allowed in part because: (1) the close business relationship between Candies and Oceanografia, and (2) Seabulk should not be required to wait until discovery is concluded as to Oceanografia before seeking production from Otto Candies in light of the scheduling order in the Texas case. The Court does not find that Otto Candies has demonstrated that Magistrate Judge Shushan was clearly wrong in these determinations, nor any of her other rulings.

Accordingly, it is **ORDERED** that Otto Candies' Objections to Magistrate's Discovery Order are **OVERRULED**. Withing ten (10) working days of the entry of this order, Otto Candies is ordered to comply with the Magistrate Judge's discovery order.

6

New Orleans, Louisiana, this 12th day of March, 2002.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

7

**ORIGINAL** 1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE SOUTHERN DISTRICT OF TEXAS
2              BROWNSVILLE DIVISION

3

4    SEABULK TOWING, INC., ET AL )
                                 )
5    VS.                         )    C.A. NO. B-01-094
                                 )
6    OCEANOGRAFIA, S.A. DE C.V.  )
     ET AL                       )
7

8

9    _____

10        CERTIFICATE OF NONAPPEARANCE OF

11            AMADO YANEZ OSUNA

12              JUNE 18 2002

13   _____

14

15   A P P E A R A N C E S:

16

17   FOR THE PLAINTIFFS:

18        Clay Scheitzach
          THE KLEBERG LAW FIRM
19        One Shoreline Plaza
          800 North Shoreline Boulevard
          Corpus Christi, Texas  78401-3709
20

21   FOR THE DEFENDANTS:

22        James H. Hunter, Jr.
          ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.
23        55 Cove Circle
          Brownsville, Texas  78521
24

25   ALSO PRESENT: Julio Galvan, Interpreter

EXHIBIT C

CERTIFICATE OF NONAPPEARANCE

1

2

     I, ERIC SCHWAB, Certified Shorthand Reporter
3  in and for the State of Texas, hereby certify to the
   following facts, to wit:
4
     That Notice of Intention to Take Oral
5  Deposition of AMADO YANEZ OSUNA was issued to AMADO
   YANEZ OSUNA by and through James H. Hunter, Jr.,
6  attorney of record;

7      That the deposition of AMADO YANEZ OSUNA was
   noticed to commence at 10:00 a.m., June 18, 2002, at
8  the Law Offices of Royston, Rayzor, Vickery &
   Williams, 55 Cove Circle, Brownsville, Texas;
9
     That at 9:35 a.m., on June 18, 2002, I
10 personally appeared at the Law Offices of Royston,
   Rayzor, Vickery & Williams, 55 Cove Circle,
11 Brownsville, Texas, for the purpose of reporting the
   deposition of AMADO YANEZ OSUNA pursuant to said
12 notice;

13     That by 10:05 a.m., June 18, 2002, the witness,
   AMADO YANEZ OSUNA, had not appeared.
14
     GIVEN UNDER MY HAND AND SEAL OF OFFICE this
15 18th day of June, 2002.

16

17 _____
   Eric Schwab
18 SCHWAB COURT REPORTING SERVICE
   2900 Central Boulevard, Suite C
19 P.O. Box 3665
   Brownsville, Texas  78520
20 (956) 544-5126
   Certification No. 401
21 Expires:  12/31/02

22

23

24

25

CERTIFICATE OF COURT REPORTER

1

2

3        I, ERIC SCHWAB, Certified Shorthand Reporter in
and for the State of Texas, hereby certify that the
4   foregoing Certificate of Nonappearance of AMADO
YANEZ OSUNA is true and correct;

5

6        That the original, along with a true and
correct copy, of the foregoing Certificate of
Nonappearance was delivered to Clay Scheitzach, the
7   Kleberg Law Firm, One Shoreline Plaza, 800 North
Shoreline Boulevard, Corpus Christi, Texas, and a
8   true and correct copy of the foregoing Certificate
of Nonappearance was delivered to James H. Hunter,
9   Royston, Rayzor, Vickery & Williams, 55 Cove Circle,
Brownsville, Texas.

10

11        I further certify that I am neither counsel
for, related to, nor employed by any of the parties
in the action in which this proceeding was taken,
12  and further that I am not financially or otherwise
interested in the outcome of the action.

13

        CERTIFIED to by me this 18th day of
14
June, 2002.

15

16                    _____
                     Eric Schwab
17                   SCHWAB COURT REPORTING SERVICE
                     2900 Central Boulevard, Suite C
18                   P.O. Box 3665
                     Brownsville, Texas  78520
19                   (956) 544-5126
                     Certification No. 401
20                   Expires:  12/31/02

21

22                         -  -  -

23

24

25

```
 1                    P R O C E E D I N G S
 2    9:59 a.m.
 3                    MR. SCHEIZACH:  This is Clay
 4    Scheitzach of the Kleberg Law Firm representing
 5    Seabulk in this case and we came and appeared to
 6    take the deposition of Amado Yanez Osuna.  Mr. Osuna
 7    was noticed of the deposition over 30 days ago.
 8                    Yesterday a motion was filed in the
 9    Brownsville court seeking a protective order.  That
10    motion was denied and we came here today to take Mr.
11    Osuna's deposition and Mr. Osuna is not present.
12                    MR. HUNTER:  This is Jim Hunter
13    representing Oceanografia and Mr. Amado Yanez Osuna.
14    Mr. Yanez could not be here today.  He was
15    unavailable today.
16                    We did file a motion for protective
17    order and incorporate that motion into this
18    proceeding and would state that neither the time or
19    the date or place of deposition was reasonable but
20    have offered to make Mr. Yanez available for
21    deposition next Friday in Mexico City.
22                    That's all.
23                    MR. SCHEIZACH:  We're going to enter
24    into the record the order from the Court which
25    denied them the motion as well as our correspondence
```

5

1   with counsel regarding the notice of the deposition

2   as Exhibits 1 and 2.

3              MR. HUNTER:  I don't have a copy of

4   my motion but I would like to substitute as Exhibit

5   Number 3 a copy of our motion and I'll get it to you

6   before you leave today, Eric.

7   10:01 a.m.

8

9                         -  -  -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
 2                     BROWNSVILLE DIVISION

 3
    SEABULK TOWING, INC., ET AL )
 4                                )
    VS.                           )  C.A. NO. B-01-094
 5                                )
    OCEANOGRAFIA, S.A. DE C.V.   )
 6  ET AL                         )

 7                  REPORTER'S   CERTIFICATION
                 NONAPPEARANCE PROCEEDINGS
 8                     JUNE 18, 2002

 9

10       I, Eric Schwab, Certified Shorthand Reporter in

11  and for the State of Texas, hereby certify to the

12  following:

13       That the above and foregoing is a true and

14  accurate transcript of the Nonappearance

15  Proceedings.

16

17       CERTIFIED to by me this 18th day of June, 2002.

18

19

20  _____
    Eric Schwab
21  Texas CSR 401
    Expiration Date:  12/31/02
22  SCHWAB COURT REPORTING SERVICE
    2900 Central Boulevard, Suite C
23  P.O. Box 3665
    Brownsville, Texas  78520
24  (956) 544-5126

25
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SEABULK TOWING. INC., f/k/ | * | CIVIL ACTION |
| HVIDE MARINE TOWING, INC., | * | |
| and SEABULK OFFSHORE, LTD. | * | |
|           Plaintiffs | * | NUMBER: C.A. B-01-094 |
| | * | |
| VERSUS | * | |
| | * | |
| OCEANOGRAFIA S.A. de C.V and | * | In Admiralty |
| AMADO YANEZ OSUNA | * | |
|           Defendants | * | |

## RESPONSES TO INTERROGATORIES AND
## REQUEST FOR PRODUCTION OF DOCUMENTS

NOW COMES defendants, Oceanografia, S.A. de C.V. and Amado Yanez Osuna, who respond to the First Set of Interrogatories and Request for Production of Documents propounded to it by plaintiff, Seabulk Towing, Inc., as follows:

**INTERROGATORY NO 1:**

Identify, by full and correct name, including middle name and nicknames, the physical address of their respective residences, telephone numbers, driver's license numbers, Social Security numbers and dates of birth, all individuals who assisted in answering these Interrogatories and for each individual, specifically state the Interrogatory or Interrogatories (by number) each individual who assists in answering and the documents and things used in answering each respective Interrogatory.

1

EXHIBIT D

**RESPONSE TO INTERROGATORY NO 1:**

Alfred J. Rufty III; Amado Yanez Osuna; Teddy Curole; Victor Reyes.

**INTERROGATORY NO 2:**

If any of the parties identified in Interrogatory No. 1 has been convicted of a crime punishable by imprisonment in excess of one year or involving dishonesty, false statement, or crime of moral turpitude, state the type of offense, the date of offense, the date of conviction, the cause number, the court, the country, and the state where the individual was tried or the case was handled.

**RESPONSE TO INTERROGATORY NO 2:**

Objection – irrelevant.

**INTERROGATORY NO 3:**

Please identify any and all persons having knowledge either directly or indirectly of any relevant facts or documents concerning the issues, claims, damages, and defenses in this lawsuit, and for each person listed state with particularity the substance of the relevant facts of which that person has knowledge. This list is not limited to the witnesses that will testify on OCEANOGRAFIA S.A. de C.V. or AMADO YANEZ OSUNA's behalf at trial, but necessarily includes each such witness. It is the position of Plaintiff SEABULK TOWING, INC. and SEABULK OFFSHORE, LTD. that any witness who testifies in this case will have to be identified in response to the Interrogatory and Plaintiff SEABULK TOWING, INC. and SEABULK OFFSHORE, LTD. will object to anyone who attempts to testify who is not identified in the answer to this Interrogatory.

2

## RESPONSE TO INTERROGATORY NO 3:

Objection. This interrogatory is vague, overbroad, and premature, as witness lists are not yet due to be exchanged, and all persons with potential knowledge are not yet known as our investigation into the facts and circumstances of this case is continuing. Further, it would be virtually impossible and over burdensome for each witness to state each and every single fact of which he or she has knowledge, either directly or indirectly, that may be of any relevance to any issue, claim, damage or defense of this case. This interrogatory therefore is not reasonably susceptible of being answered.

Subject to these objections, the following persons have substantial knowledge regarding issues in this case:

(a) Amado Yanez Osuna – an officer of Oceanografia, concerning the negotiation of the contracts at issue; the conduct of Oceanografia's operations; the relationship between Oceanografia and PEMEX; as well as the finances of his company; and communications with Seabulk and its representatives.

b) Teddy Curole – as vice director of operations, Mr. Curole has substantial knowledge regarding the operations of Oceanografia, including those concerning the various Seabulk vessels, and the interrelationship between Oceanografia and PEMEX.

(c) Victor Reyes – as an employee of Oceanografia with accounting responsibilities, Mr. Reyes is knowledgeable concerning the issuance of invoices by Oceanografia and the payment by Oceanografia of the invoices of other entities. Mr. Reyes is also knowledgeable concerning the company's finances generally and some of its bookkeeping and accounting practices.

(d) Valentine Angeles – Mr. Angeles also is an employee of Oceanografia with accounting responsibilities. He is knowledgeable on the same topics as listed above with respect to Mr. Reyes.

(e) Wesley Freeman – Mr. Freeman is also knowledgeable concerning the

3

operations of Oceanografia and to some extent with the company's dealings with Seabulk and Seabulk's vessels.

(f) The various and sundry Oceanografia vessel personnel who have worked aboard Seabulk vessel's have some knowledge concerning the operation of those vessels.

(g) KPMG – This accounting firm conducted an audit of the Oceanografia-Seabulk joint venture operation, and its personnel (specifically, those listed in the enclosed audit report) have knowledge concerning the finances of the joint venture operations.

## INTERROGATORY NO 4:

Identify every potential party to this lawsuit and each parties respective relationship to the Defendant in this lawsuit.

## RESPONSE TO INTERROGATORY NO 4:

It is not known what is meant by "Identify every potential party" to this lawsuit. This interrogatory is vague and confusing and it is objected to on these grounds.

## INTERROGATORY NO 5:

Identify and legal theories upon which OCEANOGRAFIA S.A. de C.V. relies on in prosecuting any claim or in establishing any defense in this case.

## RESPONSE TO INTERROGATORY NO 5:

Oceanografia refers Seabulk to the pleadings filed by Oceanografia into the record of this matter. In so responding, Oceanografia objects that discovery has just gotten underway and that the legal theories upon which Oceanografia may rely are not finally determined at this time. Oceanografia does not waive any rights they may otherwise have to amend its pleadings or otherwise pursue additional legal theories in this case.

4

## INTERROGATORY NO 6:

Identify any facts upon which OCEANOGRAFIA S.A. de C.V. relies on asserting any counter-claims and/or defenses in this case.

## RESPONSE TO INTERROGATORY NO 6:

As discovery is just getting underway, Oceanografia is not presently in a position to present all facts in support of its claims and defenses in this case; nor is Oceanografia required to do so at this early stage of the proceeding. Oceanografia accordingly objects to this interrogatory on grounds of prematurity, overbreadth, and vagueness.

Subject to these objections, Oceanografia alleges that the Seabulk vessels had significant and recurring engine problems during the terms of their charter to Oceanografia. The vessels were unseaworthy and Seabulk further failed to provide suitably qualified vessel personnel. As a result, Oceanografia incurred substantial downtime for which it was not paid by its customer PEMEX, causing substantial losses to Oceanografia.

Oceanografia also expended significant monies in repairing deficient conditions aboard the Seabulk vessels. These and other expenses of Oceanografia in connection with the joint venture operation should be recoverable from Seabulk. Further, Seabulk failed to provide adequate administration or funding of the joint venture enterprise.

Finally, the defendant's investment accounts with Merrill-Lynch were wrongfully attached. Seabulk lacked any reasonable basis at the time of the attachment (and still lacks any such basis now) to maintain that Oceanografia is essentially a sham corporation and that its separate existence as a legal entity has been so ignored as to impose liability upon Mr.

5

Yanez for the company's alleged debts.

With respect to Seabulk's claims, Seabulk alleges that it is entitled to payment for expenses that have already been paid and that represent losses relating to the unseaworthy condition of its own vessels. Further, Seabulk fails to properly deduct from the amounts allegedly owed the proper and appropriate joint venture expenses incurred by Oceanografia; and otherwise inflates its claim.

## INTERROGATORY NO 7:

For any statements obtained, but not limited to oral, written or video-taped statements taken by Defendant , or taken on Defendant's behalf, relating to the facts that are the subject of this litigation, please state the following:

- a.    The identity of the person who gave or made the statement.
- b.    The date when the statement was taken.
- c.    The substance of the statement.
- d.    The identity of the person who took the statement.
- e.    Whether the statement was reduced to writing.
- f.    The present location of the statement and the identity of the person now in possession of the statement.
- g.    Whether Defendant will, without a formal request to produce, attach a copy of all statement described in the answer to this interrogatory.

## RESPONSE TO INTERROGATORY NO 7:

None.

## INTERROGATORY NO 8:

Identify with particularity any and all written agreements executed between Defendant and Plaintiff.

6

## RESPONSE TO INTERROGATORY NO 8:

Seabulk already is in possession of all written agreements executed between defendant and plaintiff.

## INTERROGATORY NO 9:

Please enumerate and identify with particularity all financial accounts in which Defendant has a financial, capital, profit or pecuniary interest and which were used in any way in conducting business of Seabulk Offshore de Mexico S.A. de C.V. or used in any way in conducting the business of vessels chartered to Defendant.

## RESPONSE TO INTERROGATORY NO 9:

This information has been requested, and this response will be supplemented upon its receipt.

## INTERROGATORY NO 10:

Please list all credit card and credit card accounts issued to Defendant and used to pay expenses of Amado Yanez Osuna, specifically including but not limited to the card's issuing entity, account number, authorized user(s), and issuance date.

## RESPONSE TO INTERROGATORY NO 10:

Oceanografia objects to this interrogatory on grounds of relevance and on the further ground that Oceanografia's accounts with financial institutions constitute protected proprietary information.

## INTERROGATORY NO 11:

Please list all wire transfers either received or initiated by Defendants and related to

the charter or sub-charter of the vessels or expenditures of or on the behalf of the vessels or any joint venture, specifically including the wire transfer number, the origin account number, the destination account number, the originating party's trade/business name, the receiving party's trade/business name.

**RESPONSE TO INTERROGATORY NO 11**:

See documents enclosed in response to Seabulk's request for production of documents. See also the KPMG audit report (enclosed).

**INTERROGATORY NO 12**:

Please state the relationship between Oceanografia de Mexico S.A. de C.V. and:

a.  Maritima Mexicana S.A. de C.V.
b.  Afranzadora Insurgentes S.A. de C.V.
c.  Soler International
d.  N/O Miguel A. Zenteno
e.  N/O Grupo Carati

**RESPONSE TO INTERROGATORY NO 12**:

a.  This is a company that charters vessel from Oceanografia.

b.  A bonding company that has provided services to Oceanografia.

c.  A bonding company that has provided services to Oceanografia.

d.  An employer-employee relationship, as Mr. Zenteno works for Oceanografia.

e.  A defunct, former company in which an officer of Oceanografia formerly had an interest.

**INTERROGATORY NO 13**:

Please describe and identify any policy, plan, procedure, protocol, or methodology

describing or relating to the recordation, levying and accountancy of income and expenditures for the vessels, including but not limited to: acquisition fees, brokerage fees, handling fees or commission, marketing fees, port expenses and fees, agency expenses and fees, manifest charges, marketing expenses and fees, fuel expenses and fees, crew expenses and fees, hiring fees and expenses, lubrication expenses and fees, groceries and other necessaries expenses and fees charged by Defendant for expenses in operation of the vessels including.

**RESPONSE TO INTERROGATORY NO 13:**

Oceanografia objects on the grounds that this interrogatory is vague and confusing.

**INTERROGATORY NO 14:**

Please describe and identify any and all accounting procedures or standards employed by Defendant, its subsidiary, affiliate, joint-venturer or parent organization, e.g. whether income is recorded on a cash or accrual basis, procedures and standards for the recordation of expenses and/or account payables, procedures and standards for the recordation of wages and crew expenses, procedures and standards for the accountancy of inventory, including depreciation and amortization policies, etc.

**RESPONSE TO INTERROGATORY NO 14:**

Oceanografia objects on the grounds that this interrogatory is vague and confusing.

**INTERROGATORY NO 15:**

Please list with particularity all entities, including but not limited to partnerships, affiliations, joint-ventures, strategic alliances, subsidiaries and/or parent entities that either

9

have a financial, capital, or profit interest in Defendant or that Defendant has a financial, capital, or profit interest in.

**RESPONSE TO INTERROGATORY NO 15:**

Objection. This interrogatory calls for information that is not relevant to the contract dispute between the parties in this case. It also calls for sensitive proprietary business information that is privileged from disclosure. Subject to these objections, however, the answer is none.

**INTERROGATORY NO 16:**

Identify with particularity any and all financial accounts, wherever located that Defendant, its officers and directors, has a possessory interest in the account of access to the account, specifically including but not limited to identification of financial institution, account number, and address of financial institution that Amado Yanez Osuna has transferred money into or out of within the preceding five (5) years.

**RESPONSE TO INTERROGATORY NO 16:**

Objection. This interrogatory calls for information that is not relevant to the contract dispute between the parties in this case. It also is overly burdensome and calls for sensitive proprietary business information that is privileged from disclosure.

**INTERROGATORY NO 17:**

Identify any and all financial accounts that Defendant has deposited funds derived from charter or sub-charter of the vessels or accounts that Defendant has withdrawn funds from to pay expenditures of or on the behalf of the vessels or any joint venture.

10

**RESPONSE TO INTERROGATORY NO 17**:

This information has been requested and will be provided by supplementary response.

**INTERROGATORY NO 18**:

If Defendant contends that either Plaintiff is estopped from suing on a charter agreement for a particular vessel or joint-venture agreement, or Plaintiff did not perform its contractual obligations, explain with particularity what part of the Plaintiff's contractual obligations it did not perform, including a description of the obligation and the exact time, date, duration and place of Plaintiff's nonperformance.

**RESPONSE TO INTERROGATORY NO 18**:

See response to Interrogatory No. 6.

**INTERROGATORY NO 19**:

If Defendant contends the parties modified the terms of a charter agreement, vessel management agreement or joint-venture agreement, state with particularity how and when the parties modified the agreement, including the substance of said modification, whether the modification was oral or written, the dates of the modification, and the persons present during the modification.

**RESPONSE TO INTERROGATORY NO 19**:

Objection. This interrogatory calls for a legal conclusion and is premature as discovery has just commenced. As discovery progresses, Oceanografia will supplement this response, as appropriate.

**INTERROGATORY NO 20**:

11

If Defendant contends any party to the charter agreement, vessel management agreement or joint-venture agreement canceled the agreement, state with particularity all facts supporting the contention.

**RESPONSE TO INTERROGATORY NO 20**:

See response to Interrogatory No. 19

**INTERROGATORY NO 21**:

If Defendant contends its performance of the charter agreement, vessel management agreement or joint-venture agreement was impossible, state with particularity all facts supporting the contention.

**RESPONSE TO INTERROGATORY NO 21**:

See response to Interrogatory No. 19

**INTERROGATORY NO 22**:

If Defendant contends any party to the charter agreement, vessel management agreement or joint-venture agreement rescinded the agreement, state with particularity all facts supporting the contention.

**RESPONSE TO INTERROGATORY NO 22**:

See response to Interrogatory No. 19

**INTERROGATORY NO 23**:

If Defendant contends Plaintiff has not performed any act, or a condition precedent has not occurred, that is necessary for it to file suit, state with particularity the act or event defendant alleges has not occurred.

12

**RESPONSE TO INTERROGATORY NO 23:**

See response to Interrogatory No. 19

**INTERROGATORY NO 24:**

For each other lawsuit, civil or criminal, in which Defendant, or its partnerships, affiliations, joint-ventures, strategic alliances, subsidiaries, or parent entities has been engaged in within the preceding five (5) years, state the date, court, style, docket number and resolution of the case.

**RESPONSE TO INTERROGATORY NO 24:**

Objection – irrelevant. In any event, the only lawsuits that Oceanografia has been involved in over the past five years are:

a.    This suit;

b.    The related suit brought by Hvide Marine Towing in the United States District Court for the Eastern District of Louisiana in 2000 (C.V. Action No. 01-0676);

c.    A lawsuit brought by Oceanografia against Marmex (i.e. Maritima Mexicana S.A. de C.V.) for damages arising from a casualty involving a vessel; this suit is pending in the courts of Mexico.

**REQUEST FOR PRODUCTION OF DOCUMENTS:**

**REQUEST NO. 1:**

Please produce all reports, including observations and opinions, of each and every expert who will be called as a witness by Plaintiff in this cause.

**RESPONSE TO REQUEST NO. 1:**

Objection – premature. The date for producing expert reports has not yet arrived.

13

Further, Oceanografia has not yet determined what experts it will call.

**REQUEST NO. 2**:

Please reduce to tangible form, the subject matter on which the expert is expected to testify, the mental impressions and opinions held by the expert, and the facts known which relate to or form the basis of the mental impressions and opinions held by the expert.

**RESPONSE TO REQUEST NO. 2**:

See response to Request No. 1.

**REQUEST NO. 3**:

Please produce all documentation, including pleadings and settlement documents, which pertain to any lawsuit in which Defendant has ever been engaged, and as referenced in Interrogatories Number 2, 16 and 17.

**RESPONSE TO REQUEST NO. 3**:

Objection – overbreadth, irrelevance, work product doctrine, attorney-client privilege, confidentiality. (Oceanografia has been in business for 34 years, and this request is unreasonable and inappropriate).

**REQUEST NO. 4**:

Please produce all statements pertaining to the transactions made the basis of this suit taken from this Plaintiff's employees and in the possession of Defendant's attorneys or agents.

**RESPONSE TO REQUEST NO. 4**:

None.

14

**REQUEST NO. 5:**

Please produce all non-privileged reports, audits, financial or accounting reviews, consultant records or reports pertaining to the transactions made the basis of this suit.

**RESPONSE TO REQUEST NO. 5:**

See enclosed KPMG audit report. (All documents upon which this audit report was based were transmitted to KPMG and reportedly forwarded to Seabulk).

**REQUEST NO. 6:**

If Defendant or his attorney retained an investigator regarding the allision between the SEABULK TAMMANY and PEMEX, please produce a complete copy of all investigative materials, including but not limited to, correspondence, reports, statements, diagrams, photos, diaries, et cetera, prepared by such investigator up until the date of the filing of Plaintiff's Original Petition, and including any settlement releases and/or judgments, and any record of any reimbursement from a Protection and Indemnity underwriter.

**RESPONSE TO REQUEST NO. 6:**

Objection – work-product doctrine, attorney-client privilege.

**REQUEST NO. 7:**

Please produce any written memorandum, document, note or other piece of physical and/or documentary evidence which you intend to use at the time of trial in your case in chief, rebuttal or for impeachment purposes against Plaintiff.

**RESPONSE TO REQUEST NO. 7:**

Objection – prematurity.  Oceanografia has not yet determined what exhibits it will

introduce at trial, nor is it required to identify them at this time.

**REQUEST NO. 8**:

Please produce copies of all records or other documents received by or prepared by you, pertaining to Defendant's claims, damages and defenses made the basis of this lawsuit.

**RESPONSE TO REQUEST NO. 8**:

This request is objected to as overbroad, vague, and over burdensome. Further, some documents pertaining to this suit are privileged under the attorney-client privilege and the work-product doctrine.

**REQUEST NO. 9**:

Please produce all consolidated financial statements for Oceanografia de Mexico S.A. de C.V. from 1998 to present.

**RESPONSE TO REQUEST NO. 9**:

Oceanografia objects on grounds of relevance and that its financial statements contain proprietary business information that is protected from disclosure.

**REQUEST NO. 10**:

Please produce all consolidated financial statements for Otto Candies and Defendant from 1998 to present.

**RESPONSE TO REQUEST NO. 10**:

None.

**REQUEST NO. 11**:

Please produce all financial reports related to the charter or sub-charter of the vessels,

or related to the expenditures of or on the behalf of the vessels, including but not limited to cash flow statements,

**RESPONSE TO REQUEST NO. 11**:

See enclosed KPMG audit report.


**REQUEST NO. 12**:

Please produce any and all documents describing or relating to accounting procedures or standards employed by Defendant, its subsidiary, affiliate, joint-venturer or parent organization, e.g. whether income is recorded on a cash or accrual basis, procedures and standards for the recordation of expenses and/or account payables, procedures and standards for the recordation of wages and crew expenses, procedures and standards for the accountancy of inventory, including depreciation and amortization policies, etc.

**RESPONSE TO REQUEST NO. 12**:

Oceanografia objects that this request is vague and confusing. Further, under one of many potential interpretations, this request would call for all accounting documents ever produced by Oceanografia.

**REQUEST NO. 13**:

Identify the policy, plan, procedure, protocol, or methodology describing or relating to the recordation, levying and accountancy of income and expenditures for the vessels, including but not limited to: acquisition fees, brokerage fees, handling fees or commission, marketing fees, port expenses and fees, agency expenses and fees, manifest charges,

17

marketing expenses and fees, fuel expenses and fees, crew expenses and fees, hiring fees and expenses, lubrication expenses and fees, groceries and other necessaries expenses and fees charged by Defendant for expenses in operation of the vessels including.

**RESPONSE TO REQUEST NO. 13**:

      See response to Request No. 12.

**REQUEST NO. 14**:

      Please produce all tax returns for the preceding five (5) years pertaining to Defendant and any entity related to the charter or sub-charter of the vessels or payment of the expenditures of or on the behalf of the vessels or any joint venture that Defendant has or had a possessory interest.

**RESPONSE TO REQUEST NO. 14**:

      Oceanografia objects on grounds of relevance and that this request calls for proprietary business information that is protected from disclosure.

**REQUEST NO. 15**:

      Please produce all records, since 1998, of income and sources of income derived by Defendant, and related to the charter or sub-charter of the vessels or expenditures of or on the behalf of the vessels.

**RESPONSE TO REQUEST NO. 15**:

      See enclosed documents and enclosed KPMG audit report. See also the documents upon which the KPMG audit report was based, which on information and belief already was

forwarded to Seabulk.

**REQUEST NO. 16**:

Please produce all charter agreements entered into since 1998, which relate to the charter or sub-charter of the vessels, whether to PEMEX or any other entity, including but not limited to Defendant or any business entity or Joint Venture in which Defendant had a financial or possessory interest.

**RESPONSE TO REQUEST NO. 16**:

Seabulk already is in possession of all charter agreements for its vessels.

**REQUEST NO. 17**:

Please produce any and all charter agreements entered into by Defendant with Plaintiff, on the behalf of Plaintiff, or related to the joint-venture between Plaintiff and Defendant, their subsidiary, affiliate, joint-venturer or parent organization within the five (5) years prior to the present year.

**RESPONSE TO REQUEST NO. 17**:

Seabulk already is in possession of all charter agreements between Oceanografia and Seabulk entities.

**REQUEST NO. 18**:

For all charter agreements entered into between Defendant and any third party(ies) since 1998 and related to the charter or sub-charter of the vessels, whether to PEMEX or any other entity, including but not limited to Defendant or any business entity or Joint Venture in which Defendant had a financial or possessory interest, please produce the corresponding

vessel log, captain's log and vessel status reports for each chartered vessel.

**RESPONSE TO REQUEST NO. 18**:

Oceanografia objects to this request on grounds of relevance insofar as the request calls for information concerning Oceanografia's charters with third-parties unrelated to this suit. Further, Oceanografia's documents pertaining to its contracts with other entities uninvolved with this litigation constitute protected proprietary business information. Further, it would be unduly burdensome for Oceanografia to have to respond to this request. Subject to these objections, see the enclosed documents.

**REQUEST NO. 19**:

Please produce the vessels logs for the vessels SEABULK CAROLYN, SEABULK CAMERON, SEABULK AUSTIN, SEABULK BATON ROUGE, SEABULK SABINE, up to and including May 11, 2000.

**RESPONSE TO REQUEST NO. 19**:

Oceanografia is endeavoring to locate and copy these documents (to the extent in its possession) and will supplement this response when the documents become available. Further, however, Oceanografia objects that this request is not reasonably limited in time inasmuch as there is no starting date for the logs requested.

**REQUEST NO. 20**:

Please produce the vessel logs for the vessel SEABULK KATIE up to and including July, 12, 2000.

**RESPONSE TO REQUEST NO. 20**:

None.

**REQUEST NO. 21**:

Please produce the vessel status reports and invoices for charters of all vessels to PEMEX.

**RESPONSE TO REQUEST NO. 21**:

See enclosed documents.    See also the KPMG audit reports and underlying documents.

**REQUEST NO. 22**:

Please produce any and all joint-venture agreements entered into by Defendant with Plaintiff or other party, within the five (5) years prior to the present year, and related to the operation of crew and/or supply vessels in the Gulf of Mexico.

**RESPONSE TO REQUEST NO. 22**:

Seabulk already is in possession of the joint venture agreement entered into between itself and Oceanografia.  As to any other joint venture agreements entered into between Oceanografia and other entities uninvolved in this suit, they are not relevant and further are protected proprietary business records. Subject to these objections, Oceanografia has no such joint venture agreements, except for the one with Seabulk.

**REQUEST NO. 23**:

Please produce all shareholder agreements entered into on behalf of Defendant, its

21

partnerships, affiliations, joint-ventures, strategic alliances, subsidiaries, or parent entities,

relating to any joint-venture agreement with Plaintiff.

**RESPONSE TO REQUEST NO. 23**:

Already in the possession of Seabulk.

**REQUEST NO. 24**:

Please produce all articles of incorporation, bylaws, corporate minutes, incorporation

filing and registration for Seabulk Offshore de Mexico S.A. de C.V.

**RESPONSE TO REQUEST NO. 24**:

All such documents as exist will be produced upon receipt.

**REQUEST NO. 25**:

Please produce copies of all records or other documents received by or prepared by

you, pertaining to account statements, monetary transaction documentation and/or

correspondence, and all financial documentation.

**RESPONSE TO REQUEST NO. 25**:

This request for "all financial documentation" is vague, overbroad, calls for irrelevant

documents, and is insusceptible of a reasonable response. This request also may call for

documents protected by the attorney-client privilege and the work-produce doctrine and

protected proprietary business documentation unrelated to Seabulk.

**REQUEST NO. 26**:

Please produce all credit card and credit card account statements issued t o Defendant

since 1998 and referred to in Interrogatory Number 24.

22

**RESPONSE TO REQUEST NO. 26**:

Oceanografia objects on grounds of irrelevance and on the ground that this request calls for proprietary financial information that is protected from disclosure.

**REQUEST NO. 27**:

Please produce all wire transfers, or copies of transfers, and wire transfer instructions initiated by Defendants for all transfers to Amado Yanez Osuna

**RESPONSE TO REQUEST NO. 27**:

See response to Request No. 26.

**REQUEST NO. 28**:

Please produce all wire transfers, or copies of transfer, and all confirmations, receipts or deposit advice received by Defendants from Amado Yanez Osuna.

**RESPONSE TO REQUEST NO. 28**:

See response to Request No. 26.

**REQUEST NO. 29**:

Please produce copies of all records or other documents received by or prepared by you, including all invoices for charter hire to PEMEX.

**RESPONSE TO REQUEST NO. 29**:

See enclosed documentation. Further, see the KPMG audit report, and the documents sent to KPMG which, on information and belief, already are in Seabulk's possession.

**REQUEST NO. 30**:

Please produce copies of all records or other documents received by or prepared by

23

you, including all invoices for charter hire to any third party for the vessels since 1998.

**RESPONSE TO REQUEST NO. 30**:

This request is vague and confusing, as it is not known what is meant by "all records ... received by or prepared by you ... for the vessels." If it means every document relating in any way to the vessels, it is redundant and overburdensome. Subject to these objections, see response to Request No. 29.

**REQUEST NO. 31**:

Please produce copies of all records or other documents received by or prepared by you, including any ledger and subsidiary ledger showing income and expenditures for the vessels since 1998.

**RESPONSE TO REQUEST NO. 31**:

See response to Request No. 30.

**REQUEST NO. 32**:

Please produce copies of all records or other documents received by or prepared by you, including invoices and receipts for expenditures for the vessels since 1998.

**RESPONSE TO REQUEST NO. 32**:

See response to Request No. 30.


**REQUEST NO. 33**:

Identify the policy, plan, procedure, protocol, or methodology describing or relating to the recordation, levying and accountancy for revenue pertaining to equipment rental

furnished to PEMEX and others from 1998 to present.

**RESPONSE TO REQUEST NO. 33:**

 This request does not call for the production of any documents.

**REQUEST NO. 34:**

 Identify the policy, plan, procedure, protocol, or methodology describing or relating to the recordation, levying and accountancy for revenue pertaining to per diem charges for room and board for PEMEX workers on the vessels from 1998 to present.

**RESPONSE TO REQUEST NO. 34:**

 See response to Request No. 33.

**REQUEST NO. 35:**

 Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to port expenses and fees for the vessels since1998.

**RESPONSE TO REQUEST NO. 35:**

 This request is vague and confusing, as it is not known what is meant by "all records ... received by or prepared by you ... for the vessels." If it means every document relating in any way to the vessels, it is redundant and overburdensome. Subject to these objections, see enclosed documents. See also the KPMG audit report, and the KPMG documents which on information and belief are already in Seabulk's possession. If any further documents are discovered pertaining to the expense categories mentioned in the request, this response will be supplemented accordingly.

**REQUEST NO. 36:**

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to agency expenses and fees for the vessels since 1998.

**RESPONSE TO REQUEST NO. 36**:

See response to Request No. 35.

**REQUEST NO. 37**:

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to manifest charges and fees for the vessels since 1998.

**RESPONSE TO REQUEST NO. 37**:

See response to Request No. 35.

**REQUEST NO. 38**:

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to marketing expenses and fees for the vessels since1998.

**RESPONSE TO REQUEST NO. 38**:

See response to Request No. 35.

**REQUEST NO. 39**:

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to fuel expenses and fees for the vessels since 1998.

**RESPONSE TO REQUEST NO. 39**:

See response to Request No. 35.

26

**REQUEST NO. 40**:

Please produce any and all documentation, records or materials regarding the purchase of fuel by Defendant, its subsidiary, affiliate, joint-venturer or parent organization, relating to vessels chartered from Plaintiff or any Joint Venture in the Gulf of Mexico Region since 1998.

**RESPONSE TO REQUEST NO. 40**:

See response to Request No. 35.

**REQUEST NO. 41**:

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to crew expenses, fees and wages for the vessels since 1998.

**RESPONSE TO REQUEST NO. 41**:

See response to Request No. 35.

**REQUEST NO. 42**:

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to lubrication expenses and fees for the vessels since 1998.

**RESPONSE TO REQUEST NO. 42**:

See response to Request No. 35.

**REQUEST NO. 43**:

Please produce copies of all records or other documents received by or prepared by

27

you, including documents pertaining to groceries and other necessaries expenses and fees for the vessels since 1998.

**RESPONSE TO REQUEST NO. 43**:

Sec response to Request No. 35.

**REQUEST NO. 44**:

Please produce any and all documentation, records or materials regarding the expenditure of monies on repairs, repair parts or maintenance and upkeep relating to vessels' owned or chartered from Plaintiff to Defendant or the relating to any joint-venture entered into by Defendant and Plaintiff.

**RESPONSE TO REQUEST NO. 44**:

See response to Request No. 35.

**REQUEST NO. 45**:

Please produce all invoices pertaining to parts and equipment, and relating to the vessels and/or the joint venture between Plaintiff and Defendant.

**RESPONSE TO REQUEST NO. 45**:

See response to Request No. 35.

**REQUEST NO. 46**:

Please produce all invoices for sub-charterers of all vessels in the Gulf of Mexico region, to those other than to PEMEX.

**RESPONSE TO REQUEST NO. 46**:

28

See response to Request No. 35.

## SECOND SET OF REQUESTS FOR PRODUCTION

### REQUEST NO. 1:

Please produce all documentation, including pleadings and settlement documents, which pertain to any lawsuit in which Defendant has ever been engaged, and as referenced in Interrogatories Number 2 and 24 included in Plaintiff's First Set of Interrogatories, and Requests for to Defendant Oceanografia S.A.

### RESPONSE TO REQUEST NO. 1:

Objection. This request is overbroad and calls for documents protected by attorney-client privilege and the work-product doctrine. It also, in calling for "all documentation ... which pertains to any lawsuit in which defendant has ever been engaged," calls for much documentation that is irrelevant to the present case.

### REQUEST NO. 2:

Please produce all credit card and credit card account statements issued to Defendant since 1998 and referred to in Interrogatory Number 10 included in Plaintiff's First Set of Interrogatories, and Requests for to Defendant Oceanografia S.A.

### RESPONSE TO REQUEST NO. 2:

This requests calls for information that is not relevant to the present suit. It also calls for information that is protected as proprietary business information that need not be disclosed.

************

Respectfully submitted,

HARRIS & RUFTY, L.L.C.

By: _____

Rufus C. Harris III (Admission No. 29458)
Alfred J. Rufty III (Admission No. 29457)
1450 Poydras Street, Ste. 1510
New Orleans, Louisiana 70112
Tel: (504) 525-7500
Fax: (504) 525-7222

**ATTORNEYS FOR DEFENDANTS,
OCEANOGRAFIA S.A. DE C.V. AND
AMADO YANEZ OSUNA**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been forwarded to opposing counsel by placing same in the United States mail, properly addressed, with first class postage affixed thereto, this ___4___ day of February, 2002.

_____
Alfred J. Rufty III

06/14/02  16:05 FAX 504 525 7        HARRIS & RUFTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SEABULK TOWING, INC., f/k/ | * | CIVIL ACTION |
| HVIDE MARINE TOWING, INC., | * | |
| and SEABULK OFFSHORE, LTD. | * | |
| Plaintiffs | * | NUMBER: C.A. B-01-094 |
| | * | |
| VERSUS | * | |
| | * | |
| OCEANOGRAFIA S.A. de C.V and | * | In Admiralty |
| AMADO YANEZ OSUNA | * | |
| Defendants | * | |

## RESPONSES TO INTERROGATORIES AND
## REQUEST FOR PRODUCTION OF DOCUMENTS

NOW COMES defendant, Amado Yanez Osuna, who responds to the First Set of

Interrogatories and Request for Production of Documents propounded to it by plaintiff,

Seabulk Towing, Inc., as follows:

### INTERROGATORIES

**INTERROGATORY NO 1:**

Identify with particularity any and all written agreements executed between Defendant

and Plaintiff.

**RESPONSE TO INTERROGATORY NO 1:**

None.

1

EXHIBIT E

**INTERROGATORY NO 2**:

Identify with particularity any and all written agreements executed between Defendant and Oceanografia.

**RESPONSE TO INTERROGATORY NO 2**:

See Shareholders Agreement (Exhibit "A").

**INTERROGATORY NO 3**:

Please enumerate and identify with particularity all financial accounts in which Defendant has a financial, capital, profit or pecuniary interest and which were used in any way in conducting business with Seabulk Offshore de Mexico S.A. de C.V., Oceanografia S.A. de C.V. or used in any way in conducting the business of vessels chartered to Oceanografia.

**RESPONSE TO INTERROGATORY NO 3**:

None; or alternatively, except to the extent of Merrill-Lynch records already produced.

**INTERROGATORY NO 4**:

Please list all credit cards and credit card accounts issued to AMADO YANEZ OSUNA by entities listed in Interrogatory No. 7 or entities listed if Defendant's response to Interrogatory No. 9 and used for personal purchases.

**RESPONSE TO INTERROGATORY NO 4**:

Yanez has been issued no credit cards except by Oceanografia, as detailed in the Merrill-Lynch records already produced.

2

## INTERROGATORY NO 5:

Please list all credit cards and credit card accounts issued to AMADO YANEZ OSUNA and used for business purchases relating to entities listed in Interrogatory No. 7 or entities listed in Defendant's response to Interrogatory No. 9, specifically including but not limited to the card's issuing entity, account number, authorized user(s), and issuance date.

## RESPONSE TO INTERROGATORY NO 5:

See response to no. 4.

## INTERROGATORY NO 6:

Please list all wire transfers either received or initiated by Defendant since 1998 relating to entities listed in Interrogatory No. 7 or in Defendant's response to Interrogatory No. 9, specifically including the wire transfer number, the origin account number, the destination account number, the originating party's trade/business name, the receiving party's trade/business name.

## RESPONSE TO INTERROGATORY NO 6:

See enclosed Exhibit "B".

## INTERROGATORY NO 7:

Please state the relationship between AMADO YANEZ OSUNA and:

        a.  Maritima Mexicana S.A. de C.V.
        b.  Afranzadora Insurgentes S.A. de C.V.
        c.  Soler International
        d.  N/O Miguel A. Zenteno
        e.  N/O Grupo Carati
        f.  Oceanografia de Mexico S.A. de C.V.
        g.  Seabulk Offshore de Mexico S.A. de C.V.
        h.  PEMEX

## RESPONSE TO INTERROGATORY NO 7:

     a.  None.
     b.  None.
     c.  None.
     d.  Miquel Zenteno is a friend.
     e.  Yanez was a principal in this company, which no longer exists.
     f.  None.
     g.  Shareholder.
     h.  None.

## INTERROGATORY NO 8:

Please list any and all assets possessed by Defendant within the United States of America, including but not limited to real property, motor vehicles, chattels, mineral rights and/or bank accounts, specifically including a detailed property description, date of purchase, monetary value, and current asset location.

## RESPONSE TO INTERROGATORY NO 8:

Part owner in home (mortgaged) in Sugarland, Texas (address: 5 Camden Court, Sugarland, Texas 77479); lessee of two cars: Mercedes 320SLK, Sugarland, Texas, Range Rover, Sugarland, Texas; account at Chase Bank (account #179-9061735-65) in Houston (value approximately $10,000).

## INTERROGATORY NO 9:

Please enumerate all employment capacities held by Defendant since 1998 and describe with specificity each job's employment description, including the duties and responsibilities of each job.

4

06/14/02  16:06 FAX 504 525 7:          HARRIS & RUFTY                    ☒007

## RESPONSE TO INTERROGATORY NO 9:

Yanez has been employed exclusively by Oceanografia as General Director since 1998 (as for duties, see attached Shareholders Agreement).

## INTERROGATORY NO 10:

Please list with particularity all entities, including but not limited to partnerships, affiliations, joint-ventures, strategic alliances, subsidiaries, and/or parent entities that Defendant has a financial, capital, or profit interest in.

## RESPONSE TO INTERROGATORY NO 10:

Oceanografia S.A. de C.V.; Transportes Navieros Y Terrestres, S.A. de C.V. , and Seabulk de Mexico, S.A. de C.V.

## INTERROGATORY NO 11:

Identify with particularity any and all financial accounts relating to entities listed in Interrogatory No. 7 or in Defendant's response to Interrogatory No. 9, wherever located, that Defendant has a possessory interest in the account or access to the account, specifically including but not limited to identification of financial institution, account number, and address of financial institution where monies have been transferred into or out of within the preceding five (5) years.

## RESPONSE TO INTERROGATORY NO 11:

The only account that Yanez can access individually is at Merrill-Lynch (see records previously produced).

**INTERROGATORY NO 12**:

Identify any and all financial accounts that Defendant has deposited or received funds derived from any relationship with Oceanografía S.A. de C.V., Seabulk Offshore de Mexico S.A. de C.V., Otto Candies and PEMEX.

**RESPONSE TO INTERROGATORY NO 12**:

None with respect to Seabulk, Otto Candies, or PEMEX. Yanez has of course received payments from his employer, Oceanografia (account information to be provided upon receipt).

**INTERROGATORY NO 13**:

Please identify any and all information or knowledge relating to the accounting procedures or standards employed by Oceanografia S.A. de C.V., its subsidiary, affiliate, joint-venturer or parent organization, e.g. knowledge regarding whether income is recorded on a cash or accrual basis, procedures and standards f or the recordation of expenses and/or account payables, procedures and standards for the recordation of wages and crew expenses, procedures and standards for the accountancy of inventory, including depreciation and amortization policies, etc.

**RESPONSE TO INTERROGATORY NO 13**:

Yanez is not an expert in accounting. Accountants at Oceanografia handle the company's accounting matters. Subject to this, on information and belief, Yanez believes that income is recorded on an accrual basis; as for recording procedures, see *en globo* Exhibit "C".

06/14/02  16:07 FAX 504 525 7?⁻      HARRIS & RUFTY                      ☑009

**INTERROGATORY NO 14:**

Please identify any and all information or knowledge relating to policies, plans, procedures, protocols, or methodologies describing or relating to the recordation, levying and accountancy of income and expenditures for the vessels, including but not limited to: acquisition fees, brokerage fees, handling fees or commission, marketing fees, port expenses and fees, agency expenses and fees, manifest charges, marketing expenses and fees, fuel expenses and fees, crew expenses and fees, hiring fees and expenses, lubrication expenses and fees, groceries and other necessaries expenses and fees charged by Oceanografia S.A. de C.V. for expenses in operation of the vessels including.

**RESPONSE TO INTERROGATORY NO 14:**

See response to no. 13 and Exhibit "C".

**INTERROGATORY NO 15:**

For each other lawsuit, civil or criminal, in which Defendant, or his partnerships, affiliations, joint-ventures, strategic alliances, subsidiaries, or parent entities has been engaged in within the preceding five (5) years, state the date, court, style, docket number and resolution of the case.

**RESPONSE TO INTERROGATORY NO 15:**

None.

**INTERROGATORY NO 16:**

Identify, by full and correct name, including middle name and nicknames, the physical address of their respective residences, telephone numbers, driver's license numbers, Social

7

06/14/02  16:07 FAX 504 525 72          HARRIS & RUFTY                    ☑010

Security numbers and dates of birth, all individuals who assisted in answering these

Interrogatories and for each individual, specifically state the Interrogatory or Interrogatories

(by number) each individual who assists in answering and the documents and things used in

answering each respective Interrogatory.

## RESPONSE TO INTERROGATORY NO 16:

Amado Yanez and Alfred Rufty. Yanez can be reached through Oceanografia or

through Alfred Rufty. Seabulk's counsel already possesses adequate information concerning

Alfred Rufty.

## INTERROGATORY NO 17:

If any of the parties identified in Interrogatory No. 16 has been convicted of a crime

punishable by imprisonment in excess of one year or involving dishonesty, false statement,

or crime of moral turpitude, state the type of offense, the date of offense, the date of

conviction, the cause number, the court, the country, and the state where the individual was

tried or the case was handled.

## RESPONSE TO INTERROGATORY NO 17:

None.

## INTERROGATORY NO 18:

Please identify any and all persons having knowledge either directly or indirectly of

any relevant facts or documents concerning the issues, claims, damages, and defenses in this

lawsuit, and for each person listed state with particularity the substance of the relevant facts

of which that person has knowledge. This list is not limited to the witnesses that will testify

8

on AMADO YANEZ OSUNA'S or OCEANOGRAFIA S.A. de C.V. behalf at trial, but necessarily includes each such witness. It is the position of Plaintiff SEABULK TOWING, INC. and SEABULK OFFSHORE, LTD. that any witness who testifies in this case will have to be identified in response to this Interrogatory and Plaintiff SEABULK TOWING, INC. and SEABULK OFFSHORE, LTD. will object to anyone who attempts to testify who is not identified in the answer to this Interrogatory.

**RESPONSE TO INTERROGATORY NO 18**:

On information and belief and to the best of Yanez's present recollection, Wesley Freeman, Amado Yanez, Teddy Curole, Samuel Vior, Manual Reyes, Jaime Olavachin, Jorge Teran, Hermillio Escovedo, Alberto Duarte, Victor Reyes, various Seabulk employees and ex-employees, crewmembers aboard the Seabulk vessels, and repair personnel at Detroit Diesel (perhaps also elsewhere). Yanez objects to the suggestion that he must presently identify all possible witnesses at trial. Yanez reserves the right to identify trial witnesses in accordance with the Court's instructions.

**INTERROGATORY NO 19**:

Identify every potential party to this lawsuit and each parties' respective relationship to the Defendant in this lawsuit.

**RESPONSE TO INTERROGATORY NO 19**:

What is meant by "potential party" is unknown.

**INTERROGATORY NO 20**:

Identify any legal theories upon which AMADO YANEZ OSUNA relies on in

9

06/14/02   16:08 FAX 504 525 7        HARRIS & RUFTY                    ☒012

prosecuting any claim or in establishing any defense in this case.

**RESPONSE TO INTERROGATORY NO 20:**

Objection. Calls for legal conclusion. Subject to the objection and Yanez's right to pursue any theories deemed appropriate, Yanez contends that he had no contractual relationship with plaintiffs and has no personal liability for any alleged company debts.

**INTERROGATORY NO 21:**

Identify any facts upon which AMADO YANEZ OSUNA relies on asserting any counter-claims and/or defenses in this case.

**RESPONSE TO INTERROGATORY NO 21:**

Yanez has counterclaimed for wrongful attachment of his account at Merrill-Lynch. The facts upon which this counterclaim is based are essentially that jurisdiction has been established in this matter without regard to the attachment; that Seabulk lacked a good faith basis for the attachment; and that the requirements of the attachment process were not observed. Yanez further contends that the claim alleged against him personally lacks a legitimate basis in fact and is interposed in bad faith for the improper purpose of harassing him.

**INTERROGATORY NO 22:**

For any statements obtained, including but not limited to oral, written or video-taped statements taken by Defendant, or taken on Defendant's behalf, relating to the facts that are the subject of this litigation, please state the following:

a.   The identity of the person who gave or made the statement.

10

b. The d ate when the statement was taken.

c. The substance of the statement.

d. The identity of the person who took the statement.

e. Whether the statement was reduced to writing.

f. The present location of the statement and the identity of the person now in possession of the statement.

g. Whether Defendant will, without a formal request to produce, attach a copy of all statements described in the answer to this interrogatory.

## RESPONSE TO INTERROGATORY NO 22:

None.

## RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS

### REQUEST NO. 1:

Please produce all reports, including observations and opinions, of each and every expert who will be called as a witness by Plaintiff in this cause.

### RESPONSE TO REQUEST NO. 1:

Yanez will produce expert reports in accordance with the Court's instructions and deadlines.

### REQUEST NO. 2:

Please reduce to tangible form, the subject matter on which the expert is expected to testify, the mental impressions and opinions held by the expert, and the facts known which relate to or form the basis of the mental impressions and opinions held by the expert.

11

**RESPONSE TO REQUEST NO. 2**:

See response to no. 1.

**REQUEST NO. 3**:

Please produce all documentation, including pleadings and settlement documents, which pertain to any lawsuit in which Defendant has ever been engaged, and as referenced in Interrogatories Number 7 and 9.

**RESPONSE TO REQUEST NO. 3**:

Yanez has never been involved in any lawsuit except this one (pleadings and documents for which are already in Seabulk's possession).

**REQUEST NO. 4**:

Please produce all statements pertaining to the transactions made the basis of this suit taken from this Plaintiff's employees and in the possession of Defendant's attorneys or agents.

**RESPONSE TO REQUEST NO. 4**:

None.

**REQUEST NO. 5**:

Please produce all non-privileged reports, audits, financial or accounting reviews, consultant records or reports pertaining to the transactions made the basis of this suit.

**RESPONSE TO REQUEST NO. 5**:

See KPMG report already produced. Also enclosed is an accounting review performed by Oceanografia. [See Exhibit RPD-5].

12

**REQUEST NO. 6**:

Please produce any written memorandum, document, note or other piece of physical and/or documentary evidence which you intend to use at the time of trial in your case in chief, rebuttal or for impeachment purposes against Plaintiff.

**RESPONSE TO REQUEST NO. 6**:

An exhibit list will be supplied in accordance with the Court's instructions.

**REQUEST NO. 7**:

Please produce copies of all records or other documents received by or prepared by you, pertaining to Defendant's claims, damages and defenses made the basis of this lawsuit.

**RESPONSE TO REQUEST NO. 7**:

Objection: overbroad, vague, unduly burdensome, attorney-client privilege, work product.

**REQUEST NO. 8**:

Please produce any and all employment related manuals, procedure or protocol guidelines dispensed to Defendant by entities enumerated in Defendant's response to Interrogatory No. 9.

**RESPONSE TO REQUEST NO. 8**:

See Exhibit "C".

**REQUEST NO. 9**:

Please produce copies of any and all payments made to Defendant from entities enumerated in Interrogatory No. 7 and/or Defendant's response to Interrogatory No. 9.

13

**RESPONSE TO REQUEST NO. 9**:

See attached Exhibit RPD-9.

**REQUEST NO. 10**:

Please produce copies of any and all payments made from Defendant to entities

enumerated in Interrogatory No. 7 and/or Defendant's response to Interrogatory No. 9.

**RESPONSE TO REQUEST NO. 10**:

See Merrill-Lynch records (already produced). Otherwise, none.

**REQUEST NO. 11**:

Please produce any and all documents describing or relating to accounting procedures

or standards employed by Defendant , its subsidiary, affiliate, joint-venturer or parent

organization, e.g. whether income is recorded on a cash or accrual basis, procedures and

standards for the recordation of expenses and/or account payables, procedures and standards

for the recordation of wages and crew expenses, procedures and standards for the

accountancy of inventory, including depreciation and amortization policies, etc.

**RESPONSE TO REQUEST NO. 11**:

Objection: overbroad, vague, irrelevant, unduly burdensome, confusing. Subject to

the objections, Yanez does not possess or maintain Oceanografia accounting documents.

**REQUEST NO. 12**:

Identify the policy, plan, procedure, protocol, or methodology describing or relating

to the recordation, levying and accountancy of income and expenditures for the vessels,

including but not limited to: acquisition fees, brokerage fees, handling fees or commission,

14

marketing fees, port expenses and fees, agency expenses and fees, manifest charges, marketing expenses and fees, fuel expenses and fees, crew expenses and fees, hiring fees and expenses, lubrication expenses and fees, groceries and other necessaries expenses and fees charged by Oceanografia for expenses in operation of the vessels.

**RESPONSE TO REQUEST NO. 12:**

See Exhibit "C".

**REQUEST NO. 13:**

Please produce any and all correspondence, including but not limited to mail, electronic mail, telegram and facsimile communications, since 1998 between Defendant Oceanografia S.A. de C.V., and/or Otto Candies, and/or PEMEX.

**RESPONSE TO REQUEST NO. 13:**

In the individual capacity in which Yanez has been sued, Yanez has had no written correspondence with Otto Candies or PEMEX. His only written correspondence with Oceanografia is the Shareholder Agreement (attached as Exhibit "A"). If this request is against Yanez in his representative capacity as an employee of Oceanografia, Yanez objects on grounds of overbreadth, irrelevance, vagueness and undue burdensomeness.

**REQUEST NO. 14:**

Please produce all tax returns for the preceding five (5) years pertaining to Defendant and Seabulk Offshore de Mexico S.A. de C.V., or any entity related to the charter or sub-charter of the vessels or payment of the expenditures of or on the behalf of the vessels or any joint venture that Defendant has or had a possessory interest.

15

**RESPONSE TO REQUEST NO. 14**:

Objection: relevance. Subject to the objection, see enclosed Exhibit RPD-14.

**REQUEST NO. 15**:

Please produce all records, since 1998, of income and sources of income derived by Defendant relating to entities listed in Interrogatory No. 7 or in Defendant's response to Interrogatory No. 9.

**RESPONSE TO REQUEST NO. 15**:

As to the entities listed in Interrogatory 7, none. As to Oceanografia, see enclosed Exhibit RPD-15.

**REQUEST NO. 16**:

Please produce any and all financial agreements entered into since 1998, including but not limited to agreements with third party lenders and financial institutions relating to entities listed in Interrogatory No. 7 or in Defendant's response to Interrogatory No. 9.

**RESPONSE TO REQUEST NO. 16**:

See enclosed Shareholder Agreement (Exhibit "A"). Otherwise, Yanez has had no financial agreement with any of the mentioned entities.

**REQUEST NO. 17**:

Please produce any and all joint-venture agreements entered into by Defendant with Plaintiff or other party, within the last five (5) years prior to the present year, and related to the operation of crew and/or supply vessels in the Gulf of Mexico.

16

**RESPONSE TO REQUEST NO. 17**:

None.

**REQUEST NO. 18**:

Please produce copies of all records or other documents received by or prepared by you, pertaining to account statements, monetary transaction documentation and/or correspondence, and all financial documentation relating to entities listed in Interrogatory No. 7 or in Defendant's response to Interrogatory No. 9.

**RESPONSE TO REQUEST NO. 18**:

In the individual capacity which Yanez has been sued, see Shareholder Agreement. Aside from that document, Yanez does not recall receiving or sending any documents to the mentioned entities in his individual capacity. If this request is directed also at Yanez in a representative capacity as a representative of Oceanografia, Yanez objects on the ground that the request would call for literally every piece of paper he has ever reviewed or prepared relating to Oceanografia. This request is overbroad, irrelevant, unduly burdensome, and vague and would call for attorney-client and work-product documents.

**REQUEST NO. 19**:

Please produce all credit card and credit card account statements issued to Defendant since 1998 and referred to in Interrogatory Number 4 and Number 5.

**RESPONSE TO REQUEST NO. 19**:

See attached Exhibit RPD-19.

17

**REQUEST NO. 20:**

Please produce all wire transfers, or copies of transfers, and wire transfer instructions initiated by Defendants since 1998 relating to entities listed in Interrogatory No. 7 or in Defendant's response to Interrogatory No. 9.

**RESPONSE TO REQUEST NO. 20:**

See enclosed Exhibit "B".

**REQUEST NO. 21:**

Please produce all wire transfers, or copies of transfer, and all confirmations, receipts or deposit advice receive by Defendant since 1998 relating to entities listed in Interrogatory No. 7 or in Defendant's response to Interrogatory No. 9.

**RESPONSE TO REQUEST NO. 21:**

See enclosed Exhibit "B".

**REQUEST NO. 22:**

Identify the policy, plan, procedure, protocol, or methodology describing or relating to the recordation, levying and accountancy for revenue pertaining to equipment rental furnished to PEMEX and others charged by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. from 1998 to present.

**RESPONSE TO REQUEST NO. 22:**

Yanez is not an accountant and lacks full knowledge of Oceanografia's accounting procedures. Nevertheless, Yanez has attached the accounting procedures of Oceanografia of which he is aware (see Exhibit "C").

**REQUEST NO. 23:**

Identify the policy, plan, procedure, protocol, or methodology describing or relating

18

to the recordation, levying and accountancy for revenue pertaining to per diem charges for room and board for PEMEX workers on the vessel charged by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. from 1998 to present.

**RESPONSE TO REQUEST NO. 23**:

See response to no. 22

**REQUEST NO. 24**:

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to port expenses and fees for the vessels charged by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. since 1998.

**RESPONSE TO REQUEST NO. 24**:

Objection. In calling for every document that Yanez has received or prepared since 1998, this request for production is overbroad, vague, unduly burdensome, and calls for production of irrelevant material. Subject to the objection, in the individual capacity in which he has been sued, Yanez has not prepared or received any of the particular documents mentioned, that is, those relating to port expenses and fees for vessels charged by Oceanografia and/or Seabulk Offshore.

**REQUEST NO. 25**:

Please produce copies of all records or other documents received by or prepared by you, pertaining to agency expenses and fees for the vessels charged by Oceanografia and/or

Seabulk Offshore de Mexico S.A. de C.V. since1998.

**RESPONSE TO REQUEST NO. 25:**

Yanez does not personally possess or have any possessory rights to any of the requested documents.

**REQUEST NO. 26:**

Please produce copies of all records or other documents received by or prepared by you, pertaining to manifest charges and fees for the vessels charged by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. since1998.

**RESPONSE TO REQUEST NO. 26:**

Yanez does not personally possess or have any possessory rights to any of the requested documents.

**REQUEST NO. 27:**

Please produce copies of all records or other documents received by or prepared by you, pertaining to marketing expenses and fees for the vessels charged by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. since1998.

**RESPONSE TO REQUEST NO. 27:**

Yanez does not personally possess or have any possessory rights to any of the requested documents.

**REQUEST NO. 28:**

Please produce copies of all records or other documents received by or prepared by you, pertaining to fuel expenses and fees for the vessels charged by Oceanografia and/or

20

Seabulk Offshore de Mexico S.A. de C.V. since1998.

**RESPONSE TO REQUEST NO. 28:**

      Yanez does not personally possess or have any possessory rights to any of the requested documents.

**REQUEST NO. 29:**

      Please produce any and all documentation, records or materials regarding the purchase of fuel by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V., its subsidiary, affiliate, joint-venturer or parent organization, relating to vessels charted from Plaintiff or any Joint Venture in the Gulf of Mexico Region, which Defendant participated in since 1998.

**RESPONSE TO REQUEST NO. 29:**

      Yanez does not personally possess or have any possessory rights to any of the requested documents.

**REQUEST NO. 30:**

      Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to crew expenses, fees and wages for the vessels charged by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. since1998.

**RESPONSE TO REQUEST NO. 30:**

      Yanez does not personally possess or have any possessory rights to any of the requested documents.

**REQUEST NO. 31:**

      Please produce copies of all records or other documents received by or prepared by

you, pertaining to lubrication expenses and fees for the vessels charged by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. since 1998.

**RESPONSE TO REQUEST NO. 31**:

Yanez does not personally possess or have any possessory rights to any of the requested documents.

**REQUEST NO. 32**:

Please produce copies of all records or other documents received by or prepared by you, pertaining to groceries and other necessaries expenses and fees for the vessels charged by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. since 1998.

**RESPONSE TO REQUEST NO. 32**:

Yanez does not personally possess or have any possessory rights to any of the requested documents.

**REQUEST NO. 33**:

Please produce any and all documentation, records or materials regarding the expenditure of monies on repairs, repair parts or maintenance and upkeep relating to the vessels owned or chartered from Plaintiff to Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. and/or Defendant or the relating to any joint-venture entered into by Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V. and Plaintiff.

**RESPONSE TO REQUEST NO. 33**:

Yanez does not personally possess or have any possessory rights to any of the requested documents.

**REQUEST NO. 34**:

Please produce all invoices pertaining to parts and equipment, and relating to the vessels and/or joint venture between Plaintiff and Oceanografia and/or Seabulk Offshore de Mexico S.A. de C.V.

**RESPONSE TO REQUEST NO. 34**:

Yanez does not personally possess or have any possessory rights to any of the requested documents.

**REQUEST NO. 35**:

Please sign and produce to us the attached Form SSA-7050-F4, Request for Social Security Earnings Information, filling in your Social Security number, date of birth and any other names you have used.

**RESPONSE TO REQUEST NO. 35**:

Yanez has no documents responsive to this request. To the extent this request instructs Yanez to create new documents, it is improper.

<div align="center"><strong>REQUEST FOR ADMISSION</strong></div>

**REQUEST NO. 1**:

ADMIT OR DENY: Defendant executed the agreements described in Plaintiff's Original Complaint?

**ANSWER**:

None; Yanez has not signed any agreement in an individual capacity. To the extent this request may concern documents signed by Yanez in his capacity as an officer of

<div align="center">23</div>

Oceanografia, the request is unclear as to what agreements are referred to. Yancz would be happy to authenticate any signatures on any specific agreements, if copies are provided by Seabulk for his review.

**REQUEST NO. 2**:

ADMIT or DENY: Defendant received $25,000 on January 5, 1998 from Oceanografia S.V. de C.V.

**ANSWER:**

Admit.

**REQUEST NO. 3**:

ADMIT or DENY: Defendant received $1,500 on January 7, 1998 from Oceanografia S.V. de C.V.

**ANSWER**:

Admit.

**REQUEST NO. 4**:

ADMIT or DENY: Defendant received $5,000 on March 4, 1998 from Oceanografia S.V. de C.V.

**ANSWER:**

Admit.

24

**REQUEST NO. 5:**

ADMIT or DENY: Defendant received $3,000 on April 6, 1998 from Oceanografia S.V. de C.V.

**ANSWER:**

Admit.

**REQUEST NO. 6:**

ADMIT or DENY: Defendant received $1,500 on May 22, 1998 from Oceanografia S.V. de C.V.

**ANSWER:**

Admit.

**REQUEST NO. 7:**

ADMIT or DENY: Defendant received $15,000 on June 19, 1998 from Oceanografia S.V. de C.V.

**ANSWER:**

Admit.

**REQUEST NO. 8:**

ADMIT or DENY: Defendant received $2,000 on August 17, 1998 from Oceanografia S.V. de C.V.

**ANSWER:**

Admit.

25

**REQUEST NO. 9:**

ADMIT or DENY: Defendant received $120,000 on September 29, 1998 from Oceanografia S.V. de C.V.

**ANSWER:**

Admit.

**REQUEST NO. 10:**

ADMIT or DENY: Defendant received $5,000 on October 15, 1998 from Oceanografia S.V. de C.V.

**ANSWER:**

Admit.

**REQUEST NO. 11:**

ADMIT or DENY: Defendant received $20,000 on November 18, 1998 from Oceanografia S.V. de C.V.

**ANSWER:**

Admit.

**REQUEST NO. 12:**

ADMIT or DENY: Defendant received $10,000 on December 8, 1998 from Oceanografia S.V. de C.V.

**ANSWER:**

Admit.

26

**REQUEST NO. 13:**

ADMIT or DENY: Defendant received $10,000 on March 9, 1999 from Oceanografia S.V. de C.V.

**ANSWER:**

Admit

**REQUEST NO. 14:**

ADMIT or DENY: Defendant received $10,000 on March 29, 1999 from Oceanografia S.V. de C.V.

**ANSWER:**

Admit.

**REQUEST NO. 15:**

ADMIT or DENY: Defendant received $10,000 on April 20, 1998 from Oceanografia S.V. de C.V.

**ANSWER:**

Admit.

**REQUEST NO. 16:**

ADMIT or DENY: Defendant transferred $24,000 on January 7, 1998 to Oceanografia S.V. de C.V.

**ANSWER:**

Admit.

27

**REQUEST NO. 17:**

ADMIT or DENY: Defendant transferred $1,000 on January 8, 1998 to Oceanografia

S.V. de C.V.

**ANSWER:**

Admit.

**REQUEST NO. 18:**

ADMIT or DENY: Defendant received $2,000 on August 28, 1998 from Oceanografia

S.V. de C.V.

**ANSWER:**

Admit.

**REQUEST NO. 19:**

ADMIT or DENY: Defendant used the Visa charge card associated with Merrill

Lynch account number 53c-07119 for personal purchases.

**ANSWER:**

It is unclear what is meant by "personal purchases." Yanez admits that he has
personally purchased items using this card. Ordinarily, such items are company expenses.
Occasionally, personal items were purchased by Yanez with this card while on business trips.
Yanez has a practice, however, of reimbursing Oceanografia for personal items purchased
on business trips.

**REQUEST NO. 20:**

ADMIT or DENY: Defendant used the Visa charge card associated with Merrill

28

Lynch account number 53c-07215 for personal purchases.

**ANSWER:**

      Denied. There is no Visa account assigned to this account number 53c-07215.

      Respectfully submitted,

      HARRIS & RUFTY, L.L.C.

By: _____
        Rufus C. Harris III (Admission No. 29458)
        Alfred J. Rufty III (Admission No. 29457)
        1450 Poydras Street, Ste. 1510
        New Orleans, Louisiana 70112
        Tel: (504) 525-7500
        Fax: (504) 525-7222

      **ATTORNEYS FOR DEFENDANTS,**
      **OCEANOGRAFIA S.A. DE C.V. AND**
      **AMADO YANEZ OSUNA**

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the above and foregoing pleading has been forwarded to opposing counsel by placing same in the United States mail, properly addressed, with first class postage affixed thereto, this _1__ day of June, 2002.

_____
      Alfred J. Rufty III

29

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION


SEABULK TOWING, INC.          §    CASE NO. CA B-01-94
                              §
VERSUS                        §    BROWNSVILLE, TEXAS
                              §    OCTOBER 12, 2001
OCEANOGRAFIA, SA de CV        §    2:05 P.M. TO 2:50 P.M.


MOTION HEARING AND PRETRIAL CONFERENCE


BEFORE THE HON. FELIX RECIO, UNITED STATES MAGISTRATE JUDGE


APPEARANCES:


For the Plaintiff:                 SEE NEXT PAGE


For the Defendant:                 SEE NEXT PAGE


Court Recorder:                    Gabriel Mendieta


PREPARED BY:

JUDICIAL TRANSCRIBERS OF TEXAS, INC.
P.O. Box 925675
Houston, Texas 77292-5675
713.697.4718 (office)
713.697.4722 (fax)

Proceedings recorded by electronic sound recording:
transcript produced by transcription service.

# EXHIBIT F

(                              (

<u>APPEARANCES</u>:

For the Plaintiff:              Kleberg Law Firm
                                MR. JAMES BUCHANAN
                                MR. FRANK L. McNIFF
                                800 N. Shoreline, Suite 900
                                Corpus Christi, Texas 78401


For the Defendant:              Harris & Rufty
                                MR. ALFRED RUFTY, III
                                1410 Poydras, Suite 1510
                                New Orleans, Louisiana 70112

                                     -and-

                                Royston & Razor
                                MR. EDDIE SIKES
                                P.O. Box 3509
                                Brownsville, Texas 78523


Also Present:                   MR. ROBERTO KEOSEYAN
                                Corporate counsel for defendants

## I N D E X

| WITNESSES | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| ANTHONY TRAVIS TILLMAN | | | | |
| Mr. McNiff | 7 | | -- | |
| Mr. Rufty | | 15 | | -- |

| EXHIBITS | | Marked | Offered | Received |
|---|---|---|---|---|
| None | | -- | -- | -- |

| ARGUMENT | Page |
|---|---|
| Mr. Rufty | 22/27 |
| Mr. Buchanan | 25 |
| Mr. McNiff | 25 |

| RULING | |
|---|---|
| Motion for Default Judgment Denied | 30 |

1

THE COURT:  Thank you.  Please be seated.

Are you ready Gabe?

ERO:  Yes, sir.

THE COURT:  All right.  This is in Cause No. B-01-94, *Seabulk Towing, et al versus Oceanografia and Mr. Amado Yanez-Osuna* [sp.ph].

Please make announcements for the record.

MR. RUFTY:  Good morning, Your Honor.  My name is Alfred Rufty.  I'm appearing today on behalf of Defendants Oceanografia and Amado Yanez.  I have with me as well my local counsel.

MR. SIKES:  Mr. Sikes, Your Honor.

THE COURT:  Mr. Sikes, how are you?

MR. SIKES:  Just fine, thank you.

MR. RUFTY:  And Mr. Amado Yanez is here with us here today as well.

THE COURT:  Mr. who?

MR. RUFTY:  Amado Yanez.

THE COURT:  Okay, Yanez.  Oh, this is the defendant.

MR. RUFTY:  Correct, Your Honor.

THE COURT:  Mr. Amado Yanez-Osuna.  All right.

MR. RUFTY:  As is his corporate counsel, Roberto Keoseyan.

MR. KEOSEYAN:  Keoseyan, yes

MR. RUFTY:  Keoseyan.

2

1    MR. KEOSEYAN:  In Mexico.

2    THE COURT:  All right, sir.

3    MR. RUFTY:  In Mexico.  Yes, Your Honor.

4    THE COURT:  All right.

5    MR. McNIFF:  Your Honor, Frank McNiff and Jim

6    Buchanan with the Kleberg Firm for the Seabulk interest.

7    THE COURT:  All right.  Who's with you?

8    MR. McNIFF:  Jim Buchanan.

9    THE COURT:  Mr. McNiff, how are you.

10    MR. McNIFF:  Very good, sir.  Thank you.

11    THE COURT:  All right.  We're here this afternoon to

12    continue the original hearing that we had with regards to the

13    motion for default.  As I understand, the arguments were that

14    the petitions had been filed and that there had been no answer

15    filed in a timely fashion.  And that was the basis for the

16    default judgment.  Is there any further argument on that?

17    MR. McNIFF:  Your Honor, if I may, I just would

18    restate what we have in our response to their motion about the

19    three prongs.  One, the willfulness argument.  Also lack of

20    meritorious defense.  And third the prejudice to Seabulk.  All

21    three which are addressed in our motion -- our response to the

22    motion to set aside.  And we had discussion about that last

23    hearing.  And we stand on those responses.

24    THE COURT:  All right.  Give me your thoughts again

25    on the prejudice to Seabulk.

3

1      MR. McNIFF:  Your Honor, as discussed in the

2   affidavits and our response, we believe that the prejudice is,

3   the potential, we have been told and as discussed in the

4   affidavit of the associate general counsel, Steve Finch in the

5   motion for third party discovery, I've been told that the sole

6   purpose or a main reason of the delay and shows willfulness is

7   that as this proceedings commence and continue on,

8   Oceanografia is divesting themselves of assets with the

9   reason -- with the continued delay to prevent us from

10  attaching the assets or to have any assets to seek recovery on

11  our side.   All delay will allow them to continue in an action

12  and if we don't get the default judgment, more delay will

13  occur and thus the prejudice to us, Your Honor.

14      THE COURT:  All right.  Mr. Buchanan, tell me where

15  are these assets located?

16      MR. McNIFF:  Your Honor, we -- as far as where the

17  assets are located, we're not sure.  We haven't had the

18  opportunity.  We've asked Otto Candeze [sp.ph.] for discovery.

19  And we're having some problems with that discovery as well.

20      THE COURT:  How do you -- Excuse my interruption,

21  but how do you make the statement that they are divesting

22  themselves of property if you don't know where it is or what

23  it is that they're doing?  How can this Court make an

24  assessment?

25      MR. McNIFF:  Your Honor, we have brought with us a

4

1    witness who has evidence, if you would like it.  From talking

2    to Oceanografia, that he has been told himself from employees

3    of Oceanografia that that's their intent and that's what

4    they're doing.

5                   My understanding is the assets, if any still

6    exist, are maintained in Campeche Banks area.  The majority of

7    which are vessels, supply boats, tugs of that nature.  We

8    believe that those vessels, those assets have been and are in

9    the process of being divested to defraud us from obtaining our

10   money.  That's the prejudice, Your Honor.

11                   THE COURT:  And you say you have a witness to this?

12                   MR. McNIFF:  Yes, Your Honor.

13                   THE COURT:  Is he present in the courtroom?

14                   MR. McNIFF:  Yes, Your Honor, he is.

15                   THE COURT:  I would like to hear evidence on it.

16                   MR. McNIFF:  Mr. Tillman, if you may approach.

17                   THE COURT:  Come forward to be sworn, please.

18          (The Witness is sworn)

19                   THE COURT:  If you'll have a seat over here, Mr.  --

20   Is it Tillman?

21                   THE WITNESS:  Yes, sir.

22                   THE COURT:  And your collar isn't turned up.  There

23   we go.

24                   MR. BUCHANAN:  Judge Recio, just as a matter of

25   housekeeping, that's McNiff.

5

1       THE COURT:  I'm sorry.

2       MR. BUCHANAN:  Yes, sir.  And I'm Buchanan.  That's

3  all right.

4       THE COURT:  I'm sorry.  I apologize.

5       MR. BUCHANAN:  That's quite all right.

6       THE COURT:  All right.  Buchanan is the tall one and

7  McNiff is the -- All right.

8       MR. BUCHANAN:  I just don't want to get tarred with

9  that brush, Your Honor.

10      THE COURT:  All right, sir.

11      MR. RUFTY:  Your Honor, I apologize for objecting.

12  May I make a few statements as to the proceedings that we're

13  proceeding under right now?

14      THE COURT:  You may make a statement.

15      MR. RUFTY:  Thank you, Your Honor.  My understanding

16  from my local counsel, James Hunter, who attended the hearing

17  last week, was that this was primarily a hearing today to

18  approach the selecting of trial date.  We were unaware there

19  would be any witnesses put on the stand.

20      THE COURT:  That is incorrect.

21      MR. RUFTY:  That is incorrect.  Okay, Your Honor.

22  That's fine.

23      THE COURT:  I wanted to have the defendant present,

24  Mr. Yanez, because these allegations came up the last time.

25  And I wanted to impress on Mr. Yanez, Mr. Amado Yanez and the

6

1   defense counsel that if these things are going on, I would

2   like to know about them.  You know, I don't want to get into

3   the game playing.  I've represented, when I was in private

4   practice, Mexican corporations, and I'm somewhat familiar with

5   the things that we use to do when I was in private practice in

6   Houston.  And I want to make sure that we're going to be

7   entering these hearings at least on an even basis and people

8   aren't hiding and doing things.  Because if we're going to get

9   into that posture, if there's strong evidence as to that -- in

10  that regard, you know, I'm prone to grant the motion for

11  default.

12          So I want to impress on all the parties that

13  everything has got to stop.  I don't know that I have any

14  authority over property that's not in this country.  But I

15  want to make an impression here today.  So that was part of

16  the reason, Mr. Sikes, that I wanted him here.  And I think

17  you will recall that we were going to continue this hearing

18  for today.

19          MR. RUFTY:  Your Honor, I can confidently state on

20  behalf of both of our clients that we consider these to be not

21  only wrong but reckless allegations.  There is no effort

22  underway whatsoever to hide assets.  And we're confident that

23  the merits of the case as it develops will establish it.

24          THE COURT:  Very well.  We're going to continue with

25  this.  You may cross examine.  And you preserve all your

Tillman - direct by Mr. McNiff                                     7

1    objections.

2                MR. RUFTY:  Thank you, Your Honor.

3                THE COURT:  Go ahead.

4                DIRECT EXAMINATION OF ANTHONY TRAVIS TILLMAN

5    BY MR. McNIFF:

6    Q    Sir, if you would, kindly state your name for the record?

7    A    Anthony Travis Tillman.

8    Q    And how are you employed, Mr. Tillman?

9    A    I'm employed with Seabulk Offshore Limited, which as a

10   boat captain in Mexico, with the Oceanografia Venture.

11   Q    Where are you currently employed?

12   A    I'm currently employed with Seabulk de Mexico, I mean

13   Seabulk Offshore Limited in Lafayette, Louisiana as assistant

14   operations manager.

15   Q    And how long have you been employed in that capacity?

16   A    One month.

17   Q    All right.  And prior to that, where were you?

18   A    In Mexico.

19   Q    Where in Mexico?

20   A    In Del Carmen Campeche.

21   Q    Okay.  And doing what?

22   A    Working for Seabulk Offshore, Limited out of Lafayette as

23   a boat captain, working in the office of Seabulk de Mexico.

24   Q    Okay.  Describe to me if you would what kind of work was

25   going on in that vicinity?  What other companies were there?

1    A    Many companies, all oil related.

2    Q    Okay.  Who did you have primary contact with, what

3    organizations?

4    A    Oceanografia.

5    Q    Okay.  When you say Oceanografia, you're talking about

6    Oceanografia, the parent company or -- When you say

7    Oceanografia, who do you mean in Oceanografia?

8    A    Operations department.

9    Q    The operations department of Oceanografia.  As far as you

10   understand, where are the different offices of Oceanografia?

11   A    Two offices on Main Street of -- what do they call it,

12   Puerto Pescal, Aquazo [sp.ph.], several different names.

13   Q    All right.  And where you were located, that was one of

14   their principal places of business?

15   A    I was in their main -- secondary -- the operations office

16   for approximately -- up until the middle of this last year.

17   And when they told us that they had to get out of the office.

18   And we had to get our own.  Then we got a different office

19   separate from them.

20   Q    If you would describe to the Court what type of

21   relationship did you have with Oceanografia -- what type of

22   day-to-day operations did you have with that company?

23   A    Coordination of keeping the boats operating as far as to

24   maintenance and personnel, American captains.

25   Q    All right.  And you might have already told us this, but

1  what was last time you were at that office over in the

2  Campeche?

3  A    I left on the 15th of August.

4  Q    Okay.  And how long were you there on the Campeche Banks

5  in Campeche working with Oceanografia?

6  A    Approximately three and a half years.

7  Q    Okay.  During that time period, did you have the

8  opportunity to talk with the employees of Oceanografia?

9  A    Yes, sir.

10 Q    Did you have an opportunity to talk with employees of

11 Oceanografia concerning the status of their operations with

12 Seabulk entities?

13 A    Yes, sir.

14 Q    Okay.  If you would, tell the Court what you were told

15 concerning the actions of Oceanografia as regarding to Seabulk

16 interests.  What were they doing, what were they going to do,

17 ·if anything?

18        MR. RUFTY:  Your Honor, that calls for hearsay.

19        THE COURT:  I'm going to overrule it and allow it.

20 Go ahead.

21 BY MR. McNIFF:

22 A    I'm not exactly sure what you're talking -- pertaining

23 to.  We had many, many, many, many conversations of many

24 different things with the people of Oceanografia.  If you're

25 talking to the conversation about the boats that Oceanografia

Tillman - direct by Mr. McNiff                                    10

1   owned that was bought from us and other people, I don't know.

2   Q    Okay, let's --

3   A    I know a little bit about what I was told.  Only what I

4   was told.

5   Q    Okay.  Let's talk about that.

6   A    Okay.

7   Q    You said Oceanografia bought some boats from us; is that

8   correct?

9   A    I understand that they did, yes.

10  Q    When you say us, who do you mean by us?

11  A    Well, from either Vita Marine and Seabulk Offshore, I

12  think, both -- both companies.

13  Q    Okay.  And did you have discussions with Oceanografia

14  personnel on what was going to happen with those boats in the

15  future?

16  A    Yeah, off and on.

17  Q    Okay.  What type of discussions?  And what was the --

18  what was discussed?

19  A    Well, at one point we seized one of their boats up here

20  in the United States, which was the Baton Rouge when it

21  belonged to us.  It has a Spanish name now that I can't

22  pronounce.  And at that point, the reason I was involved in

23  it, we had one of our crew boats fixing to be put down to have

24  a motor changed in it.  And they immediately said we couldn't

25  do it because they had made arrangements to send the catamaran

Tillman - direct by Mr. McNiff                                          11

1    boat they owned to the States to have something done to it.

2    And at that point, when you all -- when the Baton Rouge was

3    seized, they stopped that outfit and sent that boat to Belize

4    or somewhere.  And then people in Oceanografia told me, said,

5    better look out, they're getting rid of all their boats and

6    you won't be able to do anything about it.  They're not going

7    to have anything to get when the times up.  Because we knew

8    from last year that our time was running out in Mexico.  That

9    they had sided up with Oceanografia and started going in

10   business with Otto Candeze.  And our boats were gradually

11   being weeded out as fast as they could for the other boats.

12          MR. RUFTY:  Your Honor, I'd like to object on the

13   basis I don't believe this witness has established a

14   foundation that he has knowledge as to what contractual

15   relationships were ongoing between Oceanografia and Otto

16   Candeze.  Or for that matter, as to any attempts by

17   Oceanografia to allegedly dispose of its assets.

18          THE COURT:  Now, I'm going to give you a chance on

19   cross examination to bring that out.  Go ahead.

20   BY MR. McNIFF:

21   Q    Tell me about the contractual relationship between

22   Oceanografia and Seabulk as you understand it.

23   A    As I understand it, we were bare-boat chartered to

24   Oceanografia through Seabulk de Mexico.

25   Q    Okay.  What is your understanding concerning the

Tillman - direct by Mr. McNiff                                    12

1  contractual arrangements between Oceanografia and Otto

2  Candeze?

3  A     None.   I don't know anything about it.

4  Q     Okay.   Were you told of any joint ventures between --

5  A     I was told that they were having a joint venture.

6  Q     Between --

7  A     That they were becoming partners with a new company.

8  Q     Okay.   And who, Otto Candeze?

9  A     Otto Candeze and Oceanografia had a new company forming.

10 Q     All right.   And what were you told was going to occur to

11 the vessels currently owned by Oceanografia?

12 A     That they were being put over into the new corporation.

13 Q     For what purpose.

14 A     They didn't tell me the purpose.

15 Q     Okay.   Was there any discussion concerning divesting of

16 assets to avoid attachment?

17         MR. RUFTY:   I'm sorry, Your Honor.   May I assume

18 that my objection on those grounds as a continuing one so I

19 don't to continue to interrupt.

20         THE COURT:   Very well.   Yes, sir.   Thank you, Mr.

21 Rufty.

22 BY MR. McNIFF:

23 A     It was mentioned and I don't remember who said it, but it

24 was said that whenever it come to the end for Oceanografia and

25 Seabulk de Mexico --

Tillman - direct by Mr. McNiff                                    13

1        MR. RUFTY:  I'm sorry, Your Honor.  I apologize for

2   constantly interrupting.  I have to object here on grounds for

3   hearsay.  This plainly is hearsay.  There's been no foundation

4   established whatsoever for an objection to the hearsay rule.

5   And this witness is commenting about the statements of someone

6   else.  He can't even remember who.

7        THE COURT:  Continue, please.

8   BY MR. McNIFF:

9   Q    Please continue.

10  A    I can remember who, but I'm not going to name the people.

11  There would be repercussions to those people.

12  Q    And when you say that, what kind of repercussions are you

13  concerned about?

14  A    Oh, they'd lose their jobs.  At a minimum they'd lose

15  their jobs and who knows what else.

16  Q    Are you concerned for their health and welfare?

17  A    Yes, sir.

18  Q    Are you concerned for their personal safety?

19  A    Yes, sir.

20  Q    And did you or did you not have conversations direct with

21  Oceanografia personnel --

22  A    Yes, I did.

23  Q    -- concerning the divestment of assets of Oceanografia to

24  avoid attachment and money owed to Seabulk interests.

25  A    Basically, that's what they said, yes, sir.

1    (Pause)

2    Q    Please tell me the relationship between Seabulk Towing

3    and Seabulk de Mexico?

4    A    Seabulk Towing is I believe Vita Marine, which is our

5    parent company, which is now called Seabulk International.

6    And I'm not involved with any part of their relation.  They

7    had their own separate deal with Oceanografia, I understand.

8    My only job was as a boat captain, I went down with our first

9    boat with Seabulk Offshore, the Seabulk Cameron, which is a

10   crew boat.  And they bought -- they changed -- they flagged

11   the boat to Mexican, which means I couldn't be on it after a

12   certain period of time.  I started working in the office from

13   that point on.  And I was the emergency captain for all our

14   boats down there from that point on.

15   Q    Okay.  And how about Seabulk de Mexico and Oceanografia?

16   A    Seabulk de Mexico and Oceanografia was constantly

17   knocking heads 'cause they said it didn't exist.  Oceanografia

18   said Seabulk de Mexico didn't exist though.  We had a real

19   hard time ever having anything happen.  We had to fight for

20   everything we got, which was very little.

21              THE COURT:  I think I've heard enough, Mr. McNiff.

22              MR. McNIFF:  Thank you, Your Honor.

23              THE COURT:  All right.  Mr. Rufty, you will want to

24   do some cross examination.

25              MR. RUFTY:  Thank you, Your Honor.

1    CROSS EXAMINATION OF ANTHONY TRAVIS TILLMAN

2  BY MR. RUFTY:

3  Q    You are a boat captain, is that correct?

4  A    Yes, sir.

5  Q    And you work for Seabulk, is that correct?

6  A    Yes, sir.

7  Q    You certainly would not want to say anything to harm your

8  company, would you?

9  A    I'm saying the truth.

10  Q    Would you want to say anything to harm your company, sir?

11  A    It has nothing to with harm or not harm my company.   I'm

12  telling the truth, which I swore to.

13        THE COURT:  Would you answer his question, please?

14  BY MR. RUFTY:

15  Q    Again, you would not want to say anything to harm your

16  company, would you, sir?

17  A    No, I'd say whatever.  I'm saying I am telling the truth,

18  harm or no harm to my company.

19        MR. RUFTY:  I'd ask that the answer be stricken as

20  non-responsive.

21        THE COURT:  Oh, I think he's responding.  He's

22  saying it does not matter whether it's -

23        THE WITNESS:  I'm trying to answer your question the

24  best I can.

25        THE COURT:  What you're saying is you would tell the

Tillman - cross by Mr. Rufty                                           16

1    truth whether it hurts the company or not?

2              THE WITNESS:  Yes, sir, I would.

3              MR. RUFTY:  Okay.

4              THE COURT:  That's what I understood.

5              MR. RUFTY:  Thank you, Your Honor.

6    BY MR. RUFTY:

7    Q    Now your job is as a vessel captain, is that correct?

8    A    Yes, sir.

9    Q    And what do you do as a vessel captain?  You operate

10   vessels; is that correct?

11   A    In the beginning, yes, sir, when I went to Mexico.

12   Q    You're not involved in the administration of the Seabulk

13   companies, are you?

14   A    I was involved in our administrative office in Mexico.

15   And I am not involved in our administrative office in

16   Lafayette.

17   Q    Are you in charge of negotiating relationships between

18   Seabulk entities and Oceanografia entities?

19   A    By negotiating what?

20   Q    Well, did you negotiate contracts between the two

21   companies?

22   A    No, I negotiated problems with captains, problems with

23   material and repairs of vessels.  Those things I was

24   authorized to negotiate with.

25   Q    What is the total net -- What are the total value of the

Tillman - cross by Mr. Rufty                                    17

1  net assets of Oceanografia?  Do you know?

2  A    I have absolutely no idea.

3  Q    What are the total net liabilities to Oceanografia?  Do

4  you know?

5  A    I have absolutely no idea.

6  Q    What is the capitalization of Oceanografia?

7  A    I have absolutely no idea.

8  Q    Sir, you don't have any idea, do you, from personal

9  knowledge as to whether Oceanografia is capable of paying its

10 debts, do you?

11 A    No, sir, I do not.  I know that they don't pay them from

12 personal knowledge.

13      (Pause)

14 Q    You mentioned that someone said to you that Oceanografia

15 is getting rid of all their boats.  Who is that person?

16 A    Geez, can't remember.

17 Q    Can't remember?

18 A    No, sir.

19 Q    When was it stated to you?

20 A    Shortly after we -- that Seabulk, I believe it was Towing

21 or Vita Towing seized the Baton Rouge or the old Baton Rouge.

22 Q    Where was this statement made to you?

23 A    I believe down on their dock on one of our vessels.  The

24 first time.

25 Q    Was that the full discussion on this topic?

Tillman - cross by Mr. Rufty                              18

1   A    More or less, yeah.

2   Q    You didn't ask questions of this person, did you, as to

3   how many vessels Seabulk -- Oceanografia owned?

4   A    No.

5   Q    You didn't happen to learn -- hear -- even hear a

6   specific information about the transfer of one particular

7   vessel to one particular company, did you?

8   A    No, sir.  I just witnessed all the boats that was going

9   to the United States and immediately get sent to Belize.

10  Q    You have no idea, do you, of personal knowledge, as to

11  whether or not this statement, by this unidentified person

12  whom you can't remember, was true?  Is that correct?

13  A    Oh, I would bet my life it was true.

14  Q    No, that was not my question, with all due respect, sir.

15  You do not have any personal knowledge that the statement you

16  heard from some unidentified person is true?  Aren't I correct

17  on that?

18  A    I'd assume that it was true.

19  Q    I didn't ask what you assumed.  You don't have any

20  personal knowledge, do you?

21  A    I'm telling you the truth, okay.  To my knowledge, it was

22  true.

23  Q    Okay.  To your knowledge it was true.  But you just told

24  us, sir, that you have no knowledge of any particular transfer

25  of any vessel from Oceanografia to another company; is that

1  correct?

2  A    That's correct.  That's correct.

3  Q    What other assets aside from vessels does Oceanografia

4  own?

5  A    I have absolutely no idea.

6  Q    What are they worth?

7  A    I have absolutely no idea.

8  Q    And you worked down in Mexico for how many years?

9  A    Oh, approximately three and half.

10  Q    In connection with Oceanografia?

11  A    The entire time.

12  Q    Were you ever harmed by any thug by Oceanografia?

13  A    No.  I have a fine relationship with people -- with that

14  man right over there.  That's a fine gentleman right over

15  there.  I know him well.

16  Q    Who are you referring to.

17  A    Mr. Amado.

18  Q    Mr. Amado Yanez?

19  A    Yes, sir.

20  Q    The defendant?

21  A    Yes, sir.  As far as personal relationship with Mexicans,

22  I consider him a friend.  I have no hostilities against this

23  man.

24            MR. RUFTY:  May I have one moment, Your Honor.

25            THE COURT:  Yes, sir.

Tillman - cross by Mr. Rufty                                    20

1        (Pause)

2              THE COURT:  Mr. Rufty, you don't need to get too

3    technical.  I think I've just about heard enough.  So if you

4    want to finish up --

5              MR. RUFTY:  Thank you, Your Honor.  Just a couple,

6    two or three more questions, --

7              THE COURT:  All right.

8              MR. RUFTY:  -- and I will quit beating this horse.

9    BY MR. RUFTY:

10   Q    Captain, are you familiar that the Saint Tammy and the

11   Saint Andrews had engine problems while working in Mexico; is

12   that correct?

13   A    Yes, sir.

14   Q    Both those vessels were owned by Seabulk, is that right?

15   A    Yes, sir.

16   Q    And as a result of these engine problems both vessels

17   experienced down time, is that right?

18   A    Yes, sir.

19   Q    Oceanografia is a reputable company that works with many

20   large marine corporations, isn't that true to your knowledge?

21   A    Not to my knowledge.

22   Q    Are you familiar they work with Otto Candeze?

23   A    Yeah.

24   Q    Are you familiar that Oceanografia works with DSND

25   Subsea?

Tillman - cross by Mr. Rufty                                          21

1    A    Subseas, yes.

2    Q    Are you familiar that Oceanografia works with Diamond

3    Services?

4    A    Yes, sir.  I'm familiar with the companies that they

5    lease boats from, yes.

6    Q    And you're familiar that Oceanografia has contractual

7    relationships and works with Halliburton?

8    A    Maybe.  I don't know.  I'm not here saying I know their

9    business.

10   Q    Oceanografia is a large company.  Isn't that your

11   understanding?

12   A    It's grown to be one, yes, sir.

13        (Pause)

14   Q    Sir, did you have -- Last question.  Do you have any idea

15   as to how much money Oceanografia is due to be paid under

16   existing contracts in the next two years?

17   A    Do I have a -- No, sir, I have no -- I don't access to

18   their --

19        MR. RUFTY:  No further questions.  Thank you, Your

20   Honor.

21        THE COURT:  I think we've about gone the limit on

22   this, Mr. McNiff.  Did you want to do a cross exam or I mean

23   a --

24        MR. McNIFF:  Your Honor, I just had a few more

25   questions as well on another cross examination.

22

1       THE COURT: With relationship to what?

2       MR. McNIFF: More about the conversation he had with

3 Oceanografia individuals.

4       THE COURT: That's okay. All right. Anything

5 further from either side with this witness?

6       MR. RUFTY: Not with this witness, Your Honor.

7       THE COURT: All right. You may step down, sir.

8          All right. Anymore argument with regard to the

9 motion for default judgment?

10       MR. RUFTY: Your Honor, I would be pleased to offer

11 some argument if --

12       THE COURT: Yes, please.

13       MR. RUFTY: -- you please. Thank you.

14       MR. McNIFF: Your Honor, before Mr. Rufty argues can

15 we cross examine Mr. Yanez-Osuna concerning the circumstances

16 why he couldn't hire a lawyer in 20 days when he already had

17 one?

18       THE COURT: No, we're going to cut it off right

19 here, Mr. Buchanan [sic]. Go ahead, sir.

20       MR. RUFTY: Thank you, Your Honor. I'd like to make

21 a few brief points if I may. The first -- I'll be very brief,

22 I promise.

23         The first is that the testimony we've heard

24 today and the argument we've heard today does not establish a

25 case to permit -- to establish -- to reach the standard for

(                                                    (

23

1    allowing entry of default judgment.  What we're arguing about
2    here is the theoretical inability of the defendants to pay a
3    judgment.  We're not arguing about the merits of the case.  In
4    order obtain a judgment by default, it is incumbent upon the
5    plaintiffs to put on a prima facia case of liability.  They
6    have plainly failed to do that.
7              Secondly, Your Honor, in the absence of some
8    fraud which has not been alleged in any pleading, it has not
9    been made the subject of any formal motion, we are hearing
10   merely that the defendants are, in an effort to hide assets to
11   avoid collection of a judgment, that is a very reckless and
12   wrong assertion that is totally unfounded, as I think the
13   testimony from this captain of a vessel reflects.
14             In any event, that goes to the question of
15   judgment enforcement.  We're not to the point yet of judgment
16   enforcement.  We have yet to litigate the merits of this case.
17   And certainly fairness in our judicial system calls for us to
18   litigate the merits of this case.
19             Thirdly, I just think it's important to bear in
20   mind the circumstances under which this default judgment is
21   brought.  Due to a variety of factors detailed in our motion
22   pleadings, we were unable to file an answer timely.  However,
23   the very morning that an answer was overdue, I personally
24   telephoned defense [sic] counsel and asked for a three-day
25   extension of time.  I was told that although there had been

24

1  bad blood between the companies that it sounded like a

2  reasonable request and that the plaintiff's counsel would get

3  back to me that day, although would be in deposition.    I

4  advised them I too would be in deposition and we could talk

5  later in the afternoon.    At approximately 5:00 p.m., we had a

6  telephone conversation with Mr. Buchanan on behalf of the

7  plaintiffs, who advised, no, I'm sorry, but my client says we

8  cannot grant your request of a three-day extension.    Then

9  there was utter silence.    Only because I asked did I learn

10  that in the interim, during that day, while my request for a

11  very reasonable three-day extension was pending, that the

12  plaintiffs went to court in an attempt to enter a default

13  against my client, while knowing that I was waiting for an

14  answer to my very reasonable request for a mere three-day

15  extension of time.    I think that in looking at the equities of

16  this entire picture that should be borne in mind.

17            Additionally, Your Honor, we understand from

18  the minute entry from the Court that there was in fact never a

19  default entered.    And furthermore --

20            THE COURT:   There was what entered?

21            MR. RUFTY:   That there never was a default entered

22  if I'm reading document correctly.

23            THE COURT:   That is correct.   That is correct.

24            MR. RUFTY:   And furthermore, that an answer has now

25  been placed on file.   And under those circumstances, I think

(                              (

25

1   that it would not be appropriate for a default judgment to be

2   entered -- rendered.  I think that certainly the law has a

3   preference for disputes to be determined on the merits.  What

4   we have here is, I think, an outrageous attempt to circumvent

5   that process and to obtain a multi-million dollar judgment

6   without any discovery, without even so much as a motion for

7   summary judgment, without looking at the merits of the case

8   whatsoever.  And I think certainly that we are entitled to

9   address the merits of this case.  Thank you, Your Honor.

10              THE COURT:  All right.  Mr. McNiff?

11              MR. BUCHANAN:  Your Honor, Jim Buchanan.

12              THE COURT:  Mr. Buchanan.

13              MR. BUCHANAN:  Since Mr. Rufty testified, I'd like

14  to testify about the substance of our conversation as well.

15              At the very outset of my discussion with Mr.

16  Rufty, I told him that Mr. Finch, the assistant general

17  counsel at Seabulk, had instructed us under no circumstances

18  were we to grant any extensions of time for any matters to

19  Oceanografia.  But that as a matter of courtesy I would call

20  Mr. Finch and confirm that that was still his position.  And

21  after I got hold of Mr. Finch, I called Mr. Rufty's office and

22  left a voice mail and Mr. Rufty called me back about 4:30 that

23  afternoon.

24              MR. McNIFF:  Your Honor, our case remains the same,

25  the three prongs have been met, both individually.  And that's

26

1   all that has to be required under Fifth Circuit standard to

2   enter a default.  Willfulness, we think we have made a

3   compelling case as far as the willfulness character.  Lack of

4   meritorious defense and prejudice.

5            As far as whether or not a entry of default has

6   been made, the last time we apprised the Court of the case law

7   that stated that if a answer was -- that if a motion for entry

8   had been filed and in fact they were in default then they

9   would have to do a motion to set aside, but the default was in

10  fact entered by itself.  We have case law just for that

11  proposition, as discussed last time.

12           As far as the testimony of Mr. Tillman, Mr.

13  Tillman came here at what he believes is great personal risk

14  to himself and to the other employees he spoke with for

15  Oceanografia.  There is severe concern about that which also

16  goes to the willfulness.

17           Once again, in their argument, in their motion,

18  in their affidavits, in their declaration, have they shown any

19  proximate cause of any events that they discuss to link up to

20  the reason why they failed to file their answer.  We believe

21  that once again constitute a willful intention to delay while

22  they divest themselves of the assets.

23           We have been in this case already one obstacle

24  after another from the first day, affecting service, trying to

25  get waiver, faxing the documents, doing the whole chabang,

27

1  then trying to get third party discovery, which the Court has

2  allowed for the meeting of the parties. We continue to have

3  obstructions placed in our path to obtain that third party

4  discovery from counsel for Oceanografia trying to intercede,

5  telling those individuals they don't have to respond. That

6  all constitutes contumacious conduct, willfulness, which

7  merits in itself entry of default.

8           MR. RUFTY:  May I respond, Your Honor?

9           THE COURT:  Yes, you may.

10          MR. RUFTY:  I have to say, Your Honor, I find his

11 statements to be completely outrageous. As to the allegation

12 that I have obstructed with their discovery efforts and

13 instructed the subpoenaed parties not to respond, that is

14 untrue.

15          There have been two subpoenas issued by virtue

16 of a motion that we did not even know about because our

17 opposing counsel did not do us the favor of sending it to us,

18 for an expedited discovery. One was against Merrill Lynch.

19 That is the investment company which holds an investment

20 account both individually for Mr. Yanez and for the company,

21 Oceanografia.

22          I called the legal representative for Merrill

23 Lynch, who is in New York. Her name is Symantha Velez. And I

24 asked her, can I please see the documents that you intend to

25 produce prior to production, in case we have a legitimate

28

1    objection.  And you know what she told me, Your Honor?  She

2    told me that her office was approximately two blocks from the

3    World Trade Center, that her office had been decimated, that

4    she was in temporary quarters in midtown Manhattan and would

5    not be in a position to think about responding to that

6    subpoena because she had no access to records for at least

7    weeks, possibly months.  The suggestion, based on absolutely

8    nothing, that I have obstructed the process, I find to be

9    outrageous and an irresponsible statement of plaintiff's

10   counsel.

11          Secondly, Your Honor, as to Otto Candeze, I am

12   a counsel for Otto Candeze as well.  We received -- Otto

13   Candeze was served with a subpoena, Your Honor, prior to the

14   time that answer was due to be filed.  I, as a counsel for

15   that company, not as counsel for Oceanografia, spoke with one

16   of the representatives about the very burdensome and broad

17   request for documentation, all of which really went to the

18   issue of judgment collection, not the merits of this case.

19   And in my conversation, we discussed how to respond.  As a

20   result of that conversation with my other client, Otto

21   Candeze, I wrote a letter objecting to the subpoenas, validly,

22   alleging that they were premature.

23          I, at the time, Your Honor, knew nothing about

24   any order for expedited discovery because my opposing counsel,

25   despite knowing I was involved, didn't bother to send it to

29

1   me, Your Honor. And that is the appropriate procedure for

2   addressing subpoenas.

3                   If counsel for the plaintiffs believe that the

4   objections are improper, then the appropriate procedure is to

5   file a motion to compel discovery. It is not to try to

6   dismiss entirely the process of adjudicating the merits of

7   this case.

8                   Finally, Your Honor, as to the allegation of

9   prejudice, the true prejudice we're to look to here is the

10  prejudice between the day the answer was due to be filed and

11  the day an answer was in fact sent to this Court, 48 hours

12  later. Because that is the only period that there was a

13  belated failure to provide an answer. And that was under

14  circumstances that have been fully explained. My client was

15  traveling. I had been traveling. We had been trying to

16  contact him for several, several days. There are many other

17  factors noted in our papers explaining the reasons for the

18  delay. And we asked for a very simple three-day extension of

19  time. Those are reasonable circumstances. They're certainly

20  not the sort of circumstances that should deprive us of the

21  ability to adjudicate the merits of this case. And there has

22  been showing whatsoever or even an allegation of prejudice as

23  a result of a 48 hours delay, really less than that, of an

24  answer getting on file with this Court.

25                  Finally, as to the lack of meritorious defense

30

1   prong, we've just heard this very vessel captain, interested

2   witness on behalf of Seabulk, that his vessels didn't work

3   properly, that there was down time during the course of the

4   charters to my client, Oceanografia.  Your Honor, that is one

5   of the defenses we have alleged in our complaints.  So from

6   their own witness, we've heard today that there is a

7   meritorious defense of these claims.  Thank you, Your Honor.

8           THE COURT:  All right.  I've heard enough, Mr.

9   McNiff.

10          All right.  I'm going to find that the motion

11  for default judgment will be denied.  I do not find that there

12  is any willfulness in the delay of filing the answers based on

13  the evidence of Mr. Tillman, which was, I think, as pointed

14  out by defense counsel, a lot of hearsay.  I did not hear

15  anything of any substance.  I find that there is no prejudice.

16  And also that there is some meritorious defense of this case.

17  Motion for default will be denied.

18          Now, let's get on with the scheduling order.

19  How many days to try this case, gentlemen?

20          MR. RUFTY:  My best guess, Your Honor, at this point

21  would be one week.

22          THE COURT:  Is that about right, Mr. Buchanan?

23          MR. McNIFF:  I would think so, Your Honor, because

24  there's probably going to be, unless we can stipulate to --

25  maybe we can stipulate to a lot of it.  But there's going to

31

1    be a lot detail about -- they're going to raise about how many

2    days the boats were down and what the expense was and so on

3    and so forth.  So I think a week.

4            THE COURT:  Okay.  Five days.  Okay.  And you want a

5    bench trial -- I mean, a jury trial, I take it?

6        (Pause)

7            MR. McNIFF:  Your Honor, our client's comfortable

8    going to yourself with the trial on an expedited basis.

9            THE COURT:  Well, I think this is a case that

10   belongs to Judge Tagle.  So it will be before Judge Tagle,

11   unless both parties want to sign off on a 636, I'll be glad to

12   try it.

13           MR. RUFTY:  Your Honor, we would like to request --

14   respectfully request a jury trial.

15           THE COURT:  All right.  What about the issue of the

16   636.  Do you want to try this before Judge Tagle or before me?

17           MR. McNIFF:  We'll try it before a magistrate,

18   before yourself, by the Court, Your Honor.

19           MR. RUFTY:  Your Honor, we're content to try the

20   case before Your Honor.

21           THE COURT:  All right.  Please provide them with the

22   motions -- with the documents and have them sign that today

23   before you leave.

24               All right.  Let's go through this scheduling

25   order to see if we can make some determinations here about

32

1  when we're going to try this case. Are you going to have any

2  experts, Mr. McNiff?

3      MR. McNIFF:  I believe we would, sir.

4      THE COURT:  All right.  When can you have -- when

5  will you provide the names along with a report to the

6  defendant?

7      MR. BUCHANAN:  Your Honor, one of our -- We

8  anticipate that one expert that we would call would be a

9  representative of -- what's the accounting firm?

10      MR. McNIFF:  KPMG, Your Honor.

11      MR. BUCHANAN:  KPMG in Mexico.

12      THE COURT:  All right.

13      MR. BUCHANAN:  And KPMG has attempted to conduct an

14  audit.  They still don't have what they need to render even a

15  preliminary report.  I believe they have information regarding

16  expenses but not revenues.  So we're kind of stuck as to tell

17  you when we can have those people ready to render a report.

18      THE COURT:  Are you anticipating joining any new

19  parties?

20      MR. BUCHANAN:  Not from our perspective, Your Honor.

21      THE COURT:  How about from the defense?

22      MR. RUFTY  Not at this time, Your Honor.  I

23  respectfully request that we be afforded a very short window

24  of time in order to gather further facts and make that

25  determination.  I would imagine that three weeks or a month

33

1    would suffice.

2          THE COURT:  Well, let's see today is what, October

3    the 12th.

4          MR. RUFTY  Yes, Your Honor.

5          THE COURT:  All right.  New parties may be joined,

6    let's say by December 3rd, 2001.  Is that acceptable to all

7    the parties?

8          MR. RUFTY:  Thank you, Your Honor, that's fine.

9          THE COURT:  All right.  Do you think you'll be able

10   to name your experts, say by March 1st?

11         MR. BUCHANAN:  One way or another, we will.

12         THE COURT:  Let's go ahead and set that date.  And

13   if you have problems you can ask for extensions of time.

14   March 1st, 2001.

15         MR. RUFTY:  Your Honor --

16         THE COURT:  March 2nd, excuse me.

17         MR. RUFTY:  Your Honor, defendants --

18         THE COURT:  I'm sorry, 2002.

19         MR. RUFTY:  Your Honor, would defense experts be 30

20   days thereafter?

21         THE COURT:  Yes, 30 days thereafter.

22         MR. RUFTY:  Thank you, Your Honor.

23         THE COURT:  All right.  And discovery should be

24   completed.  And how much time do you need to complete your

25   discovery?

34

1    MR. RUFTY: Speaking for the defendants, Your Honor,
2  I would think that we could complete discovery by around the
3  time the expert reports.  I would say certainly by March or
4  April.  We don't believe this is going to -- complicated case
5  at the bottom of it.
6        THE COURT: Mr. McNiff, Mr. Buchanan?
7        MR. McNIFF: How about June 1 sounds fine.
8        MR. RUFTY: If that suits the Court, Your Honor.
9        THE COURT: This is October.  All right.  June 1st,
10  2002.  Now, all dispositive motions need to be filed by --
11        THE CLERK: June 1st is a Saturday.
12        THE COURT: All right.  June 1st is a Saturday.  All
13  right what's the -- would it be the 3rd, June the 3rd.
14        MR. RUFTY: Thank you, Your Honor.
15        THE COURT: Okay.  June the 3rd, 2002.  All right,
16  dispositive motions need to be filed then July 1st, 2002.
17              Joint pretrial order will be scheduled for July
18  22nd.  That's a joint pretrial order will be due July 22nd,
19  2002.  And then final pretrial will be scheduled for --
20        (The Court confers with Clerk)
21        THE COURT: We'll have to go with -- Let's with a
22  September final pretrial.  September final pretrial is
23  September the 5th, 2002.  And jury selection will be September
24  the 6th, 2002 at 8:30 in the morning.  At that time we will
25  set the actual trial date for the month of June -- of

1    September of 2002.

2         Now that ought to get us in and out within --

3    before the expiration of one year.  And I think that ought to

4    give you enough -- enough time.

5         Now, Mr. Rufty and Mr. McNiff, it is pretty

6    evident to me that at this particular point there is some

7    tension between counsel.  And I don't expect to see that

8    again.  I want to have complete professionalism here.  Let's

9    not be making allegations that cannot be supported.  It makes

10   me very uncomfortable.  So I really would not like to see that

11   again.

12        The other thing is that I want to -- And Mr.

13   Yanez, what I want to express to you, sir, is that in this

14   courtroom I hope to give you a fast and a very fair hearing.

15   But what I expect back from you and from all the parties, not

16   only yourself, but the plaintiffs, is that everyone cooperate

17   with one another so that this Court can do its job and be able

18   to handle this case as expeditiously and as evenly-handed as

19   possible.

20        So do I have your assurances, Mr. McNiff and

21   Mr. Rufty that we can expect cooperation and so forth?

22             MR. RUFTY:  Yes, Your Honor.

23             MR. McNIFF:  Yes, Your Honor.

24             THE COURT:  All right.  Have you signed the 636?

25        (Pause)

36

1      THE COURT: Okay. Here it is. We will type up the

2   scheduling order and have it mailed to you at the beginning of

3   next week.

4      MR. RUFTY: Thank you, Your Honor.

5      THE COURT: All right.

6      MR. McNIFF: Thank you, sir.

7      THE COURT: Thank you for your cooperation and thank

8   you for being here, Mr. Yanez. I know it has been a little

9   bit of a problem for you. But I wanted you to come and see

10  for yourself our court and the people that are here so that

11  you can be assured that we'll be even-handed with you, but we

12  expect the same from you. So please cooperate with these

13  discovery efforts and let's get this thing on the road.

14      And of course, at any time that you all would

15  like to submit to mediation, we are open to that as well.

16      MR. RUFTY: Thank you, Your Honor. Pleasure meeting

17  you.

18      MR. McNIFF: Thank you, sir.

19      THE COURT: All right. Anything further?

20      MR. McNIFF: No, Your Honor.

21      MR. RUFTY: No, Your Honor.

22      THE COURT: All right. Court is in recess.

23      (These proceedings concluded at 2:50 p.m.)

24

25                    * * * * *

# C E R T I F I C A T I O N

I certify that the foregoing is a correct
transcript from the electronic sound
recording of the proceedings in
the above-entitled matter.

_____
Signature of Transcriber

_____
Date    January 30, 2002

20382
JTT#

## BILL OF SALE

WE, **Oceanografia, S.A. de C.V.**, a corporation incorporated under the laws of Mexico (hereinafter called the "Seller") of Calle 26-A. Lopez Mateos Mza. D Lote 2-A, Parque Ind. Pesq. Laguna Azul, 42120 Cd. Del Carmen, Campeche, Mexico, in consideration of the sum of Ten United States Dollars (US $10) and other good and valuable consideration paid to us by **Candies Mexican Investments S. de R.L. de C.V.**, a Mexican company organized under the laws of the Country of Mexico (hereinafter called the "Purchaser"), the receipt of which is hereby acknowledged, do hereby sell, assign and transfer all of our right, title, and interest in and to the **SEABULK AUSTIN** (hereinafter called the "Vessel") described below, including her boats, tackles and other appurtenances, to the Purchaser.

FURTHER, the Seller for itself and its successors covenant with the Purchaser and its assigns that we have power to transfer the Vessel and title thereto in the manner aforesaid and that the same is sold to the Purchaser free and clear of all liens, mortgages, and other encumbrances of any kind and nature.

| | | | |
|---|---|---|---|
| NAME OF VESSEL: | SEABULK AUSTIN | GROSS TONNAGE: | 213.00 |
| FLAG: | Mexico | NET TONNAGE: | 63.00 |
| PORT OF REGISTRY: | Cd. Del Carmen, Campeche | | |
| REGISTRATION NO.: | 0401098825-6 | | |
| CALL SIGN: | XCKU | | |

IN WITNESS WHEREOF, we have caused this Bill of Sale to be executed as of the 5ʰ day of March , 2001.

Oceanografia, SA. de C.V. as Seller

BY: _____

Name:  Amado Yanez Osuna

Title:  Director

### ACKNOWLEDGMENT

STATE OF LOUISIANA        )
                          )        ss:
COUNTRY OF U.S.A.         )

On this 5ʰ day of March , 2001, before me personally appeared **Amado Yanez Osuna**, who being duly sworn deposes and says that he has an address at Calle 26-A. Lopez Mateos Mza. D Lote 2-A, Parque Ind. Pesq. Laguna Azul, 42120 Cd. Del Carmen, Campeche, Mexico; that he is the Managing Member of the Seller which is described in and which executed the foregoing Bill of Sale; and that sufficient proof has been presented to me and upon examination of same I have seen evidence that Paul Candies is and was authorized to execute the foregoing Bill of Sale and signed his name thereon; I acknowledge the due execution of said instrument for the purpose therein stated.

SWORN TO AND SUBSCRIBED before me a Notary Public in and for the State and Country aforesaid, this 5ʰ day of March , 2001.

_____
NOTARY PUBLIC

(Notarial Seal)

H:\DOCS\C\CANDO\00062\Documents\00k28jmr002.wpd

## EXHIBIT G

OCEAN.00865

## BILL OF SALE

WE, Oceanografia, S.A. de C.V., a corporation incorporated under the laws of Mexico (hereinafter called the "Seller") of Calle 26-A. Lopez Mateos Mza. D Lote 2-A, Parque Ind. Pesq. Laguna Azul, 42120 Cd. Del Carmen, Campeche, Mexico, in consideration of the sum of Ten United States Dollars (US $10) and other good and valuable consideration paid to us by Candies Mexican Investments S. de R.L. de C.V., a Mexican company organized under the laws of the Country of Mexico (hereinafter called the "Purchaser"), the receipt of which is hereby acknowledged, do hereby sell, assign and transfer all of our right, title, and interest in and to the SEABULK CAMERON (hereinafter called the "Vessel") described below, including her boats, tackles and other appurtenances, to the Purchaser.

FURTHER, the Seller for itself and its successors covenant with the Purchaser and its assigns that we have power to transfer the Vessel and title thereto in the manner aforesaid and that the same is sold to the Purchaser free and clear of all liens, mortgages, and other encumbrances of any kind and nature.

NAME OF VESSEL:   SEABULK CAMERON            GROSS TONNAGE:   150.00
FLAG:             Mexico                     NET TONNAGE:     45.00
PORT OF REGISTRY: Cd. Del Carmen, Campeche
REGISTRATION NO.: 0401024725-5
CALL SIGN:        XCSH

IN WITNESS WHEREOF, we have caused this Bill of Sale to be executed as of the _11th_ day of _March_, 2001.

Oceanografia, S.A. de C.V. as Seller

BY: _____
Name:  Amado Yanez Osuna
Title:  Director

## ACKNOWLEDGMENT

STATE OF LOUISIANA      )
                        )        ss:
COUNTRY OF U.S.A.       )

On this _11th_ day of _March_, 2001, before me personally appeared Amado Yanez Osuna, who being duly sworn deposes and says that he has an address at Calle 26-A. Lopez Mateos Mza. D Lote 2-A, Parque Ind. Pesq. Laguna Azul, 42120 Cd. Del Carmen, Campeche, Mexico; that he is the Managing Member of the Seller which is described in and which executed the foregoing Bill of Sale; and that sufficient proof has been presented to me and upon examination of same I have seen evidence that Paul Candies is and was authorized to execute the foregoing Bill of Sale and signed his name thereon; I acknowledge the due execution of said instrument for the purpose therein stated.

SWORN TO AND SUBSCRIBED before me a Notary Public in and for the State and Country aforesaid, this _11th_ day of _March_, 2001.

_____
NOTARY PUBLIC

(Notarial Seal)
H:\DOCS\C\CAND\O\00062\Documents\00k28jmr002.wpd

OCEAN.00867

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SEABULK TOWING, INC., f/k/a | § | CIVIL ACTION |
| HVIDE MARINE TOWING, INC., | § | |
| and SEABULK OFFSHORE, LTD., | § | |
| Plaintiffs | § | NUMBER: C.A. B-01-094 |
| | § | |
| v. | § | |
| | § | |
| OCEANOGRAFIA S.A. de C.V and | § | In Admiralty |
| AMADO YANEZ OSUNA, | § | |
| Defendants | § | |

## NOTICE OF SETTLEMENT

Comes now, Defendants Oceanografia S.A. de C.V. and Amado Yanez Osuna unopposed, and pursuant to Local Rule 16.3, give notice of settlement, and request the hearing of April 24, 2002 be reset.

### I.

Defendants would show that a settlement, in principal, has been reached with the Plaintiffs, and the parties are diligently working out the details thereof and particularly the form and substance of the supplementary documents accompanying the settlement. A hearing on this matter is set for April 24, 2002 at 2:00 p.m. With the consent of Plaintiffs, Defendants request the hearing be reset within seven (7) days (May 1, 2002) or as soon as is reasonably possible thereafter at the request of Plaintiffs in order to keep the pressure on the parties to work out the details of the settlement and file the appropriate dismissal papers.

49499:1010064.1:041902

# EXHIBIT H

II.

Plaintiffs, through counsel, consent to this Notice and Request.

If the court would request a proposed order resetting the hearing of April 24, 2002, please advise.

Respectfully submitted,

By: _Jim Hunter by permission Eddie Shes_
James H. Hunter, Jr.
Texas State Bar No. 00784311
Federal ID No. 15703
ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.
55 Cove Circle
P.O. Box 3509
Brownsville, Texas 78523-33509
Tel: (956) 542-4377
Fax: (956) 542-4370
LOCAL COUNSEL FOR DEFENDANTS,
OCEANOGRAFIA S.A. DE C.V. AND
AMADO YANEZ OSUNA

Rufus C. Harris III (#Admission No. 29458)
Alfred J. Rufty III (#Admission No. 29457)
HARRIS & RUFTY, L.L.C.
1450 Poydras Street, Ste. 1510
New Orleans, Louisiana 70112
Tel: (504) 525-7500
Fax: (504) 525-7222
ATTORNEY IN CHARGE FOR DEFENDANTS,
OCEANOGRAFIA S.A. DE C.V. AND
AMADO YANEZ OSUNA

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been forwarded to the following opposing counsel by facsimile, this _14th_ day of April, 2002:

Mr. James F. Buchanan
Frank L. McNiff, Jr.
THE KLEBERG LAW FIRM
800 N. Shoreline Blvd., Ste. 900 North
Corpus Christi, Texas 78401

_Jim Hunter by permission Eddie Shes_
James H. Hunter, Jr.

64

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

SEP 1 0 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

| | |
|---|---|
| SEABULK TOWING, INC., f/k/a | § |
| HVIDE MARINE TOWING, INC., | § |
| and SEABULK OFFSHORE, LTD. | § |
| | § |
| | § |
| V. | § |
| | § |
| OCEANOGRAFIA S.A. de C.V. and | § |
| AMADO YANEZ OSUNA | § |

CIVIL ACTION NO. B-01-094

In Admiralty

## ORDER GRANTING MOTION COMPEL DISCOVERY

Came on to be considered Plaintiffs' Motion to Compel Responses to Interrogatories and Requests for Production of Documents, and the Court having considered the same, it is hereby ORDERED that said Motion is GRANTED in its entirety.

It is therefore ORDERED that the objections of Amado Yanez Osuna are OVERRULED and that Oceanografia S.A. de C.V. is ordered to respond fully and completely to the Interrogatories and Requests for Production served by Plaintiffs within five (5) business days of the entry of this Order.

SIGNED this _10_ day of _September_, 2002.

_____
UNITED STATES DISTRICT JUDGE

EXHIBIT |

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

SEP 1 0 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| SEABULK TOWING, INC., f/k/a | § | |
| HVIDE MARINE TOWING, INC., | § | |
| and SEABULK OFFSHORE, LTD. | § | |
| Plaintiffs | § | CIVIL ACTION NO. B-01-094 |
| | § | |
| V. | § | In Admiralty |
| | § | |
| OCEANOGRAFIA S.A. de C.V. and | § | |
| AMADO YANEZ OSUNA | § | |
| Defendants | § | |

## ORDER GRANTING MOTION COMPEL DISCOVERY

Came on to be considered Plaintiffs' Motion to Compel Responses to Interrogatories and

Requests for Production of Documents, and the Court having considered the same, it is hereby

ORDERED that said Motion is GRANTED in its entirety.

It is therefore ORDERED that the objections of Oceanografia S.A de C.V. are

OVERRULED and that Oceanografia S.A. de C.V. is ordered to respond fully and completely to

the Interrogatories and Requests for Production served by Plaintiffs within five (5) business days

of the entry of this Order.

SIGNED this 10th day of September, 2002.

_____
UNITED STATES DISTRICT JUDGE

164606/Order                    1

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

DEC 0 5 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| SEABULK TOWING, INC., f/k/a | § | |
| HVIDE MARINE TOWING, INC., | § | |
| and SEABULK OFFSHORE, LTD. | § | |
| | § | CIVIL ACTION NO. B-01-094 |
| | § | (636(c)) |
| V. | § | In Admiralty |
| | § | |
| OCEANOGRAFIA S.A. de C.V. and | § | |
| AMADO YANEZ OSUNA | § | |

## ORDER GRANTING MOTION COMPEL DISCOVERY

On the 3rd day of December, 2002, came on to be considered Plaintiffs' Motion to Compel Responses to Plaintiffs' Second Set of Interrogatories and Requests for Production of Documents and Plaintiffs' Third Request for Production, and the Court having considered the same, and finding that Defendant Yanez failed to respond in a timely manner, it is hereby ORDERED that said Motion is GRANTED in its entirety.

It is therefore ORDERED that Amado Yanez Osuna respond fully and completely to the Second Set of Interrogatories and Requests for Production and Third Request for Production served by Plaintiffs on or before December 23, 2002.

Defendant Amado Yanez Osuna has waived any objections to Plaintiffs' Second Set of Interrogatories and Requests for Production of Documents and Plaintiffs' Third Set of Requests for Production.

SIGNED this 5th day of December, 2002.

UNITED STATES MAGISTRATE JUDGE

170468/Order                          1

# EXHIBIT J

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SEABULK TOWING, INC., f/k/ | * | CIVIL ACTION |
| HVIDE MARINE TOWING, INC., | * | |
| and SEABULK OFFSHORE, LTD. | * | |
| Plaintiffs | * | NUMBER: C.A. B-01-094 |
| | * | |
| VERSUS | * | |
| | * | |
| OCEANOGRAFIA S.A. de C.V and | * | In Admiralty |
| AMADO YANEZ OSUNA | * | |
| Defendants | * | |

## RESPONSES TO INTERROGATORIES AND
## REQUEST FOR PRODUCTION OF DOCUMENTS

NOW COMES defendants, Oceanografia, S.A. de C.V. and Amado Yanez Osuna, who respond to the First Set of Interrogatories and Request for Production of Documents propounded to it by plaintiff, Seabulk Towing, Inc., as follows:

**INTERROGATORY NO 1:**

Identify, by full and correct name, including middle name and nicknames, the physical address of their respective residences, telephone numbers, driver's license numbers, Social Security numbers and dates of birth, all individuals who assisted in answering these Interrogatories and for each individual, specifically state the Interrogatory or Interrogatories (by number) each individual who assists in answering and the documents and things used in answering each respective Interrogatory.

1

# EXHIBIT K

**RESPONSE TO REQUEST NO. 20**:

None.

**REQUEST NO. 21**:

Please produce the vessel status reports and invoices for charters of all vessels to PEMEX.

**RESPONSE TO REQUEST NO. 21**:

See enclosed documents.    See also the KPMG audit reports and underlying documents.

**REQUEST NO. 22**:

Please produce any and all joint-venture agreements entered into by Defendant with Plaintiff or other party, within the five (5) years prior to the present year, and related to the operation of crew and/or supply vessels in the Gulf of Mexico.

**RESPONSE TO REQUEST NO. 22**:

Seabulk already is in possession of the joint venture agreement entered into between itself and Oceanografia.  As to any other joint venture agreements entered into between Oceanografia and other entities uninvolved in this suit, they are not relevant and further are protected proprietary business records. Subject to these objections, Oceanografia has no such joint venture agreements, except for the one with Seabulk.

**REQUEST NO. 23**:

Please produce all shareholder agreements entered into on behalf of Defendant, its

21

furnished to PEMEX and others from 1998 to present.

**RESPONSE TO REQUEST NO. 33**:

      This request does not call for the production of any documents.

**REQUEST NO. 34**:

      Identify the policy, plan, procedure, protocol, or methodology describing or relating to the recordation, levying and accountancy for revenue pertaining to per diem charges for room and board for PEMEX workers on the vessels from 1998 to present.

**RESPONSE TO REQUEST NO. 34**:

      See response to Request No. 33.

**REQUEST NO. 35**:

      Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to port expenses and fees for the vessels since 1998.

**RESPONSE TO REQUEST NO. 35**:

      This request is vague and confusing, as it is not known what is meant by "all records ... received by or prepared by you ... for the vessels." If it means every document relating in any way to the vessels, it is redundant and overburdensome. Subject to these objections, see enclosed documents. See also the KPMG audit report, and the KPMG documents which on information and belief are already in Seabulk's possession. If any further documents are discovered pertaining to the expense categories mentioned in the request, this response will be supplemented accordingly.

**REQUEST NO. 36**:

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to agency expenses and fees for the vessels since 1998.

**RESPONSE TO REQUEST NO. 36**:

See response to Request No. 35.

**REQUEST NO. 37**:

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to manifest charges and fees for the vessels since 1998.

**RESPONSE TO REQUEST NO. 37**:

See response to Request No. 35.

**REQUEST NO. 38**:

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to marketing expenses and fees for the vessels since1998.

**RESPONSE TO REQUEST NO. 38**:

See response to Request No. 35.

**REQUEST NO. 39**:

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to fuel expenses and fees for the vessels since 1998.

**RESPONSE TO REQUEST NO. 39**:

See response to Request No. 35.

**REQUEST NO. 40**:

Please produce any and all documentation, records or materials regarding the purchase of fuel by Defendant, its subsidiary, affiliate, joint-venturer or parent organization, relating to vessels chartered from Plaintiff or any Joint Venture in the Gulf of Mexico Region since 1998.

**RESPONSE TO REQUEST NO. 40**:

See response to Request No. 35.

**REQUEST NO. 41**:

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to crew expenses, fees and wages for the vessels since 1998.

**RESPONSE TO REQUEST NO. 41**:

See response to Request No. 35.

**REQUEST NO. 42**:

Please produce copies of all records or other documents received by or prepared by you, including documents pertaining to lubrication expenses and fees for the vessels since 1998.

**RESPONSE TO REQUEST NO. 42**:

See response to Request No. 35.

**REQUEST NO. 43**:

Please produce copies of all records or other documents received by or prepared by

you, including documents pertaining to groceries and other necessaries expenses and fees for the vessels since 1998.

**RESPONSE TO REQUEST NO. 43:**

   See response to Request No. 35.

**REQUEST NO. 44:**

   Please produce any and all documentation, records or materials regarding the expenditure of monies on repairs, repair parts or maintenance and upkeep relating to vessels' owned or chartered from Plaintiff to Defendant or the relating to any joint-venture entered into by Defendant and Plaintiff.

**RESPONSE TO REQUEST NO. 44:**

   See response to Request No. 35.

**REQUEST NO. 45:**

   Please produce all invoices pertaining to parts and equipment, and relating to the vessels and/or the joint venture between Plaintiff and Defendant.

**RESPONSE TO REQUEST NO. 45:**

   See response to Request No. 35.

**REQUEST NO. 46:**

   Please produce all invoices for sub-charterers of all vessels in the Gulf of Mexico region, to those other than to PEMEX.

**RESPONSE TO REQUEST NO. 46:**

28

See response to Request No. 35.

## SECOND SET OF REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

Please produce all documentation, including pleadings and settlement documents, which pertain to any lawsuit in which Defendant has ever been engaged, and as referenced in Interrogatories Number 2 and 24 included in Plaintiff's First Set of Interrogatories, and Requests for to Defendant Oceanografia S.A.

**RESPONSE TO REQUEST NO. 1:**

Objection. This request is overbroad and calls for documents protected by attorney-client privilege and the work-product doctrine. It also, in calling for "all documentation ... which pertains to any lawsuit in which defendant has ever been engaged," calls for much documentation that is irrelevant to the present case.

**REQUEST NO. 2:**

Please produce all credit card and credit card account statements issued to Defendant since 1998 and referred to in Interrogatory Number 10 included in Plaintiff's First Set of Interrogatories, and Requests for to Defendant Oceanografia S.A.

**RESPONSE TO REQUEST NO. 2:**

This requests calls for information that is not relevant to the present suit. It also calls for information that is protected as proprietary business information that need not be disclosed.

*************

29

Respectfully submitted,

HARRIS & RUFTY, L.L.C.

By: _____

Rufus C. Harris III (Admission No. 29458)
Alfred J. Rufty III (Admission No. 29457)
1450 Poydras Street, Ste. 1510
New Orleans, Louisiana 70112
Tel: (504) 525-7500
Fax: (504) 525-7222

**ATTORNEYS FOR DEFENDANTS,
OCEANOGRAFIA S.A. DE C.V. AND
AMADO YANEZ OSUNA**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been forwarded to opposing counsel by placing same in the United States mail, properly addressed, with first class postage affixed thereto, this ___4___ day of February, 2002.

_____
Alfred J. Rufty III

31

## OCEANOGRAFIA, S.A. DE C.V.
Relación de contratos

Última Actualización: 21-Nov-02
Fecha de Impresión 21-Nov-02

| No. PROY. | No. CONT. | CLIENTE | DESCRIPCION | MONTO PESOS | MONTO DOLARES | INICIO | FINAL | DURACION | AMPLIACION |
|---|---|---|---|---|---|---|---|---|---|
| 6100-050 | 36FNN02800 | Pemex | Remolcador de Puerto "Seabulk Katie " | 11,818,271.70 | 4,498,693.00 | 02-May-00 | 30-Dec-02 | 1035 días | |
| 6100-091 | 36FNN05790 | Pemex | Remolcador de Puerto " Seabulk Carolyn " | 11,738,341.36 | 5,541,155.44 | 05-Mar-00 | 30-Dec-02 | 1028 días | |
| 6100-092 | 36FNN05870 | Pemex | Remolcador de Puerto Captain Bud instituido por el " San Mar VIII " | 10,949,374.12 | 2,354,646.72 | 18-Feb-00 | 31-Dec-02 | 1048 días | |
| 6100-094 | 50FNN06060 | Pemex | Renta Lancha Paula Key / Sara Mc Call | 44,099,139.68 | 4,885,847.28 | 05-Mar-00 | 31-Dec-02 | 670 días | 15-Mar-02 |
| 6100-095 | 36QNN09999 | Pemex | Monitoreo catódico y rentta, del sistema de corriente impresa del corredor Abatto- Cd. Pemex | 9,302,334.67 | | 05-Mar-00 | 25-Abr-03 | 1187 días | |
| 6100-108 | 54FNN02120 | Pemex | Renta de pareja electen-Remolcador (Cd.A Candías-OC-356 ) | 17,804,466.73 | 6,743,278.50 | 18-Sep-00 | 04-Jun-02 | 659 días | |
| 6100-113 | 35SNN03170 | Pemex | Renta de la lancha " Seak Bear " | 6,094,588.90 | 604,916.49 | 21-Nov-00 | 7-Dic-02 | 746 días | 03-Jun-02 |
| 6100-115 | 24FNN01951 | Pemex | Fletamento a tiempo de un Remolcador de puerto para el servicio de asistencia a buques en puertos terminales e instalaciones costa a fuera en el área de plataformas y remolque en el/cornar en la costa Este de México, así como auxiliar en casos de emergencia terminales y/o buques propiedad de PEP o a su servicio ( Embarcación Atlantic Ash ). | 17,527,183.20 | 3,573,321.95 | 1-Ene-01 | 31-Dic-03 | 1099 días | |
| 6100-118 | PEP-SN326/01 | Pemex | Servicios de hospedaje y alimentación con el apoyo de una embarcación habitacional ( barco o plataforma) del posicionamiento dinámico para el personal de construcción del proyecto de modernización y optimización del campo Cantarell, en la Sonda de Campeche, Golfo de México, con apoyo de barco( Deep Water-Supply One )(Capacidad mínima de 300 personas) | 59,360,478.10 | 37,356,856.38 | 2-May-01 | 1-May-02 | 365 días | 15-Jul-01 |
| 6100-119 | 25RNTD0061 | Pemex | Actualización de planos de Ingeniería para el complejo Akal-C y periféricas ( Maquetas ) | 28,514,257.17 | 588,689.56 | 12-Mar-01 | 11-Mar-03 | 730 días | |
| 6100-131 | 418811849 | Pemex | Rehabilitación de plataformas marinas con apoyo de un equipo de posicionamiento dinámico para la corrección de no conformidades y certificación(OSA—CECSA/Norman Rover proporcionado por OSA) | 576,925,767.01 | 52,651,233.79 | 16-Oct-01 | 31-Dic-03 | 807 días | |
| 6100-137 | 418812800 | Pemex | Fletamento a tiempo de una lancha de pasaje y carga para el servicio de transporte de pasajeros de de carga ligera ( Fernanda ) | 7,800,609.60 | 5,837,055.36 | 28-Ene-02 | | 912 días | |
| 6100-138 | 54FNN01701 | Pemex | Fletamento a tiempo de lancha estable No.1 para el transporte de personal en la sonda de Campeche (Sabo' em) | 112,534,704.90 | 0.00 | 01-Ene-02 | 31-Dic-03 | 730 días | |
| 6100-140 | PEP-5-17-424/ | Pemex | Fletamento a tiempo de una lancha rápida y un barco abastecedor para prestar los servicios de transporte de personal materiales y equipos requeridos en las trabajos de rehabilitación y construcción del proyecto de modernización y optimización del campo cantarell. (Miss gracia Y el Cameron) | 18,382,084.94 | 2,967,078.38 | 17-Dic-01 | 12-Sep-02 | 270 días | |
| 6100-143 | 25RNTD2151 | Pemex | Actualización de la maqueta electrónica del complejo Nohoch-A y periféricas.( Maquetas ) | 10,234,844.74 | 267,387.76 | 07-Ene-02 | 06-Ene-03 | 365 días | |
| 6100-144 | 24QNT02492 | pemex | Maniobras con apoyo de embarcación.* Midnight Arrow " | 106,612,168.54 | 10,735,504.36 | 07-Ene-02 | 31-Dic-04 | 1095 días | |
| 6100-147 | 24QNT02542 | Pemex | Rehabilitación a ductos (construcción) con apoyo de embarcación " Norman Progress " | 23,380,003.92 | 7,433,585.64 | 03-Feb-02 | 09-Jun-02 | 127 días | 15-Mar-02 |
| 6100-149 | 411002605 | Pemex | Renta de embarcación " Ana Paula " | 73,341,619.68 | 0.00 | 16-Mar-02 | 31-Dic-04 | 1022 días | |
| 6100-151 | 411002606 | Pemex | Renta de embarcación " Veronica " | 73,341,619.68 | 0.00 | 16-Mar-02 | 31-Dic-04 | 1022 días | |
| 6100-152 | 412602809 | Pemex | Reforzamiento del sistema de protección catódica de líneas submarinas y ductos. ( Caballo de mar ) | 41,699,120.53 | 17,024,633.62 | 26-Abr-02 | 15-Nov-02 | 235 días | |
| 6100-155 | 411002818 | Pemex | Fletamento a tiempo de abastecedor para apoyo en las diversas act. ( Paula Key ) | 59,451,525.00 | 0.00 | 01-Jun-02 | 31-Dic-04 | 945 días | |
| 6100-157 | 411002826 | Pemex | Fletamento a tiempo de abastecedor para apoyo en las diversas act.( Kristin Grace ) | 63,681,110.55 | 0.00 | 01-Jun-02 | 31-2-04 | 945 días | |
| 6100-158 | 36QNN03902 | Pemex | Conservación e Inspección de líneas submarinas con apoyo de barco (Havila Rael) | 176,095,870.02 | 34,814,630.30 | 03-Feb-02 | 31-Dic-06 | 1673 días | |
| 6100-159 | 412802821 | Pemex | Estabilización de líneas sin suspender su operación (Agnes Candies) | 31,005,228.43 | 5,275,774.32 | 05-Jul-02 | 31-Dic-02 | 180 días | |
| 6100-162 | 412602837 | Pemex | Elaboración y actualización de maquetas electrónicas. (Maquetas Ku-Maloob) | 28,854,017.57 | 0.00 | 01-Jul-02 | 30-Jun-04 | 730 días | |
| 6100-165 | 25RNTD5142 | Pemex | Mantto. Preventivo a ductos costa fuera (Norsette) (Emb. de apoyo Caballo de trabajo, Miss Gracie) | 204,788,597.16 | 47,435,734.00 | 13-Ago-02 | 8-Dic-03 | 461 Dias | |
| 6100-168 | 412002862 | Pemex | Actualización de la maqueta electrónica del complejo Akal-J y periféricas.( Maquetas ) | 17,562,315.92 | 209,189.62 | 9-Dic-02 | 8-Dic-03 | 365 Dias | |
| 6100-169 | 412002869 | Pemex | Servicio de fletamento con apoyo de la emb. (Miss Gracia) | 47,099,250.00 | 0.00 | 1-Dic-02 | 28-Jul-04 | 605 Dias | |

Contratos finalizados

Nota: La embarcación Agnes Candies está apoyando el proyecto de Arodas junto con el caballo de Mar



EXHIBIT L     OCEAN.00864     11/22/02   FRI 10:47   [TX/RX NO 8072]   @002

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION


B-39595
B-V-39770

SEABULK TOWING, INC.,        :
f/k/a HVIDE MARINE TOWING,:
INC., AND SEABULK            :
OFFSHORE, LTD.               :
                             :
vs.                          :    CIVIL ACTION NO. B-01-094
                             :
OCEANOGRAFIA S.A. de C.V. :
AND AMADO YANEZ OSUNA        :    IN ADMIRALTY



ORAL VIDEO DEPOSITION OF AMADO YANEZ OSUNA



          produced at the instance of the Plaintiffs, in

the above-styled cause on the 18th day of July, 2002,

at 10:27 a.m., before Bill J. McFerron, CSR 1388, at

the offices of Royston, Rayzor, Vickery & Williams,

1001 McKinney, Suite 1100, Houston, Texas.

EXHIBIT M

85

1    don't know how they say in the U.S., but I mean like

2    if the Navy comes out with a tender, then we compete

3    against various other companies for the job.

4        Q.  I think we call them RFPs, but I'm not sure.

5    But I understand --

6        A.  I don't know what you call them.

7        Q.  But I understand what you're talking about

8    now.  Thank you.

9            So you compete per job and per contract

10   and who knows what the terms are, but you compete?

11       A.   That's correct.

12           Well, we know that if it gets published,

13   Pemex probaly should tender specs and they'll tell

14   you, well, we want you to do this service for this

15   type of period and we require this minimum requirement

16   of equipment.  And then you tender it and then if

17   you're -- most of the time Pemex uses -- if you're the

18   best price they give it to you once you pass the

19   technical review.  But I mean it all depends on a lot

20   of factors.

21       Q.   Okay.  Then you have a page talking about the

22   different vessels.  And it talks -- I printed out

23   some -- I want to talk about some vessels that you

24   have listed there.  On utility boats, you've got the

25   YUMIL KANAAB and YUN KANAAB.  Are those owned by

ESQUIRE DEPOSITION SERVICES

86

17

1     Oceanografia?

2         A.    I believe so.    I believe so.    They're the

3     ones that we bought from Seabulk.    They're the

4     Seabulk AUSTIN and the Seabulk BATON ROUGE.

5         Q.    And they're currently owned?

6         A.    Yeah, I believe so, yes, sir.

7         Q.    Supply boats FLINT RIVER and OSA CAMPECHE?

8         A.    No, the FLINT RIVER is owned by -- it's not

9     in Mexico anymore but it was owned by Trico Marine.    I

10    believe still owned by Trico Marine.    But we rented --

11    we chartered that vessel from them.

12        Q.    Very good.    OSA CAMPECHE?

13        A.    That's owned by Oceanografia, I believe.

14        Q.    Locations of the first two boats, YUMIL

15    KANAAB, general locations?

16        A.    Bay of Campeche.

17        Q.    The same for OSA CAMPECHE?

18        A.    Oh, yes, I believe so.    The last time I

19    checked.

20        Q.    And then if you would just go through these

21    one at time.    Seabulk ST. ANDREW, Seabulk ST. TAMMANY,

22    KIICHPAN, PAULA KAY, SAK BOOC, S.F. MCALL.

23        Q.    Are those owned by Oceanografia?

24        A.    No, only I think the KIICHPAN is.    And the

25    SAK BOOC.

ESQUIRE DEPOSITION SERVICES

250

13

1      A.    Yeah, when this got started I would guess.

2      Q.    What kind of joint -- I'm sorry.  What kind

3 of joint venture were you going to enter into with

4 Otto Candies?

5      A.    The idea is to -- very similar to what we did

6 with  Hvide.  It was very similar to that.

7      Q.    Okay.  Has Otto Candies purchased any vessels

8 from Oceanografia?

9      A.    Not that I'm aware at this point.

10      Q.    Do you have vessels -- does Oceanografia have

11 vessels on time charter from Otto Candies at this

12 time?

13      A.    Yes, sir.

14      Q.    Okay.  What vessels?

15      A.    I don't know.  It's a lot of them.  I mean, I

16 can give you a list but close to 20 vessels we're

17 operating for Otto Candies.

18      Q.    That you've time chartered from Candies?

19      A.    Bareboat or time charter.

20      Q.    With the joint venture that was proposed

21 between Otto Candies and Oceanografia, did that

22 contemplate purchase of any vessels by Oceanografia?

23      A.    I think that's pretty -- do I have to

24 describe our business strategies with other companies?

25                MR. MCNIFF:  It's confidential.  We're

ESQUIRE DEPOSITION SERVICES

251

1    keeping this confidential.

2                    THE WITNESS:  Not the competitors.

3                    MR. RUFTY:  Let me -- I think we're

4    getting close to the line.  Let me talk to my clieint

5    about this if you don't mind.

6                    MR. MCNIFF:  Okay.

7                    THE VIDEOGRAPHER:  Off the record at

8    4:52.

9                    [Off the record]

10                    THE VIDEOGRAPHER:  On the record again

11    at 4:58.

12                    MR. RUFTY:  This is Alfred Rufty,

13    counsel for Oceanografia and Amado Yanez in this

14    matter.  Questioning was raised before we took a break

15    about the terms of a potential agreement -- oh, can

16    you hear me? -- between Oceanografia and Otto

17    Candies.  We took a break to discuss it.  And my

18    client advises me that he understands that he is under

19    a confidentiality agreement not to disclose the terms

20    of that potential agreement that has been contemplated

21    with Otto Candies.  And further, given the fact that

22    he has testified that the agreement is on hold until

23    this litigation is terminated such that it should not

24    have any effect on this litigation, I have advised Mr.

25    Yanez that in accordance with his confidentiality

ESQUIRE DEPOSITION SERVICES

252

1    agreement, he should not answer any questions today

2    about the terms of that contemplated agreement with

3    Otto Candies.  So we have agreed that it will be taken

4    up at a later time.  We're happy to try to call a

5    magistrate judge to discuss it today if it's possible,

6    but for today's purposes at the present time, that has

7    to be our position.

8              MR. MCNIFF:  All right.  And we reserve

9    the right, of course, to question him on a future date

10   at trial or Otto Candies direct.

11       Q.    [Mr. McNiff]  I would like to ask you a

12   couple of questions.  If you don't feel comfortable

13   asking them -- I mean telling us, just tell us.

14              The first is under the contemplated

15   joint venture agreement would any -- would there be a

16   transfer of any boats from from Oceanografia to Otto

17   Candies?

18       A.    Can't answer.  I'm not going to answer.

19       Q.    Okay.  The --

20       A.    I'm not going to answer anything that has to

21   do with Otto Candies.

22       Q.    Period?  All right.

23       A.    You can ask whatever you want, but I'm not

24   going to answer any.

25       Q.    On the record, Otto Candies has produced a

284

THE STATE OF TEXAS:

COUNTY OF HARRIS:


    I, Bill J. McFerron, CSR 1388, certify that the

foregoing oral deposition of Amado Yanez Osuna, taken

on the 18th day of July, 2002, is a true and correct

transcription of my shorthand notes and was reduced to

typewriting under my supervision and control; that the

signature of the witness was not waived.

    I further certify that I am neither a relative

or employee or attorney or counsel of any of the

parties, or a relative or employee of such attorney or

counsel, or financially interested directly or

indirectly in this action.

    Subscribed and sworn to on the 5th day of

August, 2002.


                             Bill J. McFerron, CSR 1388?
                             Esquire Deposition Services
                             3401 Louisiana, Suite 300
                             Houston, Texas  77002-9547
                             713-524-4600
                             Certification Expires:  12-31-2003

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SEABULK TOWING, INC., f/k/a | * | CIVIL ACTION |
| HVIDE MARINE TOWING, INC., | * | |
| SEABULK OFFSHORE LTD. | * | NUMBER: 01-3791 "J" (1) |
| Plaintiffs | * | |
| | * | |
| VERSUS | * | |
| | * | |
| OCEANOGRAFIA S.A. de C.V and | * | |
| AMADO YANEZ OSUNA | * | |
| Defendants | * | |

## YANEZ'S SUPPLEMENTAL RESPONSES TO SEABULK'S FIRST INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS

To a large extent, Yanez has been subjected to the same discovery requests as were directed to OSA. As to these, Yanez adopts OSA's supplementary responses.

Yanez further supplements as follows:    .

SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 9-10:

See also documents delivered today for copying.

1

# EXHIBIT    N

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

All writings to or from Yanez pertaining to the Seabulk vessels or the joint venture have now on information and belief been produced. See the eight boxes of documents produced this week, and prior productions.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Awaiting receipt. Will be produced immediately.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 15, 18, 19, 20, 21:**

See also documents delivered today for copying.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

See enclosed.

Respectfully submitted,

HARRIS & RUFTY, L.L.C.

Rufus C. Harris III (#6638)
Alfred J. Rufty III (#19990)
1450 Poydras Street, Ste. 1510
New Orleans, Louisiana 70112
Tel: (504) 525-7500
Fax: (504) 525-7222

2

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been forwarded to opposing counsel by placing same in the United States mail, properly addressed, with first class postage affixed thereto, this _20_ day of September, 2002.

Alfred J. Rufty III

3

**Date:**     11/30/2000 3:15 PM
**Sender:** ANDY BRAUNINGER
**To:**       GERALD HOFFMANN
**Priority:** Normal
**Subject:** OCEANOGRAFIA

Gerald:

The power of prayer. It works. Just got a call from Amado and here is the results of the call:

1. Audit - Amado is getting pricing from Price Waterhouse, and Peat Marwick and he would like to compare their price to E & Y. I said that we should not have any problem with this but that in order to close the de Mexico company we need to do this asap. He said he understood and his goal is to be ready to close at the end of the year.

2. Amado advised he sent $250,000 today and he will send the other $250,000 on Monday. I did not mention that the amount for November was less than $500,000. Let's see what he sends.

3. Amado is sending by DHL the contracts from Pemex on the two crew vessels and the DELAWARE. He advises that the contracts are in spanish and Gloria will have to translate

4. Amado would like to buy another 100'CV like the Cameron and Sabine. He is still interested in purchasing the VERMONT and will be sending Wesley to survey.

5. He is sending today two tenders for 152' CV's and a tender for a grocery boat like what the Rhode Island was doing.

6. He wants to talk to Bill Ludt to get to some conclusion on the amount of money that is still outstanding and he asked me to have Bill call him.

I hope all this does not sound too good to be true, but with your prayer power on my side I am very optimistic.

SEABULK.007796

EXHIBIT     O

12/3/02    81    📄    Minute entry: Motion Hearing held.    Apps: James Buchanan
                      f/pltf; James Hunter f/dft. granting [77-1] motion to
                      compel responses of Amado Yanez Osuna granting [76-1]
                      motion to compel responses of Oceanografia  Ct Reporter:
                      Gabriel Mendieta/ERO . The Court announces there will be no
                      continuances in this cases and grants motions to compel and
                      will sign an order to produce by 12/23/02; The Court will
                      be considering sanctions if these orders are not met. Atty
                      j Buchanan to prepare an order for the Court. Court
                      adjourned. (og)

# EXHIBIT    P

*51*

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 2 7 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| SEABULK TOWING, INC., f/k/a | § | |
| HVIDE MARINE TOWING, INC., | § | |
| and SEABULK OFFSHORE, LTD. | § | |
| Plaintiffs | § | CIVIL ACTION NO. B-01-094 |
| | § | |
| V. | § | In Admiralty |
| | § | |
| OCEANOGRAFIA S.A. de C.V. and | § | |
| AMADO YANEZ OSUNA | § | |
| Defendants | § | |

OPPOSED MOTION FOR INCLUSION IN RULE B ATTACHMENT
OF NEWLY DISCOVERED PROPERTY OF DEFENDANTS

TO THE HONORABLE UNITED STATES JUDGE
FOR THE SOUTHERN DISTRICT OF TEXAS:

The Plaintiffs, Seabulk Towing, Inc. ("Seabulk Towing") (formerly known as Hvide

Marine Towing, Inc. ("HMT") and Seabulk Offshore, Ltd. ("Seabulk Offshore") (collectively

"Seabulk"), by and through their undersigned attorneys, complaining of Defendants

Oceanografia ("Oceanografia") and Amado Yanez Osuna ("Yanez"), request the Court attach

additional property of said Defendants as follows:

I.

Background

In its previous request for attachment, Seabulk sought to attach various property of

Defendant Oceanografia and Defendant Yanez. Specifically, Plaintiffs requested that summons

with process of maritime attachment and garnishment be issued against the Defendants

Oceanografia and Amado Yanez Osuna and that their goods, chattel, credits and effects within

the Southern District of Texas be attached in an amount sufficient to answer Plaintiffs' claims.

EXHIBIT    Q

As a result of Seabulk's complaint, this court ordered process for maritime attachment and garnishment. (See Seabulk's Original Complaint and Court's Order for Issuance of Process of Maritime Attachment dated June 7, 2001).

In compliance with this Court's Order and Plaintiffs' request, the U. S. Marshal attached two bank accounts, totaling $78,046.15. Plaintiffs' current claim against Defendants is for $3,421,060.97, together with pre-judgment interest and post-judgment, interest and additionally, recovery of 49% of the profits of a joint venture between Seabulk Towing and Oceanografia, in an amount which is presently unknown to Plaintiff Seabulk Offshore, Ltd.

II.

Settlement Negotiations

During the course of this litigation, the parties have engaged in continued settlement negotiations in an attempt to resolve this dispute and to obtain payment of Oceanografia's and Yanez's debts to Seabulk.

As a consequence of these negotiations, and as a result of meetings between Seabulk and Yanez/Oceanografia, the parties agreed to settle Seabulk's claims in the amount of $1,620,000.00 pursuant to the attached Memorandum of Settlement executed by Seabulk on April 4, 2002 (Attached as Exhibit "A"). The initial settlement agreement was premised upon immediate payment by Oceanografia and Yanez of sums agreed, with administration via a trust account maintained by Oceanografia/Yanez' attorney.

After Seabulk prepared and executed the Memorandum of Settlement, Oceanografia and Yanez delayed execution. It became apparent that Yanez was unable to secure funding of the settlement and that additional action would be necessitated by Yanez/Oceanografia to secure

settlement funds. As a result of the "settlement," Oceanografia and Yanez presented this Court with a Notice of Settlement dated April 19, 2002 (attached as Exhibit "B").

Subsequently, and as a result of Yanez/Oceanografia's inability to satisfy the terms of the settlement, Defendants requested the Court continue the previously scheduled hearing of May 15, 2002, to allow Oceanografia/Yanez to meet with "its bankers" and to secure funding. The Court denied Yanez's Motion for Continuance of the Motion/Hearing. Additional negotiations between Seabulk with Yanez/Oceanografia's representatives related to accepting a payout of the settlement amount, provided it was secured by a letter of credit or bond. Yanez/Oceanografia subsequently confirmed that no entity is willing to secure the settlement amounts agreed by Oceanografia and Yanez to Seabulk.

III.

Discovery

During the course of this lawsuit, various discovery requests have been exchanged between Plaintiffs and Defendants. Although the answers to such requests by Plaintiffs are viewed as deficient and not complete (and will be subject to a separate motion to compel), recent answers served by Yanez show that additional assets exist within the Southern District of Texas, specifically, a home in Sugarland, Texas, valued at $830,940.00 and a Chase bank account in Houston, Texas, with a value of approximately $10,000.00. (See Yanez Response to Interrogatories and Requests for Production of Documents, Response to Interrogatory No. 8 attached hereto as Exhibit "C").

Telephone conferences with the Fort Bend County Central Appraisal District confirm that the home mentioned in Interrogatory No. 8 is owned solely by Amado Yanez Osuna[1] (See Affidavit of Sharon Emerson, attached as Exhibit "D"). Plaintiffs continue in their pursuit of

additional security for satisfaction of their claims and, to date, have not discovered additional assets within the Southern District of Texas (or outside of Texas) other than those enumerated in Yanez's responses.

<div align="center">IV.</div>

<div align="center">Inadequate Security</div>

As stated above, Plaintiffs' claim exceeds $3.4 million, and despite assurances of payment of proposed settlement of Yanez and Oceanografia, Oceanografia and Yanez are unable or unwilling to make payment of the proposed settlement.

Despite earlier representations to this Court and Seabulk that Oceanografia and Yanez were both solvent, well-secured, and in excellent financial condition, the inability to make payment of the settlement amount and the inability to secure <u>any</u> letter of credit or guarantee by a third party confirms that, absent attachment of additional security, payment of any future judgment is doubtful.[2]

<div align="center">V.</div>

Plaintiffs request the Court to order the Clerk to issue supplemental process of maritime attachment and garnishment for the attachment of the house in Fort Bend County and the Chase bank account, both of which are within the district and, which could have been included in Plaintiffs' original request for attachment.

---

[1] In Answer to Interrogatory No. 8, Yanez states the home is co-owned and mortgaged.
[2] Oceanografia's Co-Joint Venturer, Otto Candies, L.L.C, in a separate Mexican venture, is not willing to guarantee Oceanografia's debt.

VI.

F.R.C.P. 64 Remedy

In the alternative, and only if the Court denies relief for supplemental Rule B Attachment, Plaintiffs request authorization for seizure of Defendant Oceanografia and Defendant Yanez property pursuant to the Federal Rule of Civil Procedure 64.

Specifically, Plaintiffs request an order from the Court to allow attachment pursuant to §61.002 of the Texas Civil and Practice Remedies Code ("CPRC") which provides in part that property may be seized where the Defendant is not a resident of the State or is a foreign corporation or is acting as such. (See §61.001 and §61.002 to the Texas Civil and Practices Remedies Code attached as Exhibit "E"). Additionally, and as indicated above, the requirements of §61.001 of the Texas CPRC have been met as Defendants are justly indebted to Seabulk, the attachment is sought only to secure Seabulk's claim, availability for payment of the debt is in question and §61.002 grounds are met.

WHEREFORE, PLAINTIFF prays:

1.     That a summons with process of maritime attachment and garnishment may issue against the Defendant Oceanografia, and if said Defendant cannot be found, then that their goods, chattel, credits and effects with the district, and particularly Account No. 179-9061735-65 at Chase Bank's offices in Houston, Texas, be attached, and that 5 Camden Circle, Sugar Land, Texas, be attached in the amount sufficient to answer Plaintiffs' claim.

2.     That a judgment be entered in favor of Plaintiffs and against Defendants for the amount of the claims, with interest, costs and reasonable attorney's fees, and that a decree of condemnation may be issued against the property, goods, chattels, credits and effects of the

Defendant Oceanografia, for the amount of Plaintiffs' claim, with interest, costs and reasonable attorneys' fees; and

3.     That Plaintiffs have such other and further relief as in law or equity it may show itself justly entitled.

Dated this _____ day of June, 2002.

Respectfully submitted,

THE KLEBERG LAW FIRM

Frank L. McNiff, Jr.
State Bar No. 07419100
Federal ID No. 12595
James F. Buchanan
State Bar No. 03287500
Federal ID No. 0328
800 N. Shoreline Blvd., Suite 900 North
Corpus Christi, Texas 78401
(361) 693-8500 Telephone
(361) 693-8600 Facsimile

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF CONFERENCE

Attempts to contact Defendants' Counsel have been unsuccessful and therefore this Motion should be considered opposed.

_____
Frank L. McNiff, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that I have on this _26th_ day of June, 2002, served a copy of the foregoing on all counsel of record via United States certified mail, return receipt requested, in accordance with the Federal Rules of Civil Procedure.

Keith N. Uhles
James H. Hunter, Jr.
ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.
55 Cove Circle
P. O. Box 3509
Brownsville, Texas 78523-33509

Rufus C. Harris III
Alfred J. Rufty III
HARRIS & RUFTY, L.L.C.
1450 Poydras St., Suite 1510
New Orleans, LA 70112

_____
Frank L. McNiff, Jr.

165808                                        7

THE STATE OF TEXAS     §
                             §
COUNTY OF NUECES    §

Frank L. McNiff, Jr., being duly sworn, deposes and says:

He is an attorney licensed in the State of Texas and admitted to practice in the United States District Courts for the Southern District of Texas, and a shareholder with The Kleberg Law Firm, attorneys for Plaintiffs herein; he has read the foregoing Motion for Inclusion in Rule B Attachment of Newly Discovered Property of Defendants and knows the contents thereof; and that the same is true, upon information and belief. The source of deponent's information and the ground for his belief as to those matters stated in the Motion for Inclusion in Rule B Attachment of Newly Discovered Property of Defendants to be alleged on information and belief are documents and records in his file.

Secondly, he states that neither Defendant Yanez nor Defendant Oceanografia are present in the district, within the meaning of Supplemental Rule B for Certain Admiralty and Maritime Claims. There are no listings for either Oceanografia or Amado Yanez Osuna with Southwestern Bell directory assistance, no listing in the Port of Brownsville directory, no agent or representative within the district, no notice to the Secretary of State by either of the appointment of an agent for service and no listing with the Secretary of the State of Texas.

_____
Frank L. McNiff, Jr.

SUBSCRIBED and SWORN TO BEFORE ME on this 26th day of June, 2002.

_____
Notary Public in and for the
State of T E X A S

165808                               8

## MEMORANDUM OF SETTLEMENT

After a review of the claims of Seabulk Offshore, Ltd., and Seabulk Towing, Inc., (hereinafter collectively called "SOL") against Oceanografia S.A. de C.V. and Amado Yanez Osuna (hereinafter collectively "Oceanografia"), currently the subject of litigation in the U.S. District Court in Brownsville, Texas, the parties hereby agree as follows:

1.    On or before April 22, 2002, Oceanografia shall pay into the trust account of the law firm of Harris & Rufty LLC, in immediately available funds, the sum of One Million Six Hundred Twenty Thousand US Dollars (US$1,620,000.00).

2.    Promptly upon the deposit of such funds as aforesaid, but subject to Paragraph 3 below, the parties shall take all action necessary to dismiss their respective claims in litigation in Brownsville, as well as to terminate all ancillary proceedings in New Orleans.

3.    Oceanografia shall cause Harris & Rufty LLC to pay SOL, in immediately available funds, a portion of the foregoing deposit equal to One Million Four Hundred Seventy Thousand US Dollars (US$1,470,000.00) concurrently with the filing of the dismissals of the parties' respective claims in litigation and the termination of the aforesaid ancillary proceedings.

4.    Oceanografia shall cause Harris & Rufty LLC to pay SOL, in immediately-available funds, the balance of the foregoing deposit, equal to One Hundred Fifty Thousand US Dollars (US$150,000.00), forthwith upon settlement of Pemex's insurance claim against Steamship Mutual arising from an allision between the Seabulk Katie and Pemex's Cayo Arcas metering platform located 90 miles north of Ciudad del Carmen at 20° 17'N, 92° 2'W on March 24, 2000. In this regard, Steamship Mutual's written advice to SOL that said claim has been settled shall be deemed to establish, in the absence of any contrary indications, that said claim has been paid to the satisfaction of both Steamship Mutual and Pemex. This settlement is without prejudice to Oceanografia's claims in respect of the M/V Seabulk Katie and M/V Seabulk Delaware. It is SOL's position that Oceanografia's claims, if any, are for indemnification from Steamship Mutual Underwriting Association Limited under the terms of the certificate of entry of the vessels in the P & I Association.

5.    Should it be necessary to enforce the terms of this Agreement, Oceanografia and SOL shall submit to the jurisdiction of the US District Court in New Orleans, Louisiana, for that purpose. Accordingly, Oceanografia hereby appoints Harris & Rufty LLC as its agent for receipt of process in connection with the enforcement of this Agreement.

# EXHIBIT A

04/04/2002    15:23    SEABL.    INT'L-LEGAL DEPT. → 13616938600    NO.869    005

6.    The parties agree to execute, at the time of disbursement to SOL of the full $1,620,000, a Settlement Agreement and Release in substantially the form attached to this Settlement Memorandum as "Exhibit A."

7.    Oceanografia agrees to dissolve Seabulk Offshore de Mexico S.A. de C.V. and to hold SOL harmless from any claims of Seabulk Offshore de Mexico S.A. de C.V. or any governmental entity of Mexico.

8.    Upon funding as provided in Paragraph 1 hereof, The Kleberg Law Firm will notify the court of the proposed settlement and submit an Agreed Motion to extend all pending deadlines in the Brownsville action, including the pending Motion to Dismiss of Amado Yanez Osuna, together with an appropriate order for the Court's consideration.

Dated: _April 4_____, 2002

OCEANOGRAFIA S.A. DE C.V.

By: _____
Its Duly Authorized Attorney-in-Fact

Date Signed: _____

AMADO YANEZ OSUNA

By: _____

Date Signed: _____

SEABULK OFFSHORE, LTD. for itself
and SEABULK TOWING, INC.

By: _Stephen B Finch_
Vice-President of Seabulk Transport Inc.
As Sole General Partner of
Seabulk Tankers Ltd.
As Sole General Partner of
Seabulk Offshore Ltd.

Date Signed: _April 4, 2002_

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SEABULK TOWING, INC., f/k/a | § | |
| HVIDE MARINE TOWING, INC., | § | |
| and SEABULK OFFSHORE, LTD. | § | |
| **Plaintiffs** | § | CIVIL ACTION NO. B-01-094 |
| | § | |
| V. | § | In Admiralty |
| | § | |
| OCEANOGRAFIA S.A. de C.V. and | § | |
| AMADO YANEZ OSUNA | § | |
| **Defendants** | § | |

## SETTLEMENT AGREEMENT AND RELEASE

### I
### Parties

The Parties to this Settlement Agreement and Release are:

1.01    The Oceanografia Parties, as defined below.

1.02    The Seabulk Parties, as defined below.

### II
### Definitions

2.01    "This Agreement" shall mean this Settlement Agreement and Release.

2.02    The "Oceanografia Parties" shall mean and refer to, whether individually or jointly, Oceanografia S.A. de C.V., Amado Yanez Osuna and any of their respective former, present or future subsidiaries, partners, members, affiliates, officers, managers, directors, shareholders, employees, attorneys, insurers, disclosed or undisclosed agents, sales representatives, distributors, successors, heirs, executors, administrators, representatives and assigns.

2.03    The "Seabulk Parties" shall mean and refer to, whether individually or jointly, Seabulk Offshore, Ltd. and Seabulk Towing, Inc. and any of their respective former, present or future subsidiaries, partners, members, affiliates, officers, managers, directors, shareholders, employees, attorneys, insurers, disclosed or undisclosed agents, sales representatives, distributors, successors, heirs, executors, administrators, representatives and assigns.

2.04    "Parties" shall collectively mean and refer to the Oceanografia Parties and the Seabulk Parties. Either may be referred to individually as a "Party".

EXHIBIT A

04/04/2002   15:23   SEAB   INT'L-LEGAL DEPT. → 13616938600                    NO.869   D07

2.05    "Lawsuits" shall mean and refer to the claims and causes of action asserted in the civil action initiated by Seabulk and styled *Seabulk Towing, Inc. f/k/a Hvide Marine Towing, Inc. and Seabulk Offshore, Ltd. v. Oceanografia S.A. de C.V. and Amado Yanez Osuna* pending in the United States District Court for the Southern District of Texas, Brownsville Division in and for the State of Texas, Case No. B-01-094, and the civil action initiated by Seabulk and styled *Seabulk Towing, Inc., f/k/a Hvide Marine Towing, Inc., and Seabulk Offshore, Ltd. v. Oceanografia S.A. de C.V. and Amado Yanez Osuna* pending in the United States District Court for the Eastern District of Louisiana, Case No. 01-3791.

2.06    "Claims and causes of action" shall mean and include any and all claims, actions, lawsuits, injuries, obligations, demands, actual legal fees and expenses, losses, costs, losses of services, expenses, attachments, garnishments, liens and compensation of any nature whatsoever, whether direct or derivative, under federal and/or state statutory and/or common law or regulations of any nation.

### III
### Scope of Settlement

3.01    Disputes and controversies exist between and among the Parties to this Agreement, both as to the fact and extent of any Party's liability, if any, and as to the fact and extent of damages, if any. The Parties to this Agreement desire to settle all claims and causes of action of any kind whatsoever which they presently have against each other regardless of whether or not such claims or causes of action have been asserted in a judicial proceeding or otherwise and including the claims and causes of action asserted in the Lawsuit and to dissolve the entity known as Seabulk Offshore de Mexico S.A. de C.V.

### IV
### Representations and Warranties

The following representations and warranties shall survive the execution of this Agreement and the completion of the settlement provided below:

### Authority

4.01    Each Party to this Agreement warrants and represents it has the power to enter into this Agreement and that this Agreement and all documents delivered pursuant to this Agreement are valid, binding, and enforceable upon such Party.

4.02    The Parties warrant and represent that no consent, approval, authorization or order of, notice to, or filing with any court, governmental authority, person, or entity is required for the execution, delivery, and performance of this Agreement.

2

04/04/2002   15:23   SEABL   INT'L-LEGAL DEPT. → 13616938600        NO.869   008

## No Assignment

4.03   The Parties warrant and represent they own the claim or claims that they purport to release in this Agreement and that no part of the claim or claims released in this Agreement have been assigned or transferred to any other person or entity.

## V
## Settlement Terms

In reliance upon the representations, warranties and covenants of this Agreement, in consideration of the mutual promises and agreements herein contained, and concurrently with the execution and delivery of this Agreement, the Parties to this Agreement have settled and compromised their claims and causes of action as follows:

### Release of Oceanografia Parties

5.01   In consideration for the undertakings established in this Agreement, the sufficiency of which is hereby acknowledged, the Seabulk Parties hereby waive, remise, release and forever discharge the Oceanografia Parties, their heirs, legal representatives, successors and assigns, of and from any and all legal claims, breach of contract claims, torts, debts, demands, actions, causes of actions, suits, proceedings, agreements, contracts, judgments, damages, accounts, reckonings, executions, and liabilities whatsoever of every name and nature, whether known or unknown, whether or not well founded in fact or in law, and whether in law or equity or otherwise, which each of the undersigned Seabulk Parties ever had or now has, arising prior to the execution of this release and waiver.

### Release of the Seabulk Parties

5.02   In consideration for the undertakings established in this Agreement, the sufficiency of which is hereby acknowledged, the Oceanografia Parties hereby waive, remise, release and forever discharge the Seabulk Parties, their heirs, legal representatives, successors and assigns, of and from any and all legal claims, breach of contract claims, torts, debts, demands, actions, causes of actions, suits, proceedings, agreements, contracts, judgments, damages, accounts, reckonings, executions, and liabilities whatsoever of every name and nature, whether known or unknown, whether or not well founded in fact or in law, and whether in law or equity or otherwise, which each of the undersigned Oceanografia Parties ever had or now has, arising prior to the execution of this release and waiver.

### Future Acts Not Released

5.03   The foregoing releases only apply to claims and causes of action the Parties have as of the time of the execution by both Parties of this Agreement and do not purport to release any of the Parties from liability for any claims or causes of action that arise in the future.

3

### Dismissal of the Lawsuit

5.04   Upon execution of this Agreement, the Seabulk Parties shall cause the Lawsuits to be dismissed with prejudice and shall also dismiss with prejudice any other lawsuit, administrative proceeding, arbitration or other action initiated by or on behalf of any of them against any or all of the Oceanografia Parties and the Oceanografia Parties agree to dismiss all claims in the Lawsuits with prejudice.

### Costs and Attorneys Fees

5.05   The Parties further agree that they shall be responsible for their respective attorneys' fees, court costs, and expenses incurred in connection with the Lawsuits.

### Dissolution of Seabulk Offshore de Mexico S.A. de C.V.

5.06   As additional consideration for this Settlement Agreement and Release, without which consideration the Seabulk Parties would not enter into this Settlement Agreement and Release, the Oceanografia Parties agree that the entity known as Seabulk Offshore de Mexico S.A. de C.V. will be dissolved and the Oceanografia Parties will indemnify and hold the Seabulk Parties harmless of and from any claims of any nature whatsoever which may have been asserted by Seabulk Offshore de Mexico S.A. de C.V. or by any governmental entity of Mexico against the Seabulk Parties.

### VI
### Miscellaneous

6.01   This Agreement shall be governed by and construed in accordance with the laws of the State of Louisiana, except that any conflict of law rule of that jurisdiction that may require reference to the laws of some other jurisdiction shall be disregarded. Any dispute arising out of or related to this Agreement shall be brought in the United States District Court for the Eastern District of Louisiana

6.02   The Parties agree that this Agreement is entered into for settlement purposes only in order to avoid further trouble, potential litigation, and expense. It is further agreed that none of the Parties hereto admit liability or damages to any other Party or anyone else and expressly deny any and all such liability for such complained of acts and/or omissions that form the basis of this Agreement.

6.03   As this Agreement includes evidence of an offer and/or an acceptance of valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, nothing contained in this Agreement shall be admissible evidence in any judicial, administrative, or other legal proceeding, or be construed as an admission of any liability or wrongdoing on the part of the Parties of any violation of federal or state statutory or common law or regulation.

4

04/04/2002   15:23   SEAB.   INT'L-LEGAL DEPT. → 13616938680                   NO.863   D10

6.04   This Agreement has been prepared by the joint efforts of the respective attorneys for each of the Parties and has been reviewed and accepted by the Parties and their respective attorneys. In the event any ambiguity is determined to exist with this Agreement, this Agreement will not be construed more strictly against one party than another.

6.05   If any provision of this Agreement is or may be held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall nevertheless survive and continue in full force and effect without being impaired or invalidated in any way.

6.06   None of the Parties to this Agreement has expressed any facts, representations, or warranties, except as expressly contained in this Agreement.

6.07   This Agreement shall continue perpetually and shall be binding upon the Parties and their heirs, successors, and assigns and shall inure to the benefit of the Parties and their heirs, successors, and assigns.

6.08   This Agreement represents the entire agreement of the Parties and supersedes all prior written or oral agreements, and the terms contained herein are contractual and not mere recitals.

6.09   This Agreement may not be amended, altered, modified, or changed in any way except in writing signed by all Parties to this Agreement.

6.10   Any notice to be given under the terms of this Agreement by either party to the other shall be in writing, and may be effected by personal delivery or registered or certified U.S. mail, return receipt requested, to the Parties at the following addresses:

**Oceanografia Parties**

> Alfred J. Rufty III
> Harris & Rufty, L.L.C.
> 1450 Poydras Street, Suite 1510
> New Orleans, Louisiana 70112

**Seabulk Parties**

> William J. Riviere
> Phelps Dunbar LLP
> 365 Canal Street, Suite 2000
> New Orleans, Louisiana 70130-6534

6.11   The Parties acknowledge that additional facts may be discovered later relating to claims and causes of action they may have as of the time that they execute this Agreement, but that it is the intention of the Parties to fully, finally, and forever settle and release their respective rights, claims, and any controversies whatsoever, known or unknown, which now exist or formerly have existed. The Parties acknowledge that this Agreement shall be and will remain in effect as a full

04/04/2002   15:23   SEAB   INT'L-LEGAL DEPT. → 13516938600                   NO.869   P11

and complete mutual release of such matters, notwithstanding the discovery or existence of any additional or different facts.

6.12    All Parties stipulate and agree that a copy of this executed Agreement shall be as valid, binding and enforceable as the original.

6.13    All Parties stipulate and agree that each Party shall be allowed to sign this Agreement in multiple counterparts. A Party's signature on a separate copy of this Agreement shall not affect the validity of this Agreement or its enforcement against all Parties. Although this Agreement may be executed in counterparts, each shall be deemed an original, all of which together shall constitute one and the same agreement.

6.14    **THE PARTIES EXPRESSLY WARRANT THAT THEY HAVE CAREFULLY READ THIS AGREEMENT, UNDERSTAND ITS CONTENTS, AND SIGNED THIS AGREEMENT AS THEIR OWN FREE ACT.**

IN WITNESS WHEREOF, the Parties have signed multiple counterparts of this Agreement on the dates given beneath their signatures.

Seabulk Offshore, Ltd. and Seabulk Towing, Inc.


_____

By: _____

Title: _____

Date: _____


STATE OF LOUISIANA        §
                          §
PARISH OF ORLEANS         §

        BEFORE ME, the undersigned, a Notary Public in and for said Parish and State, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of Seabulk Offshore, Ltd. and Seabulk Towing, Inc., a _____ corporation, and that he executed the same as President of such corporation for the purposes and considerations therein expressed, and in the capacity therein stated.

6

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the _____ day of
_____, 2002.

_____

Notary Public, State of Louisiana

My Commission Expires:_____

Oceanografia S.A. de C.V.                    Amado Yanez Osuna

_____        _____

By: _____        Date: _____

Title: _____

Date: _____

§

§

BEFORE ME, the undersigned, a Notary Public in and for said Parish and State, on this
day personally appeared Amado Yanez Osuna, known to me to be the person whose name is
subscribed to the foregoing instrument in the two signature blocs above and acknowledged to me
that (i) the first such subscription was the act of Oceanografia S.A. de C.V., a Mexican
corporation, and that he executed the same as manager of such company for the purposes and
considerations therein expressed, and in the capacity therein stated, and that (ii) the second such
subscription was his act in an individual capacity for the foregoing purposes and considerations.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the _____ day of
_____, 2002.

_____

Notary Public

My Commission Expires:_____

\Settlement Agr and Release.Oceanografia.doc

7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SEABULK TOWING, INC., f/k/a | § | CIVIL ACTION |
| HVIDE MARINE TOWING, INC., | § | |
| and SEABULK OFFSHORE, LTD., | § | |
| Plaintiffs | § | NUMBER: C.A. B-01-094 |
| | § | |
| v. | § | |
| | § | |
| OCEANOGRAFIA S.A. de C.V and | § | In Admiralty |
| AMADO YANEZ OSUNA, | § | |
| Defendants | § | |

<u>NOTICE OF SETTLEMENT</u>

Comes now, Defendants Oceanografia S.A. de C.V. and Amado Yanez Osuna unopposed, and pursuant to Local Rule 16.3, give notice of settlement, and request the hearing of April 24, 2002 be reset.

I.

Defendants would show that a settlement, in principal, has been reached with the Plaintiffs, and the parties are diligently working out the details thereof and particularly the form and substance of the supplementary documents accompanying the settlement. A hearing on this matter is set for April 24, 2002 at 2:00 p.m. With the consent of Plaintiffs, Defendants request the hearing be reset within seven (7) days (May 1, 2002) or as soon as is reasonably possible thereafter at the request of Plaintiffs in order to keep the pressure on the parties to work out the details of the settlement and file the appropriate dismissal papers.

49499:1010064.1:041902



EXHIBIT B

II.

Plaintiffs, through counsel, consent to this Notice and Request.

If the court would request a proposed order resetting the hearing of April 24, 2002, please

advise.

Respectfully submitted,

By: _James H. Hunter, by permission Eddie Shes_
       James H. Hunter, Jr.
       Texas State Bar No. 00784311
       Federal ID No. 15703
       ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.
       55 Cove Circle
       P.O. Box 3509
       Brownsville, Texas 78523-33509
       Tel: (956) 542-4377
       Fax: (956) 542-4370
       LOCAL COUNSEL FOR DEFENDANTS,
       OCEANOGRAFIA S.A. DE C.V. AND
       AMADO YANEZ OSUNA

       Rufus C. Harris III (#Admission No. 29458)
       Alfred J. Rufty III (#Admission No. 29457)
       HARRIS & RUFTY, L.L.C.
       1450 Poydras Street, Ste. 1510
       New Orleans, Louisiana 70112
       Tel: (504) 525-7500
       Fax: (504) 525-7222
       ATTORNEY IN CHARGE FOR DEFENDANTS,
       OCEANOGRAFIA S.A. DE C.V. AND
       AMADO YANEZ OSUNA

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the above and foregoing pleading has been forwarded to the following opposing counsel by facsimile, this _19th_ day of April, 2002:

       Mr. James F. Buchanan
       Frank L. McNiff, Jr.
       THE KLEBERG LAW FIRM
       800 N. Shoreline Blvd., Ste. 900 North
       Corpus Christi, Texas 78401

       _James H. Hunter, by permission Eddie Shes_
       James H. Hunter, Jr.

49499;1010064.1;041902       -2-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SEABULK TOWING, INC., f/k/ | * | CIVIL ACTION |
| HVIDE MARINE TOWING, INC., | * | |
| and SEABULK OFFSHORE, LTD. | * | |
| Plaintiffs | * | NUMBER: C.A. B-01-094 |
| | * | |
| VERSUS | * | |
| | * | |
| OCEANOGRAFIA S.A. de C.V and | * | In Admiralty |
| AMADO YANEZ OSUNA | * | |
| Defendants | * | |

## RESPONSES TO INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS

NOW COMES defendant, Amado Yanez Osuna, who responds to the First Set of

Interrogatories and Request for Production of Documents propounded to it by plaintiff,

Seabulk Towing, Inc., as follows:

### INTERROGATORIES

**INTERROGATORY NO 1**:

Identify with particularity any and all written agreements executed between Defendant

and Plaintiff.

**RESPONSE TO INTERROGATORY NO 1**:

None.

# EXHIBIT C

06/14/02  16:06 FAX 504 52        HARRIS & RUFTY                     Ⓐ000

## RESPONSE TO INTERROGATORY NO 7:

    a. None.
    b. None.
    c. None.
    d. Miquel Zenteno is a friend.
    e. Yanez was a principal in this company, which no longer exists.
    f. None.
    g. Shareholder.
    h. None.

## INTERROGATORY NO 8:

Please list any and all assets possessed by Defendant within the United States of America, including but not limited to real property, motor vehicles, chattels, mineral rights and/or bank accounts, specifically including a detailed property description, date of purchase, monetary value, and current asset location.

## RESPONSE TO INTERROGATORY NO 8:

Part owner in home (mortgaged) in Sugarland, Texas (address: 5 Camden Court, Sugarland, Texas 77479); lessee of two cars: Mercedes 320SLK, Sugarland, Texas, Range Rover, Sugarland, Texas; account at Chase Bank (account #179-9061735-65) in Houston (value approximately $10,000).

## INTERROGATORY NO 9:

Please enumerate all employment capacities held by Defendant since 1998 and describe with specificity each job's employment description, including the duties and responsibilities of each job.

## AFFIDAVIT OF SHARON EMERSON

STATE OF TEXAS      §
                         §
COUNTY OF NUECES   §

        **BEFORE ME**, the undersigned authority, on this day personally appeared **SHARON EMERSON**, known to me, and who being by me duly sworn, states on his oath as follows:

        "I am over twenty-one [21] years of age, of sound mind, competent to make this affidavit, am authorized to make this affidavit and have personal knowledge of the facts stated herein. I am employed as a paralegal by The Kleberg Law Firm.

        "On June 25, 2002, I contacted the Fort Bend Central Appraisal District to ascertain whether Amado Yanez Osuna or Oceanografia S.A. de C.V. owned property within the jurisdiction of Fort Bend County, Texas.

        "Ms. Eva Rychlik of the Fort Bend Central Appraisal District confirmed that Amado O. Yanez was the registered owner of property located at 5 Camden Circle, Sugar Land, Texas. Ms. Rychlik further confirmed that no other owners of this property were listed on the tax rolls of the Fort Bend Central Appraisal District, and that the property had an 2001 appraised value of $830,940.00

        "I then spoke with Ms. Barbara Gilbert of the Fort Bend County Tax Office, who confirmed that $5,220.14 was due and owing for the property's 2001 ad valorem taxes.

        "Further Affiant sayeth not."

                                 Sharon Emerson

GIVEN UNDER MY HAND and SEAL OFFICE this 26 th day of June, 2002.

                                 Janetta Meyer Gotchee
                                 Notary Public in and for
                                 the State of T E X A S

*(Notary seal: JANETTA MEYER GOTCHER, NOTARY PUBLIC, STATE OF TEXAS, EXPIRES 04-02-2006)*

SEABULK/OCEANOGRA/EMERSON/AFFIDAVIT – 165864

# EXHIBIT D

VERNON'S TEXAS STATUTES AND CODES ANNOTATED
CIVIL PRACTICE AND REMEDIES CODE
TITLE 3. EXTRAORDINARY REMEDIES
CHAPTER 61. ATTACHMENT
SUBCHAPTER A. AVAILABILITY OF REMEDY

Current through End of 2001 Reg. Sess.

§ 61.001. General Grounds

    A writ of original attachment is available to a plaintiff in a suit if:

    (1) the defendant is justly indebted to the plaintiff;
    (2) the attachment is not sought for the purpose of injuring or harassing the defendant;
    (3) the plaintiff will probably lose his debt unless the writ of attachment is issued;  and
    (4) specific grounds for the writ exist under Section 61.002.

EXHIBIT E