94

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 18 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| SEABULK TOWING, INC., f/k/ HVIDE MARINE TOWING, INC., and SEABULK OFFSHORE, LTD. Plaintiffs | * * * * | CIVIL ACTION NUMBER: C.A. B-01-094 |
| VERSUS | * * * | |
| OCEANOGRAFIA S.A. de C.V and AMADO YANEZ OSUNA Defendants | * * * | In Admiralty |

**OCEANOGRAFIA AND YANEZ'S OPPOSITION TO MOTION FOR SANCTIONS**

The motion for sanctions filed by the Seabulk plaintiffs[1] is based on half-truths and mischaracterizations and it is utterly without merit. Oceanografia and Yanez address in turn each of the complaints alleged in Seabulk's motion.

**A. Answering Seabulk's Complaint**

Seabulk's opening argument is emblematic of the deceptions that appear throughout its memorandum. It manufactures its argument by noting that it filed suit on June 7, 2001; that, because Oceanografia failed to answer, Seabulk was compelled to file a notice of default on September 18; and that, in spite of the motion, Oceanografia still did not answer until October 2, 2001. While referring to this four-month span of dates, Seabulk insinuates that Oceanografia was snubbing its nose at the legal process and the authority of this Court.

The facts are far different. Seabulk fails to mention that it did not serve its complaint

[1] Seabulk Offshore, Ltd. and Seabulk Towing, Inc. (together "Seabulk").

on Oceanografia until nearly three months after it was filed, such that an answer was not due until September 17, 2001. Seabulk also neglects to mention that at approximately 8:30 a.m. on September 18 (i.e. the open of business on the first day an answer was overdue), Oceanografia's counsel called Seabulk's counsel, requesting a mere three-day extension of time in light of the undersigned's inability to contract a traveling client for authority to file an already prepared pleading. Also unmentioned is that Seabulk's counsel indicated that he would seek permission for this three-day extension and would revert with word later that day. In a highly discourteous (if not unethical) act, Seabulk's counsel – before getting back to Oceanografia's counsel about the pending request – scurried to the courthouse and filed a notice of default.

Within forty-eight hours, Oceanografia had filed a motion to lift the default and for leave to file an answer and counterclaim. In spite of the circumstances in which the default was obtained, Seabulk refused to voluntarily lift its default.

At the default hearing, Seabulk began calling witnesses in an attempt to obtain a judgment – even though the only motion pending was Oceanografia's motion to lift the "notice of default." In putting on this premature evidence, Seabulk asked a series of leading questions to a vessel captain with the intent of showing that Oceanografia was engaged in a conspiracy to rid itself of all of its assets such that it would be a "shell company" by the end of 2001. When cross-examination revealed that the witness had no knowledge of Oceanografia's business dealings or solvency and that his testimony was based strictly on hearsay from a dock or vessel worker that the witness *refused to identify*, this Court denied

Seabulk's motion. Your Honor further admonished: "Let's not be making allegations that cannot be supported. It makes me very uncomfortable so I really would not like to see that again."[2]

**B. Third-Party Discovery**

Seabulk next suggests that it should be awarded judgment without regard to the merits because of the alleged actions of third-parties (Otto Candies, L.L.C. and Hibernia National Bank) in response to its subpoenas. Seabulk offers no authority for the ludicrous notion that it would be appropriate to sanction Oceanografia for the discovery conduct of other parties in litigation pending elsewhere.

In any event, Seabulk again misreports the facts. Whereas Seabulk states that "neither Otto Candies nor Hibernia responded in any manner to the subpoena in a timely fashion,"[3] this is simply false. Judge Carl Barbier of the United States District Court for the Eastern District of Louisiana even so noted in his ruling, which approvingly stated: "Magistrate Shushan concluded that Otto Candies timely objected to the subpoena on the grounds of prematurity, inadequate time to respond, and burden, in a September 24, 2001 letter to Seabulk [responding to a subpoena served on September 19]."[4]

Seabulk then maintains that "Otto Candies sought at every turn to avoid production; however, the Eastern District of Louisiana was not persuaded and ordered production."[5]

---

[2] See transcript of motion hearing at 35 [Exhibit "A"].

[3] Seabulk's supporting memorandum at 4.

[4] See Judge Carl Barbier's "order and reasons" of March 12, 2002 at 3 [Exhibit "B"].

[5] Seabulk memorandum at 5.

Again, Seabulk misleads. The Eastern District of Louisiana federal court *was* persuaded and ruled that several of Seabulk's requests were unduly burdensome. The court struck three requests altogether and limited the scope of others.[6]

Equally disingenuously is Seabulk's complaint that, whereas the court's order was dated March 12, 2002, "Nevertheless, not until May 1, 2002 (months after the court ordered production) did Otto Candies provide responses to Seabulk's request for production of document."[7] Contrary to this representation, the span between March 12 and May 1 really does not constitute "months". But, more important, Seabulk neglects to mention that the deadline to reply was extended until May 1, 2002 by agreement of the parties.[8]

Seabulk also omits to mention that its subpoenas against Hibernia Bank and its follow-up subpoena against Otto Candies were *quashed in their entirety* by the United States District Court for the Eastern District of Louisiana as seeking irrelevant documents and information.[9]

Does this episode show misconduct on the part of Oceanografia (which was not even involved)? Or does it show overreaching by Seabulk in discovery matters and the presentation of misleading arguments to this Court?

**C. <u>Depositions</u>**

---

[6] See Magistrate Judge Shushan's minute entry of February 4, 2002 [Exhibit "C"].

[7] See Seabulk memorandum at 5.

[8] See e-mail of April 23, 2002 from Seabulk's in-house counsel, Stephen Finch confirming: "we have agreed to extend the deadline for the Candies production only until May 1, 2002." [Exhibit "D"].

[9] See Magistrate Shushan's minute entry of August 8, 2002 [Exhibit "E"].

In urging that Yanez simply failed to appear for a noticed deposition, Seabulk again tells a half-truth designed to mislead. What actually transpired is that Seabulk noticed Yanez's deposition for June 18, 2002 in the United States arbitrarily and without any effort to inquire into dates available to either Mr. Yanez or his counsel. Oceanografia's counsel advised before the scheduled deposition date that Mr. Yanez simply could not appear in the United States on the arbitrarily selected date. Oceanografia's counsel further indicated that Yanez would be available for deposition the very next week.

When Seabulk's counsel refused to cooperate in setting the deposition for a time that Mr. Yanez was available, Oceanografia sent a fax to Seabulk's counsel noting that Mr. Yanez could not attend on the noticed date[10] and filed a motion to quash. Despite being advised in advance of Yanez's unavailability, Seabulk's counsel still traveled to Brownsville – knowing full well that Yanez would not be there. Although the court did deny the motion to quash, it did so by stating that the Court did not have sufficient facts to make a ruling and did not wish to get involved in this petty discovery dispute, which the parties should resolve among themselves.[11]

The parties did work it out among themselves, and Yanez voluntarily appeared for deposition in Houston soon thereafter.

**D. Liquidation of Assets?**

Seabulk's argument regarding alleged liquidation of assets by Oceanografia is highly

---

[10] See Oceanografia's counsel's telefax of June 17, 2002 to Seabulk counsel McNiff [Exhibit "F"].

[11] See this Court's order of June 17, 2002 [Exhibit "G"].

disingenuous. It speaks of the "liquidation of Oceanografia's assets, thereby rendering it insolvent and unable to satisfy the financial issues in this suit."[12] It then suggests that Oceanografia has transferred the ownership of vessels and portentously notes that some former Oceanografia vessels are now owned by an entity called "Candies Mexican Investments." Suggesting a conspiracy, Seabulk writes: "it is certainly worthy of note that it was Otto Candies who fought so vigorously to hinder discovery and refused to produce documents.[13]

Several responses are appropriate. First, Seabulk's own counsel stated in a phone conversation with the undersigned approximately two weeks ago that Seabulk had substantial information indicating that Oceanografia is in sound financial condition and would be receiving many millions of dollars in revenue into the future. Seabulk's counsel know full well that – far from a company liquidating its assets – Oceanografia is in fact on a sound financial footing with a strong ongoing business. For Seabulk to contend otherwise in its motion is to intentionally mislead the Court.

Second, it is entirely appropriate for Oceanografia to form a company in Mexico in conjunction with Otto Candies and to sell some of its vessels to that venture to pursue this new business. It is reckless for Seabulk to suggest – on the basis of not one supporting fact – that this is somehow not a legitimate business venture but rather some insidious subterfuge designed to deprive Seabulk of a recovery.

---

[12] See Seabulk memorandum at 8.

[13] *Id.*

Equally unfounded is the suggestion that Otto Candies (described as "the very party which originally refused to produce documents in this case!"[14]) participated in some conspiracy to hide documents. Otto Candies objections to Seabulk's discovery were based on the legitimate concern that it is improper for Seabulk – a business competitor – to discovery its proprietary financial and banking records which are irrelevant to this suit. Indeed, Otto Candies' objections were mostly vindicated, as the first court order struck several overly burdensome and onerous requests sought by Seabulk, and the second order quashed Seabulk's remaining discovery efforts in their entirety.

In early 2001, Seabulk alleged to the court that Oceanografia was actively disposing of all of its assets and would be a shell company by the end of the year. That prediction was unfounded and false then and now, as Seabulk well knows.

E. **The Alleged Settlement**

In another misleading argument, Seabulk suggests that a meeting of the minds was fully reached on settlement and that Oceanografia simply refused to execute the agreement. In fact, a full meeting of the minds was never reached. This is reflected in Seabulk's own notice of settlement, which notes that the parties were still "working out the details" of a proposed settlement. As it turned out, the details were never agreed upon and the settlement fell through. If Seabulk believed otherwise, it surely would have filed a motion to enforce the settlement, but it did not do so.

F. **Discovery Orders**

---

[14] *Id.*

Seabulk is wrong is contending that defendants have disregarded this Court's motions to compel. To the contrary, Oceanografia and Yanez have produced tens of thousands of pages of documentation in discovery in this case. They have diligently responded to Seabulk's numerous requests and have produced all sorts of sensitive records, including tax returns, company and individual credit card and investment account statements, executive compensation schemes, and a highly detailed list of all company assets (down to office furniture and computers), among many other things. At the recent hearing before Your Honor on December 3, 2002, Seabulk's counsel stated in reference to the document production and written responses provided by defendants soon before the hearing: "I can assure you that this is not a complete response in there's something missing. And at that point, we can then, if indeed I am correct, and there is something missing, we can come back to the Court with an appropriate motion for sanctions."

Yet Seabulk does not and cannot contend that those responses were not complete; they were.

With respect to alleged privileges, Oceanografia and Yanez have not withheld documents on the basis of the work-product doctrine or any privilege aside from the attorney-client privilege. As to the attorney-client privilege, we recall Your Honor stating in a telephone conference at the time of the continuance that the Court did not intend – despite having entered orders against both plaintiffs and defendants striking all discovery objections – to have counsel produce their attorney-client privilege communications to the opponent. We continue to understand this to be the Court's intent.

As for Seabulk's complaints about documents underlying the KMPG auditing report, it is undersigned counsel's understanding after speaking to his clients that all documents submitted to the auditors and in the possession of Oceanografia or Yanez have been produced in discovery.

With respect to the few specific documents that Seabulk identifies as expecting to have been part of Oceanografia's records, undersigned counsel can merely state that this is a case involving over one hundred thousand pages of documentation and that the defendants have made extensive efforts to locate all documentation responsive to Seabulk's discovery requests. It is our understanding that nothing remains to be produced.

### G. Expert Designation

Seabulk shows the greatest temerity in arguing that sanctions are appropriate in part because Oceanografia and Yanez did not timely designate experts. Seabulk writes: "Defendants have exhibited conduct that warrants sanctions and default. Defendants did not designate their expert witnesses by the deadline set forth in this Court's Scheduling Order....[15] As the enclosed letter from Oceanografia's counsel[16] reflects, there was confusion about this deadline. Because this Court's original scheduling order indicated that defendant's expert reports were due thirty days after the depositions of plaintiff's experts and since the amended scheduling order in our possession stated "N/A" next to the heading "plaintiff's expert disclosures," we understood that our deadline had not changed. This was mentioned to the

[15] See Seabulk memorandum at 2.

[16] See Exhibit "H".

court in a hearing and Your Honor graciously allows defendant's disclosures. Again, Seabulk ignores these surrounding facts and misportrays the situation.

More to the point, the party in serious violation of the court deadlines for expert disclosures is Seabulk. Approximately two weeks ago, counsel for Oceanografia received a list of several new experts that Seabulk indicates for the very first time and intends to call at trial. This will be the subject of a motion to strike. At present, though, we note the extreme hypocritical nature of Seabulk's argument.

**H. <u>Conclusion</u>**

As shown above, Seabulk's motion for sanctions is based on a series of half-truths and misleading arguments. Defendants respectfully submit that the motion for sanctions should be denied.

Respectfully submitted,

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

By: ______________________________

James H. Hunter, Jr.
Texas State Bar N. 00784311
Federal ID No. 15703
55 Cove Circle
P.O. Box 3509
Brownsville, Texas 78523-33509
Tel: (956) 542-4377
Fax: (956) 542-4370
**LOCAL COUNSEL FOR DEFENDANTS, OCEANOGRAFIA S.A. DE C.V. AND AMADO YANEZ OSUNA**

Rufus C. Harris III (Admission No. 29458)
Alfred J. Rufty III (Admission No. 29457)
1450 Poydras Street, Ste. 1510
New Orleans, Louisiana 70112
Tel: (504) 525-7500
Fax: (504) 525-7222
**ATTORNEYS FOR DEFENDANTS, OCEANOGRAFIA S.A. DE C.V. AND AMADO YANEZ OSUNA**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been forwarded to opposing counsel via facsimile, this 18th day of February, 2003.

James H. Hunter, Jr.

RRVW Doc#1047806

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SEABULK TOWING, INC. | § | CASE NO. CA B-01-94 |
| | § | |
| VERSUS | § | BROWNSVILLE, TEXAS |
| | § | OCTOBER 12, 2001 |
| OCEANOGRAFIA, SA de CV | § | 2:05 P.M. TO 2:50 P.M. |

MOTION HEARING AND PRETRIAL CONFERENCE

BEFORE THE HON. FELIX RECIO, UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff: SEE NEXT PAGE

For the Defendant: SEE NEXT PAGE

Court Recorder: Gabriel Mendieta

PREPARED BY:

JUDICIAL TRANSCRIBERS OF TEXAS, INC.
P.O. Box 925675
Houston, Texas 77292-5675
713.697.4718 (office)
713.697.4722 (fax)

Proceedings recorded by electronic sound recording: transcript produced by transcription service.



**APPEARANCES**:

For the Plaintiff:

Kleberg Law Firm
MR. JAMES BUCHANAN
MR. FRANK L. McNIFF
800 N. Shoreline, Suite 900
Corpus Christi, Texas 78401

For the Defendant:

Harris & Rufty
MR. ALFRED RUFTY, III
1410 Poydras, Suite 1510
New Orleans, Louisiana 70112

-and-

Royston & Razor
MR. EDDIE SIKES
P.O. Box 3509
Brownsville, Texas 78523

Also Present:

MR. ROBERTO KEOSEYAN
Corporate counsel for defendants

September of 2002.

Now that ought to get us in and out within -- before the expiration of one year. And I think that ought to give you enough -- enough time.

Now, Mr. Rufty and Mr. McNiff, it is pretty evident to me that at this particular point there is some tension between counsel. And I don't expect to see that again. I want to have complete professionalism here. Let's not be making allegations that cannot be supported. It makes me very uncomfortable. So I really would not like to see that again.

The other thing is that I want to -- And Mr. Yanez, what I want to express to you, sir, is that in this courtroom I hope to give you a fast and a very fair hearing. But what I expect back from you and from all the parties, not only yourself, but the plaintiffs, is that everyone cooperate with one another so that this Court can do its job and be able to handle this case as expeditiously and as evenly-handed as possible.

So do I have your assurances, Mr. McNiff and Mr. Rufty that we can expect cooperation and so forth?

**MR. RUFTY:** Yes, Your Honor.

**MR. McNIFF:** Yes, Your Honor.

**THE COURT:** All right. Have you signed the 636?

(Pause)

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2002 MAR 12 PM 4:27
LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEABULK TOWING, INC., ET AL. | MISCELLANEOUS ACTION |
| VERSUS | NO. 01-3791 |
| OCEANOGRAFIA S.A. de C.V., ET AL. | SECTION "J"(1). |

**ORDER AND REASONS**

Before the Court is Otto Candies' Objection to Magistrate's Discovery Order (Rec. Doc. 21). Upon reviewing the discovery order, the parties' memoranda, and the applicable law, the Court concludes that Otto Candies' objections should be overruled and the Magistrate Judge's Order sustained.

**Background**

This matter arises out of a civil action pending in federal court in Brownsville, Texas, wherein Seabulk Towing is suing a Mexican company, Oceanografia, and its officer, Amado Osuna, alleging breach of contract. In August 2001, Seabulk sought and obtained permission from the Texas district court to serve third-party discovery on Otto Candies, one of Seabulk's competitors in

DATE OF ENTRY
MAR 13 2002



Fee
Process
X Dktd
CtRmDep
Doc. No. 23

the offshore supply boat business, whom Seabulk learned was closely related to Oceanografia.

Seabulk caused a subpoena duces tecum to be issued by this Court on September 10, 2001, which was served on Otto Candies on September 19, 2001. In its discovery request, Seabulk sought to obtain information relating to the assets of Oceanografia in the United States, assets removed from the United States, debts of Oceanografia, financial statements, and the names of financial institutions and location of various equipment. On September 24, 2001, counsel for Otto Candies, who is also counsel for Oceanografia in the Texas action, faxed a letter to counsel for Seabulk, stating that Otto Candies regarded the subpoena as deficient, because it was premature,[1] overburdensome, and did not allow enough time for response. There was no other response by Otto Candies to the subpoena until November 2, 2001, when it objected on the grounds of prematurity, burden, and confidentiality.[2]

[1] Otto Candies objected on the grounds of prematurity, because issue had not yet been joined at that time.

[2] The Magistrate Judge notes that there is evidence that Seabulk attempted to cooperate with Otto Candies to resolve any problems with the scope of the subpoena and requested specific objections after the September 24, 2001, letter and before it received the November 2, 2001, objections.

Thereafter, on December 18, 2001, Seabulk filed a motion to compel production and argued that Otto Candies had waived all of its objections to the subpoena. Otto Candies opposed the motion, asserting that it timely objected, the subpoena sought proprietary information, the requested information was irrelevant, the document was premature, production of the documents would impose an undue burden on it, and this Court should defer to the Texas Court to establish the scope of discovery.[3]

Magistrate Judge Sally Shushan issued an order granting in part and denying in part Seabulk's motion to compel on February 4, 2002. Magistrate Judge Shushan concluded that Otto Candies timely objected to the subpoena on the grounds of prematurity, inadequate time to respond, and burden, in its September 24, 2001, letter to Seabulk.[4] However, citing Fed. R. Civ. P. 45(c)(2)(B), Magistrate Judge Shushan concluded that Otto Candies waived its objection that the subpoena sought proprietary information, as that objection was

[3] As to the last objection, Magistrate Judge Shushan points out that she held a telephone conference in order to determine if the parties agreed that the issues raised in the motion to compel should be resolved in the Texas action. The parties did not, so Magistrate Judge Shushan resolved the issues.

[4] Although, she noted that Otto Candies' objections as to prematurity and inadequate time to respond are now moot given that issue has been joined and more than four months have passed since the subpoena was served.

not made until more than six weeks after service of the subpoena was served.[5]

Next, Magistrate Judge Shushan addressed Otto Candies' objection to the burden of responding as to each specific actual request by Seabulk.[6] She concluded that categories 1, 2 and 5-10 of the subpoena were not unduly burdensome, primarily because the information sought in those requests were restricted by specific dates and she limited the necessary production by Otto Candies to those dates. However, Magistrate Judge Shushan found that Otto Candies should not be required to make any response to categories 3,4, and 11 of the subpoena, because the scope of those requests were too broad and/or could result in production of voluminous documents that would not be relevant to the underlying suit.

Otto Candies then filed its objection to Magistrate Judge

---

[5] Rule 45(c)(2)(B) provides:

> [A] person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.

[6] Additionally, Magistrate Judge Shushan noted that while Otto Candies did not timely object to the discovery request on the issue of relevancy, its relevancy objection was subsumed in the question of burden.

Shushan's order, which is presently before the Court.

**Discussion**

This court reviews discovery rulings by a magistrate judge under the "clearly erroneous" standard as provided in 28 U.S.C. § 636(b)(1)(A): "A judge of the court may reconsider any pretrial matter ... where it has been shown that the magistrate's order is clearly erroneous or contrary to law." In Castillo v. Frank, 70 F.3d 382, 385-86 (5th Cir. 1995), the Fifth Circuit confirmed that 28 U.S.C. § 636(b)(1)(A) specifically requires the district court to apply a "clearly erroneous" standard when reviewing a magistrate judge's ruling on a non-dispositive, pretrial motion such as a discovery motion.

Moreover, Otto Candies' Objections to Magistrate Judge Shushan's order were filed pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, which provides in pertinent part:

> Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order.... The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be *clearly erroneous or contrary to law.*

(Emphasis added). Accordingly, under 28 U.S.C. § 636(b)(1)(A) and Rule 72(a), Magistrate Judge Shushan's order should be upheld by

this Court unless it is "clearly erroneous or contrary to law."

Upon reviewing the order in this case, the Court concludes that the Magistrate Judge applied the appropriate legal standards to the issues raised in the motion to compel and opposition and did not make any clear error in her rulings. In its objection to this Court, Otto Candies only specifically takes issue with Magistrate Judge Shushan's findings that discovery against it should be allowed in part because: (1) the close business relationship between Candies and Oceanografia, and (2) Seabulk should not be required to wait until discovery is concluded as to Oceanografia before seeking production from Otto Candies in light of the scheduling order in the Texas case. The Court does not find that Otto Candies has demonstrated that Magistrate Judge Shushan was clearly wrong in these determinations, nor any of her other rulings.

Accordingly, it is **ORDERED** that Otto Candies' Objections to Magistrate's Discovery Order are **OVERRULED**. Withing ten (10) working days of the entry of this order, Otto Candies is ordered to comply with the Magistrate Judge's discovery order.

New Orleans, Louisiana, this 12th day of March, 2002.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 FEB -4 PM 1:57

LORETTA G. WHYTE
CLERK

MINUTE ENTRY
SHUSHAN, M.J.
FEBRUARY 4, 2002

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEABULK TOWING, INC., et al | MISCELLANEOUS |
| VERSUS | NO: 01-3791 |
| OCEANOGRAFIA S.A. de C.V., et al | SECTION: "J"(1) |

HEARING ON MOTION

APPEARANCES: Submitted on briefs

MOTION: PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY OTTO CANDIES, L.L.C. (Rec. doc 1)

**GRANTED IN PART AND DENIED IN PART**

FACTUAL BACKGROUND

Seabulk Towing, Inc. and Seabulk Offshore, Ltd. (collectively referred to as "Seabulk") and Otto Candies, L.L.C. ("Candies") are competitors in the offshore supply boat business. Seabulk and Candies have done business in waters off the coast of Mexico by entering into joint ventures with a Mexican partner. Oceanografia S.A. de C.V. ("Oceanografia") and possibly its principal, Amado Yanez Osuna ("Osuna"), entered into separate joint ventures with Seabulk and Candies. Seabulk and Oceanografia are litigating claims arising out of their joint venture.

DATE OF ENTRY
FEB - 4 2002

PROCEDURAL HISTORY

On June 7, 2001, Seabulk filed its complaint against Oceanografia and Osuna in the federal district court in Brownsville, Texas.[1] In the Brownsville action Seabulk filed a motion for third party discovery. Exhibit F to Rec. doc. 6. On August 10, 2001 a United States Magistrate Judge granted Seabulk's motion for third party discovery and ordered such discovery against Merrill Lynch and Candies. Exhibit A Rec. doc. 1.

Seabulk caused a subpoena duces tecum to be issued by this Court, dated September 10, 2001, and served on Candies on September 19, 2001. It sought immediate production. Exhibit B to Rec. doc. 1. On September 24, 2001, counsel for Candies, who is also counsel for Oceanografia and Osuna in the Brownsville action, faxed a letter to counsel for Seabulk and stated:

> We regard the subpoena served on Otto Candies, L.L.C. (reportedly served on September 19, 2001) to be deficient. It is premature since it is dated and was served before issue was joined. It is also overburdensome (sic) and does not allow time to respond.

Exhibit C to Rec. doc. 1. There was no other written response by Candies to the subpoena until November 2, 2001, when it objected on the grounds of: (1) prematurity; (2) burden; and (3) confidentiality. Attachment to Exhibit A to Rec. doc. 3.

Seabulk's counsel provided an affidavit where he states that, although he believed Candies had waived its right to make specific objections to the subpoena, he orally sought from Mr. Rufty a statement of specific objections by October 26, 2001, but no such statement was timely received. Exhibit E to Rec. doc. 1. The affidavit also describes unsuccessful attempts after October 26, 2001

[1] Seabulk Towing, Inc., f/k/a Hvide Marine Towing, Inc., et al v. Oceanografia S.A. de C.V., et al, CA No. B-01-094 (S.D. Tx.) (the "Brownsville action").

to reach an agreement with counsel for Candies on the scope of the subpoena. These are referred to in Seabulk's L.R. 37.1. Attached to Rec. doc. 1.

On December 18, 2001, Seabulk filed its motion to compel production and noticed it for hearing on January 2, 2002. Rec. doc. 1. At the request of the parties the hearing was continued until January 9, 2002. Rec. doc. 2. Seabulk urges that Candies waived all of its objections to the subpoena. It seeks an order compelling the requested documents and an award of expenses for filing the motion. Rec. doc. 1. Candies filed its opposition based on the following grounds: (1) it timely objected; (2) the subpoena sought proprietary information; (3) the requested information was irrelevant; (4) the document request was premature; (5) production of the documents would impose an undue burden on Candies; and (6) this Court should defer to Brownsville to establish the scope of discovery. Rec. doc. 3. Seabulk filed a reply. Rec. doc. 6. Candies filed its own reply and Seabulk filed a supplemental reply. Rec docs. 11 and 14. Candies also submitted a letter, which has been filed in the record, and a transcript of a proceeding in the Brownsville action.

On January 30, 2001 there was a telephone conference for the purpose of determining whether there was agreement by the parties that the issues raised by Seabulk's motion to compel to production should be resolved in the Brownsville action. The parties were not in agreement, so the undersigned must resolve the issues.[2]

[2] See In re: Sealed Case, 141 F.3d 337, 343 (D. C. Cir. 1998), where the court held that: "if the nonparty deponent fails . . . to move for a protective order in the trial court, the issuing court must make the decision whether discovery may be had, and its scope, since it is the only court with the power to order enforcement."

WAIVER OF OBJECTIONS

Pursuant to Fed. R. Civ. P. 45(c)(2)(B):

> [A] person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.

Id.

In response to Seabulk's waiver argument, Candies contends it timely objected: first, when it sent the letter of September 24, 2001 (five days after the service of the subpoena on September 19, 2001); and second, when it sent the letter of November 2, 2001. The first letter was timely, but it only made the following objections: (1) prematurity; (2) inadequate time to respond; and (3) burden. The first two objections are now moot.[3]

In its November 2, 2001 letter, Candies for the first time made the objection that the subpoena sought proprietary information. Candies waived this objection, because it was not made in any form until November 2, 2001; more than six weeks after the service of the subpoena. The failure of a party to serve written objections within the time specified constitutes waiver. 9 James Wm. Moore, et al., Moore's Federal Practice ¶ 45.04[2] (3d ed. 1999).

BURDEN

In addition to burden, Candies argues that the information sought by Seabulk is not relevant to a claim or defense to any party in the Brownsville action. Fed. R. Civ. P. 26(b)(1). Although

---

[3] Candies argued the subpoena was premature because issue had not been joined. Oceanografia and Osuna served their answer and counterclaim on October 2, 2001. Exhibit G to Rec. doc. 6. Although the subpoena sought immediate production, more than four months have passed since the service of the subpoena.

Candies did not identify an objection based upon relevancy in its September 24, 2001 letter, the issue is subsumed in the question of the burden of responding to the discovery. Undue burden is specifically identified in Rule 45 as a ground for quashing a subpoena. Fed. R. Civ. P. 45(c)(3)(A).

> Whether a subpoena subjects a witness to undue burden within the meaning of Rule 45(c)(3)(A)(iv) usually raises a question of the reasonableness of the subpoena. The determination of a subpoena's reasonableness requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it; this balance of the subpoena's benefits and burdens calls upon the court to consider whether the information is necessary and unavailable from any other source.

9A Wright, Miller and Marcus, Federal Practice and Procedure §2463 (2d ed. 1994).

Candies argues that: (1) Seabulk's requests seek all financial records on its operations in Mexico conducted with Oceanografia; (2) to respond requires it to examine and produce records generated in the operation of numerous vessels over many years; (3) the documents can be obtained from Oceanografia; and (4) Candies was not a party to the dispute between Oceanografia and Seabulk.

Seabulk's response to the issue of burden is limited. It describes its willingness to work with Candies to resolve the burden issue, but contends that Candies' delay forced it to seek relief through the motion to compel. It argues that the close relationship between Seabulk and Oceanografia weighs against consideration of Candies "non-party" status. Seabulk contends that Oceanografia has also sought to delay discovery, so it should be permitted to pursue information in the possession of Candies that also may be in the possession of Oceanografia.

Because of the close business relationship between Candies and Oceanografia,[4] and the scheduling order in the Brownsville action, Seabulk should not be required to wait to see what, if anything, Oceanografia produces before seeking production from Candies.

Candies also objects that the requests are burdensome because they are broadly worded and would call for the production of many documents. In some cases Candies objection is well taken, so it necessary to consider each category in the subpoena. The following are summaries of the actual requests.

1. Oceanografia/Osuna/enterprise[5] assets deposited in the United States since January 1, 2000.

This category only seeks activity since January 1, 2000, so it is does not impose an undue burden on Candies.

2. Oceanografia/Osuna/enterprise assets deposited outside the United States since January 1, 2000.

This category also only seeks activity since January 1, 2000, so it does not impose an undue burden on Candies.

3. Assets owned by Oceanografia/Osuna/enterprise.

As worded by Seabulk this category seeks any document which references or inventories any tangible or intangible asset owned, in whole or in party, by Oceanografia, Osuna or any Oceanografia/Osuna enterprise. This category imposes an undue burden on Candies. It could apply

---

[4] Candies retained as its lawyer to contest Seabulk's subpoena the same lawyer representing Oceanografia in the Brownsville action.

[5] Documents are sought concerning Oceanografia, Osuna and any enterprise which they were participants ("Oceanografia/Osuna/enterprise").

to tools and supplies stored on an Oceanografia vessel or to a car owned by Osuna.

4. Assets owned by Oceanografia/Osuna/enterprise which were removed from the United States since March 15, 2001.

This category is subject to the same deficiency as category no. 3, so it imposes an undue burden on Candies.

5. Debts owed by Oceanografia/Osuna/enterprise to Candies.

This category can only be read as applying to debts owed at the time the subpoena was served on Candies. It does not impose an undue burden on Candies.

6. Financial statements for Oceanografia/Osuna/enterprise since January 1, 1999.

This category only seeks information since January 1, 1999, so it does not impose an undue burden on Candies.

7. Listing of all equipment owned, operated, leased or chartered by Oceanografia, Osuna and Candies or any enterprise in which they have any financial participation.

Because category 7 includes "chartered" in the description of the equipment, the word equipment shall be read as referring only to vessels. Like category no. 5, it must also be read as applying to the time when the subpoena was served. With these limitations category no. 7 does not impose an undue on Candies.

8. The present location of all equipment listed in no. 7.

Category no. 8 does not impose an undue burden on Candies, because of the limitations described for category no. 7.

9. The presence in the United States since March 15, 2001 of any of the equipment referred to in no. 7.

Category no. 9 does not impose an undue burden on Candies, because of the limitations described for category no. 7.

10. The identity of any financial institution or consultant that participated in the formation or funding of any enterprise in which Oceanografia/Osuna and Candies are participants.

Category no. 10 does not impose an undue burden on Candies.

11. Documents exchanged between Oceanografia/Osuna/enterprise and Candies since March 15, 2001.

Even though category no 11 is limited to documents exchanged since March 15, 2001, the request could require the production of voluminous documents relating to the operation of the Oceanografia and Candies. Some of these documents, for example information on weather conditions, log entries, grocery purchases are not relevant to the claims or defenses of the parties in the Brownsville action. Compliance with this category would impose an undue burden on Candies.

IT IS ORDERED that Seabulk's motion for an order compelling Candies to produce certain documents (Rec. doc. 1) is GRANTED in PART and DENIED in PART, as follows:

1. Within ten (10) working days of the entry of this order Candies shall produce all documents responsive to categories 1, 2 and 5 through 10 of the subpoena as limited by this order.

2. Candies is not required to make any response to categories 3, 4 and 11 in the subpoena duces tecum.

3. Seabulk's request for an award of expenses relating to the filing of its motion is denied.

SALLY SHUSHAN
United States Magistrate Judge

**From:** "FINCH STEPHEN" <stephen.FINCH@SBULK.com>
**To:** HR_DOM.HR_PO(AJR)
**Date:** 4/23/02 11:20AM
**Subject:** Oceanografia

Dear Alfred: We received word that the hearing on the motions in Brownsville has been rescheduled by the court for May 15th. For the sake of good order, I am confirming Frank McNiff's written advice of the 19th to Jim Hunter (faxed to you in copy) that we have agreed to extend the deadline for the Candies production only until May 1, 2002. We trust the settlement will be funded well before then, given all the time that has gone by. Any word on when we can expect said funding? SB Finch.



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2002 AUG -8 P 3:17
LORETTA G. WHYTE
CLERK

MINUTE ENTRY
SHUSHAN, M.J.
AUGUST 8, 2002

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEABULK TOWING, INC., et al | MISCELLANEOUS |
| VERSUS | NO: 01-3791 and consolidated case |
| OCEANOGRAFIA S.A. de C.V., et al | SECTION: "J"(1) |

**HEARING ON MOTION**

APPEARANCES: Submitted on briefs

MOTION: OTTO CANDIES' MOTION FOR A PROTECTIVE ORDER (Rec. doc 4)

**GRANTED**

Before the undersigned is the motion of the non-party, Otto Candies, L.L.C. ("Otto Candies"), for a protective order quashing subpoenas directed to it and its bank, Hibernia National Bank ("Hibernia"). The subpoenas were issued by the plaintiffs, Seabulk Towing, Inc. and Seabulk Offshore, Ltd. (collectively referred to as "Seabulk"). Otto Candies contends that the sole purpose of Seabulk's discovery is to locate assets belonging to the defendant, Oceanografia S.A. de C.V. ("Oceanografia"), that can be seized. Otto Candies argues that such discovery is inappropriate under

DATE OF ENTRY
AUG - 8 2002

Fee
Process
X Dktd
CtRmDep
Doc.No.

Fed. R. Civ. P. 69 prior to Seabulk obtaining a judgment against Oceanografia.

This is the second time that relief in this Court has been sought on a discovery matter even though the action is pending in federal district court in Brownsville, Texas.[1] Previously Seabulk filed a motion to compel production of documents by Otto Candies. See Rec. doc. 1 in "Seabulk Towing, et al v. Oceanografia S.A. de C.V., et al," Misc. No. 01-3791"J"(1) ("Seabulk I"). The undersigned granted in part and denied in part that motion to compel. See Rec. doc. 18 in Seabulk I. The District Court overruled the objections of Otto Candies and affirmed the undersigned's order. See Rec. doc. 23 in Seabulk I. Even though the trial court in the Brownsville action is better suited to resolving issues affecting the scope of discovery, Otto Candies has filed its motion for a protective order in this Court.[2]

The factual background in the Brownsville action is described in the rulings by the District Court and the undersigned in Seabulk I. See Rec. docs. 18 and 23 in Seabulk I. Seabulk describes its Brownsville complaint against Oceanografia and its principal, Amado Yanez Osuna ("Osuna"), as a corporate accountancy action. Rec. doc. 8 at p. 9. Seabulk acknowledges that the purpose of the current discovery sought from Otto Candies and its bank is to find assets belonging to Oceanografia that can be seized. Seabulk contends that the Brownsville action also involves claims of divestiture of assets from Oceanografia and that any information regarding the assets of

---

[1] Seabulk Towing, Inc., f/k/a Hvide Marine Towing, Inc., et al v. Oceanografia S.A. de C.V., et al, CA No. B-01-094 (S.D. Tx.) (the "Brownsville action").

[2] See In re: Sealed Case, 141 F.3d 337, 343 (D. C. Cir. 1998), where the court held that: "if the nonparty deponent fails . . . to move for a protective order in the trial court, the issuing court must make the decision whether discovery may be had, and its scope, since it is the only court with the power to order enforcement."

Oceanografia and their relation to Otto Candies is relevant. It argues that the current discovery is needed to provide it with the opportunity to obtain security for its claims against Oceanografia, before it completes its alleged plan to divest itself of its assets. Id. at 7. This issue was not resolved in Seabulk I.

Generally facts about the financial status of a party are not discoverable prior to obtaining a judgment against the party. See Fed. Rule Civ. P. 26(b)(2) Advisory Committee's Note, 1970 amendments; and 8 Wright, Miller and Marcus, Federal Practice and Procedure §2010 (2d ed. 1994). Seabulk argues that in an admiralty action pre-judgment discovery of a defendant's assets, including those in the possession of a third party, is permissible pursuant to Rules B and C of the Supplemental Rules for Certain Admiralty and Maritime Claims.

Rules B and C only apply to the seizure of assets within the district in which the action is filed. Pursuant to Rule B the plaintiff attaches or garnishes a vessel or other property belonging to the defendant which is located within the judicial district where action is to be commenced. 29 James Wm. Moore, et al., Moore's Federal Practice ¶ 705.04[1] (3d ed. 1997). Pursuant to Rule C the plaintiff's complaint must "in an admiralty and maritime proceeding state that the property is within the district or will be within the district while the action is pending. . . ." Fed. R. Civ. P. Supplemental Rule C. Seabulk filed its action in Brownsville, but it seeks assets in the Eastern District of Louisiana. Assuming for the moment that Rules B and C permitted pre-judgment discovery of a defendant's assets, they do not provide authority for a search for assets outside of the district where the action is pending.

Seabulk argues that the Eleventh Circuit's decision in Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottachi S.A. de Navegacion, 773 F.2d 1528 (11th Cir. 1985), shows it is entitled to

discovery regarding Oceanografia's assets. The Eleventh Circuit said a "[m]aritime attachment is designed to assure a defendant's appearance and to secure satisfaction if the suit is successful." 773 F.2d at 1535. At issue was whether the maritime attachment procedures employed by the district court complied with the constitutional procedural due process requirements. The Eleventh Circuit found that an immediate postattachment hearing before a judge provided the maritime debtor with the process he was due. Id. at 1539. It does not follow from this decision that a plaintiff in an admiralty proceeding is entitled to pre-judgment discovery of a defendant's assets.

In Nehring v. Steamship M/V Point Vail, 901 F.2d 1044 (11th Cir. 1990), the Eleventh Circuit said:

> There are two reasons for the procedure authorized in Supplemental Rule B: to assure respondent's appearance, and to assure satisfaction in case the suit is successful. Supplemental Rule B, however, cannot be used purely for the purpose of obtaining security: The two purposes may not be separated, however, for security cannot be obtained except as an adjunct to obtaining jurisdiction.

Id. at 1051 (citations, quotation marks and brackets omitted). Seabulk does not argue that the discovery is needed in order to maintain jurisdiction over Oceanografia in Brownsville. Seabulk has not shown a basis for departing from the general rule that discovery of a defendant's assets prior to judgment is not permitted.

Seabulk also contends that such discovery is relevant to its claim that the defendants mishandled the finances of Oceanografia. Fed. R. Civ. P. 26(b)(1). It argues that the full disclosure of accounts, assets and transfers is necessary to support its action against the defendants. Rec. doc. 8. Seabulk has made no showing that the trial court has ordered Oceanografia to provide such discovery.

The parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Fed R. Civ. P. 26 (b)(1). Under the revised Fed. R. Civ. P. 26(b)(1) the court must focus on the claims and defenses involved in the action. Fed. Rule Civ. P. 26(b)(1) Advisory Committee's Note, 2000 amendments. "(T)he determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action." Id. In this action Seabulk describes its claim as a corporate accountancy action. It has not submitted copies of its complaint and the defendants' answer in the Brownsville action in order to permit an analysis of the claims pending in that action. Seabulk has not provided a sufficient basis to show that the information sought is relevant to its claims. The mere conclusory statement that such discovery is relevant is insufficient. Even if the information sought is not relevant, the undersigned may order discovery of any matter relevant to the subject matter involved in the action for good cause shown. Id.

In further support of its request for the discovery Seabulk submitted a response to Otto Candies' reply memorandum. Rec. doc. 25. Seabulk's supplemental response is silent on its contention that Rules B and C of the Supplemental Rules for Certain Admiralty and Maritime Claims gave it the right to seek pre-judgment discovery of Oceanografia's assets. Instead Seabulk argues that the discovery it now seeks from Otto Candies and its bank was actually discovery the undersigned ordered Otto Candies to produce in Seabulk I but which it failed to produce. Seabulk, however, adds that to the extent the discovery it now seeks may be interpreted as going beyond the scope of the Seabulk I order, the new discovery is "modified to seek documents co-extensive with this Court's prior order." Rec. doc. 25 at p. 3. Seabulk's belated attempt to recast its current discovery as an effort to force Otto Candies to comply with the Seabulk I order is without merit. If

Otto Candies did not comply with the order in Seabulk I, Seabulk should have filed a motion to compel and for sanctions. As previously conceded by Seabulk, its new discovery of Otto Candies and its bank is aimed at finding Oceanografia assets it can seize. Seabulk has not shown any basis for pre-judgment discovery of Oceanografia's assets.

Seabulk also presents a term loan agreement that was not implemented. It provided that Otto Candies would guarantee a $15 million loan to an entity that Seabulk contends was going to purchase or charter Oceanografia vessels. Seabulk also reports that Yanez testified that the Otto Candies/Oceanografia joint venture was placed on hold because of Seabulk's suit against Oceanografia. Rec. doc. 25 at p. 4. Seabulk has not shown that the new discovery is relevant to its claim in its corporate accountancy action. It also has not made any showing of good cause.

IT IS ORDERED that Otto Candies' motion for a protective order (Rec. doc. 4) is GRANTED and the subpoenas issued by Seabulk to Otto Candies and Hibernia are quashed.

SALLY SHUSHAN
United States Magistrate Judge

FAXED

**HARRIS & RUFTY, L.L.C.**
**CNG Towers, Suite 1510**
**1450 Poydras Street**
**New Orleans, Louisiana 70112**
**Telephone: (504) 525-7500**
**FAX: (504) 525-7222**



**TELECOPY TRANSMISSION**

TO: Frank L. McNiff, Jr., Esq.
TELECOPIER NO.: (361) 693-8600

FROM: Alfred J. Rufty III

DATE: June 17, 2002

RE: Seabulk v. Oceanografia
Our File No.: 736-85

NO. OF PAGES, INCLUDING THIS PAGE: 2

---

COMMENTS:

Dear Frank:

As advised, Amado Yanez is not available and will not be appearing in Brownsville for deposition tomorrow. As also advised, he is available for deposition next Friday. Again, I am sorry for the confusion and that (though I thought I had) I did not get you word about his unavailability sooner. Your date was selected arbitrarily, however, with no effort to learn if the witness was available and we are willing to provide him next week.

As also advised, Mr. Yanez would prefer that the lawyers fly to him for his deposition rather than vice-versa. That is his right. Accordingly, we should make arrangement to fly to Mexico City next Friday.



June 17, 2002
Page 2

If you drive to Brownsville tomorrow morning and have a court reporter appear, that will be a wasted exercise. We will be happy to stipulate that Mr. Yanez will not be there if that will save you the trouble.

Very truly yours,

HARRIS & RUFTY, L.L.C.

Alfred J. Rufty III

AJRIII/dlb

United States District Court
Southern District of Texas
FILED
JUN 17 2002
Michael N. Milby, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

SEABULK TOWING, INC., ET AL * Frank L. McNiff, Jr.

VS * CIVIL ACTION NO. B-01-094 (636(c))

OCEANOGRAFIA, S.A. de C.V., ET AL * James H. Hunter Harris + Rufty

**ORDER**

On this the 17th day of June 2002, the Court reviewed defendants Oceanografia S.A. de C.V. and Amado Yanez Osuna's Opposed Motion for Protective Order. The Court is being asked to block the taking of defendant Yanez' deposition without the benefit of sufficient evidence to determine if notice of deposition was reasonable. It is, therefore, ORDERED that defendants' Motion be DENIED.

The parties hereto are advised that the Court will not allow itself to be involved in petty squabbles regarding discovery matters and urges the parties to resolve their differences in a professional manner.

DONE this 17th day of June 2002, at Brownsville, Texas.

[signature]
Felix Recio
United States Magistrate Judge

*********************
*** RX REPORT ***
*********************

RECEPTION OK

| | |
|---|---|
| TX/RX NO | 9768 |
| CONNECTION TEL | 504 525 7222 |
| SUBADDRESS | |
| CONNECTION ID | HARRIS & RUFTY |
| ST. TIME | 02/18 15:17 |
| USAGE T | 06'59 |
| PGS. | 30 |
| RESULT | OK |



**HARRIS & RUFTY, L.L.C.**
**CNG Towers, Suite 1510**
**1450 Poydras Street**
**New Orleans, Louisiana 70112**
**Telephone: (504) 525-7500**
**FAX: (504) 525-7222**

**TELECOPY TRANSMISSION**

TO: Frank L. McNiff, Jr., Esq.
TELECOPIER NO.: (361) 693-8600

FROM: Alfred J. Rufty III

DATE: June 14, 2002

RE: Seabulk v. Oceanografia
Our File No.: 736-85

NO. OF PAGES, INCLUDING THIS PAGE: 30

---

COMMENTS:

Dear Frank:

Enclosed please find Amado Yanez's responses to discovery. Exhibits are available at our offices for viewing or copying at your expense. Please give me call and let me know how you wish to handle this. (To the extent Seabulk has repeated requests previously made to Oceanografia, Yanez adopts any objections raised by Oceanografia).

There is confusion about the deadline for our expert disclosures. The court's original scheduling order said that our expert reports were due 30 days after we depose your experts. About two weeks ago, we received an amended scheduling order. It lists no dates for expert reports, stating "N/A" next to the heading "plaintiff's expert disclosures" and says defendant's expert disclosures are to follow 30 days after plaintiff's (unstated) deadline.

It is our position that our expert reports are still due, as the court stated, 30 days after we depose your experts. We will seek clarification from the court.

In the meantime, out of an abundance of caution, we advise that our experts will be one or more of the accountants from KPMG, who issued the accounting report that has already been submitted to you. They will testify in accordance with that report. Further, we may call as an expert an American accountant, Eric Rigby (of the Rigby Group in New Orleans) or George Panzeka (of Panzeka and Associates also in New Orleans), who will

testify on the same matters. Specifically, regarding the data and opinion set forth in the KPMG report and concerning the profitability of the joint venture, the invoicing of services, and reimbursable expenses of the parties.

We also may call expert marine surveyor, Jules Schubert, regarding the unseaworthy condition of the engines aboard the Seabulk vessels. Finally, either I or Jim Hunter may potentially testify as experts regarding the reasonableness of attorneys' fees in this matter.

Very truly yours,

HARRIS & RUFTY, L.L.C.

Alfred J. Rufty III

AJRIII/dlb

Enclosure